IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, d/b/a NIFLA, a Virginia corporation; TRI-COUNTY CRISIS PREGNANCY CENTER, d/b/a INFORMED CHOICES, an Illinois not-for-profit corporation; THE LIFE CENTER, INC., d/b/a TLC PREGNANCY SERVICES, an Illinois not-for-profit corporation; MOSAIC PREGNANCY & HEALTH CENTERS, an Illinois not-for-profit corporation; TINA GINGRICH, MD; and TINA M.F. GINGRICH, M.D., d/b/a MARYVILLE WOMEN'S CENTER, an Illinois domestic corporation; <br><br> Plaintiffs, <br><br> v. <br><br> BRUCE RAUNER, in his official capacity as Governor of Illinois; and BRYAN A. SCHNEIDER, in his official capacity as Secretary of the Illinois Department of Financial & Professional Regulation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. ___-_____ ) ) ) ) ) ) |

**VERIFIED COMPLAINT FOR
INJUNCTIVE AND DECLARATORY RELIEF**

NOW COME Plaintiffs, National Institute of Family and Life Advocates, d/b/a NIFLA,

Tri-County Crisis Pregnancy Center, d/b/a Informed Choices, The Life Center, Inc., d/b/a TLC

Pregnancy Services, Mosaic Pregnancy & Health Centers, Tina Gingrich, MD, and Tina M.F.

Gingrich, M.D., P.C., d/b/a Maryville Women's Center, by and through their undersigned

attorneys, for their Complaint for Injunctive and Declaratory Relief against the Defendants,

Bruce Rauner, Governor of the State of Illinois, in his official capacity, and Bryan A. Schneider,

Secretary of the Illinois Department of Financial & Professional Regulation, in his official capacity, and allege as follows:

INTRODUCTION

1.    This case is a challenge by pro-life pregnancy help centers, and an Ob/Gyn and her practice, to a state law forcing them to speak a message contrary to their mission. Pregnancy help centers offer women free information and services, and do so at no cost to the government. They empower women who are or may be pregnant to choose to give birth in circumstances where they wish to do so but feel they do not have the necessary resources or social support. Pro-life Ob/Gyn practices serve many women who want to choose a doctor who shares her respect for the dignity of human life before and after birth.

2.    Plaintiffs challenge the constitutionality and legality of Senate Bill 1564, an amendment to the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 *et seq*. ("the HRC Act"). The amended Act is referred to hereinafter as SB 1564. SB 1564 was signed into law by Governor Rauner on July 29, 2016. A copy of SB 1564, and the HRC Act as amended by it, is attached hereto as Exhibit A.

3.    Plaintiffs Informed Choices, The Life Center/TLC Pregnancy Services, and Mosaic Pregnancy & Health Centers provide pro-life information and practical support to women in unplanned pregnancies so that they will be supported in choosing to give birth. They provide information and support that is both medical and non-medical, is free of charge, and is offered in furtherance of their pro-life religious viewpoint and consciences.

4.    Plaintiff National Institute of Family and Life Advocates (NIFLA) is a non-profit religious network of facilities with approximately 40 member facilities in Illinois that offer medical services, including Informed Choices and Mosaic. (Informed Choices, TLC, Mosaic,

- 2 -

NIFLA's medical Illinois members, and their medical staff, are collectively referred to herein as the "Pregnancy Centers.")

5.    The Pregnancy Centers' religious convictions and conscience prohibit them from performing, assisting in, referring for, or participating in any way with abortion or abortion causing drugs.

6.    Tina Gingrich, MD, is an Illinois Ob/Gyn who has served women for decades. She offers a wide range of women's medical care at her private practice Maryville Women's Center in Maryville, Illinois, where her motto is "Women Serving Women." (Maryville Women's Center is a business of Dr. Gingrich's corporation Tina M.F. Gingrich, M.D., P.C., which are together referred to hereinafter as "MWC.") Dr. Gingrich practices medicine in conformity with her unconditional respect for all human life, for women in all stages of life, whether or not they are pregnant, and for the children they may be carrying in their wombs. Many women come to MWC because they want to receive medical care consistent with their own respect for the value of human life. Dr. Gingrich also provides care as the medical director for Mosaic Pregnancy & Health Centers.

7.    The HRC Act protects the religious conscience rights of individuals and organizations like Plaintiffs, but SB 1564 recently amended it to impose government compelled speech and referral for abortion as part of that Act.

8.    SB 1564 requires the Pregnancy Centers, Dr. Gingrich, and MWC to violate their consciences and beliefs by either referring women for abortions, transferring a patient to an abortion provider, or providing a patient asking for abortion with a list of providers they reasonably believe may perform the abortion.

9. SB 1564 requires these actions even though patients in Illinois have easy access to lists of abortion providers through internet searches and phone directories available both in print and online.

10. SB 1564 is a classic example of compelled speech in violation of Plaintiffs' Free Speech rights as protected by the First Amendment of the United States Constitution and Art. I, § 4 of the Illinois Constitution. SB 1564 is also an unconstitutional condition on speech because it requires Plaintiffs to engage in speech of an objectionable content in order for them to receive conscience rights under the HRC Act.

11. SB 1564 also violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.*, because it forces medical facilities and physicians including Plaintiffs to violate their religious convictions without serving a compelling government interest in a least restrictive way, and it treats some religious beliefs more favorably than others.

12. For the same reason, SB 1564 violates the protection of the free exercise of religion of the First Amendment of the United States Constitution and Art. I, § 3 of the Illinois Constitution.

13. SB 1564 further violates the equal protection rights of the Plaintiffs under the Fourteenth Amendment of the United States Constitution Art. I, § 2 of the Illinois Constitution by treating similarly situated individuals and organizations differently based upon their beliefs about abortion.

14. SB 1564's requirement that Plaintiffs and their medical staff provide information about abortion providers to patients seeking abortion also violates 42 U.S.C. § 238n, which protects health care entities and individual physicians from being subject to adverse actions by

Defendants because they refuse to refer for abortion or make arrangements for referring for abortion.

15.   Plaintiffs seek declaratory relief under 28 U.S.C. §§ 2201–02, the First and Fourteenth Amendments of the United States Constitution, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.*, Article I §§ 3 & 4 of the Illinois Constitution, and the Declaratory Judgment Act, 735 ILCS 5/2-701.

16.   Plaintiffs seek injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65, and the Illinois Religious Freedom Restoration Act, 775 ILCS 35/20.

17.   Plaintiffs seek attorney's fees and costs under 42 U.S.C. § 1988, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/20, and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.

18.   NIFLA asserts organizational standing on behalf of its Illinois members that offer medical services, which, like Informed Choices and Mosaic, SB 1564 regulates and compels to speak in violation of their views and mission. NIFLA's claims fit comfortably within the Supreme Court's organizational standing doctrine to allow it to obtain judicial relief for its members.

JURISDICTION AND VENUE

19.   This action arises under 42 U.S.C. § 1983 et seq. (the "Civil Rights Act"), the First and Fourteenth Amendments to the United States Constitution, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.*, and Article I, §§ 2, 3, & 4 of the Illinois Constitution.

20.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1361, and 1367.

21. The Court has jurisdiction to issue the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202 and Federal Rule of Civil Procedure 57.

22. The Court has jurisdiction to award the requested injunctive relief under 5 U.S.C. §§ 702 and 703, 20 U.S.C. § 1683, 42 U.S.C. § 20000bb-1(c), 28 U.S.C. § 1343(a)(3), 775 Ill. Comp. Stat. Ann. § 35/20, and Federal Rule of Civil Procedure 65.

23. The Court has jurisdiction to award reasonable attorneys' fees and costs under 42 U.S.C. § 1988, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/20, and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.

24. Venue lies in this district pursuant to 28 U.S.C. § 1391(b) and (e), because a substantial part of the events or omissions giving rise to all claims occurred in this district, including where Plaintiff Informed Choices and several of NIFLA's members offering medical services are located. Venue lies in the Western Division of this district under this court's rules because five of NIFLA's member facilities offering medical services, including Informed Choices' Crystal Lake facility, are located in DeKalb, McHenry, Whiteside, or Winnebago Counties.

## PARTIES

25. Plaintiff National Institute of Family and Life Advocates (NIFLA) is a religious not-for-profit corporation duly incorporated under the laws of Virginia, with its principal place of business at 5610 Southpoint Ctr. Blvd., #103, Fredericksburg, VA 22407.

26. NIFLA is comprised of member pregnancy centers from across the nation, including approximately 40 member facilities in Illinois that offer medical services and are regulated by SB 1564.

27.  Five of NIFLA's Illinois member facilities offering medical services are located in DeKalb, McHenry, Whiteside, or Winnebago Counties (namely, in DeKalb, Crystal Lake, Johnsburg, Rock Falls, and Rockford).

28.  Plaintiff Tri-County Crisis Pregnancy Center, d/b/a Informed Choices (hereinafter "Informed Choices") is a religious faith-based not-for-profit corporation duly incorporated under the laws of Illinois, with centers located at 888 E Belvidere Rd., Unit #124, Grayslake, IL 60030 (Lake County), and 610-1 Crystal Point Dr., Crystal Lake, IL 60014 (McHenry County). Informed Choices' corporate agent and Executive Director is Sarah K. VanDerLip.

29.  Plaintiff The Life Center, Inc., d/b/a TLC Pregnancy Services ("TLC"), is a religious faith-based not-for-profit corporation duly incorporated under the laws of Illinois, and is located at 825 Dundee Avenue, Elgin IL, 60120. TLC's corporate agent and Executive Director is Vivian Maly.

30.  Plaintiff Mosaic Pregnancy & Health Centers (Mosaic) is a religious faith-based not-for-profit corporation duly incorporated under the laws of Illinois, and is located at 2019 Johnson Road, Granite City, IL 62040. Mosaic's corporate agent and President/CEO is Kathleen (Sparks) Lesnoff.

31.  Plaintiff Tina Gingrich, MD, is located in Maryville, Illinois. She is the medical director of Mosaic. Her principal place of business is 2016 Vadalabene Drive, Maryville, IL 62062.

32.  Plaintiff Tina M.F. Gingrich, M.D., P.C., doing business as Maryville Women's Center, is an Illinois domestic corporation. It is located at 2016 Vadalabene Dr Maryville, IL 62062. Its president is Dr. Gingrich.

33. Defendant Bruce Rauner is the Governor of the State of Illinois, is located in Sangamon County, 207 Statehouse, Springfield, Illinois 62706, and is being sued in his official capacity.

34. Defendant Bryan A. Schneider is the Secretary of the Illinois Department of Financial & Professional Regulation, 100 West Randolph, 9th Floor, Chicago, Illinois 60601, and is being sued in his official capacity.

Pregnancy Centers: Informed Choices, TLC, and Mosaic

35. Informed Choices, The Life Center/TLC Pregnancy Services ("TLC"), and Mosaic Pregnancy & Health Centers ("Mosaic"), provide help and pro-life information to women in unplanned pregnancies so that they will be supported in choosing to give birth.

36. Informed Choices, TLC, and Mosaic offer women free information and services at no cost to the government. They empower women who are or may be pregnant to choose to give birth in circumstances where they wish to do so but feel they do not have the necessary resources or social support.

37. Informed Choices, TLC, and Mosaic desire to inform, educate, and empower the women and men they serve with the hope they will view parenting and adoption as viable alternatives to abortion.

38. Informed Choices, TLC, and Mosaic strive to meet each patient's and client's individual need(s) during and following a pregnancy decision, including post-abortion counseling for women who have chosen that option.

39. Informed Choices, TLC, and Mosaic are faith based organizations that pursue their pro-life message and activities as an exercise of their consciences and religious belief that life is a gift of God from the moment of conception and should not be destroyed by abortion.

40. As part of these beliefs and religious conscience, Informed Choices, TLC, and Mosaic believe that they would be complicit in the destruction of human life and the harm to women and families that comes from abortion if they or their staff or volunteers at their facilities were to refer a patient for an abortion, transfer a patient to an abortion provider, or provide in writing information to the patient about other health care providers who they reasonably believe may offer the patient an abortion.

41. Informed Choices, TLC, and Mosaic provide their information and services in furtherance of their pro-life religious mission, viewpoint, and consciences.

42. Informed Choices, TLC, and Mosaic provide their practical medical and non-medical information and support free of charge.

43. Non-medical services provided by Informed Choices, TLC, and Mosaic include: pregnancy options counseling, adoption information and referrals, support for fathers, post abortion support, community referrals, educational programs such as for pregnancy and parenting, baby items, diapers, and spiritual support.

44. Informed Choices, TLC, and Mosaic facilities are locations wherein some medical services are provided to some persons.

45. Medical services provided by Informed Choices, TLC, and Mosaic include: lab quality urine pregnancy tests, limited obstetrical ultrasounds, nurse consultation, proof of pregnancy, and prenatal vitamins.

46. The medical teams at Informed Choices, TLC, and Mosaic each consist of a medical doctor as its medical director, and other licensed medical professionals such as registered nurses (RNs).

47. The medical director, licensed medical staff, and other staff and volunteers of Informed Choices, TLC, and Mosaic, including Dr. Gingrich, share those centers' religiously motivated pro-life beliefs, dispositions of conscience, and motivation for providing their services.

48. The religious beliefs and consciences of Informed Choices, TLC, and Mosaic, and their medical director, staff, and volunteers, prohibit them from referring a patient for an abortion, transferring a patient to an abortion provider, or providing in writing information to the patient about other health care providers who they reasonably believe may offer the patient an abortion or abortion causing drugs or devices, and their religious beliefs also prohibit them from employing or supervising persons at their facilities who would do so.

49. The religious beliefs and consciences of Informed Choices, TLC, and Mosaic, and their medical director, staff, and volunteers, prohibit them from adopting protocols that would direct persons at their facilities to refer a patient for an abortion, transfer a patient to an abortion provider, or providing in writing information to the patient about other health care providers who they reasonably believe may offer the patient an abortion or abortion causing drugs or devices.

50. At the request of a patient or a legal representative of a patient, Informed Choices, TLC, and Mosaic are willing to provide copies of a patient's medical records to the patient or to another health care professional or health care facility designated by the patient in accordance with all applicable laws, including laws protecting patient privacy.

51. Upon information and belief, information about health care providers that offer abortions is readily available near Informed Choices, TLC, and Mosaic facilities, and throughout cities and counties where those facilities are located.

52. Upon information and belief, many clients of Informed Choices, TLC, or Mosaic have internet access, often through a mobile device or wi-fi accessible device, which provides easily accessible contact information for abortion providers.

53. Upon information and belief, internet searches, and phone directories in print and online, which are available near Informed Choices, TLC, and Mosaic facilities and throughout cities and counties where those facilities are located, contain listings specifically for abortion providers and, separately, for Ob/Gyns, family practitioners, public and community health clinics, and other health care providers.

54. Upon information and belief, phone directories are available at many stores, bars, and other establishments if a member of the public approaches the proprietor or an employee and asks to see the phone book.

55. Upon information and belief, there are many establishments within 1000 yards of Informed Choices, TLC, and Mosaic facilities to which a person at the facility could go to obtain free access to a phone directory in which she could obtain lists of doctors that may provide abortions, abortion causing drugs, or contraception.

56. Upon information and belief, there are several public libraries in close proximity to Informed Choices, TLC, and Mosaic facilities to which a person at the facility could go to obtain free access to internet searching, or to a print or online phone directory, in which she could obtain lists of doctors that may provide abortions, abortion causing drugs, or contraception.

57. Upon information and belief, there are multiple federally qualified community health centers within ten miles of Informed Choices, TLC, and Mosaic facilities to which a person could go to obtain information about doctors that may provide abortions, abortion causing drugs, or contraception.

Pregnancy Center Members of the National Institute of Family and Life Advocates (NIFLA)

58.  NIFLA is a non-profit membership organization of centers providing pro-life information and services to women in unplanned pregnancies.

59.  NIFLA is incorporated as a religious organization.

60.  NIFLA provides its pro-life pregnancy center members with legal resources and counsel, with the aim of developing a network of life-affirming ministries in every community across the nation in order to achieve an abortion-free America.

61.  NIFLA's mission is to empower the choice for life by: equipping pregnancy centers with legal counsel and support; enabling pregnancy centers to convert to and maintain medical clinic status; and energizing pregnancy centers with a renewed vision for the future.

62.  NIFLA has approximately 40 members in Illinois that offer medical services, such as Informed Choices and Mosaic, and that do so in ways materially similar to the allegations made herein about Pregnancy Centers.

63.  Most of NIFLA's Illinois members that offer medical services are religious organizations that pursue their pro-life message and activities as an exercise of their religious beliefs.

64.  NIFLA's own religious mission includes helping those members advance their religious beliefs.

65.  NIFLA's Illinois members that offer medical services offer limited obstetric ultrasounds, among other services, and do so under the direction of a licensed Illinois physician serving as medical director of the facility.

66.  NIFLA's Illinois members that offer medical services, and their medical directors and licensed medical staff and volunteers, have pro-life and religious conscience objections that

prohibit them from referring a patient for an abortion, transferring a patient to an abortion provider, or providing in writing information to the patient about other health care providers who they reasonably believe may offer the patient an abortion or abortion causing drugs or devices. Their beliefs also prohibit them from developing protocol to accomplish things at their facilities, and from employing or supervising persons at their facilities who would do such things.

67.   NIFLA has organizational standing to represent all of its Illinois members that offer medical services. See *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 9 (1988).

68.   NIFLA's Illinois members that offer medical services would otherwise have standing to sue in their own right in this case.

69.   The interests that NIFLA seeks to protect among its Illinois members that offer medical services are germane to NIFLA's purpose, including the purpose to support its pro-life pregnancy center members and enable them to carry out their missions consistent with their pro-life and religious viewpoints.

70.   Neither the claims asserted nor the relief requested herein requires participation in this suit of all of NIFLA's individual members in Illinois that offer medical services, but can be awarded to those NIFLA members as a group.

71.   NIFLA incorporates by reference the allegations of the above pregnancy centers, Informed Choices, TLC, and Mosaic, paragraphs 35–57, as being materially similar to NIFLA's Illinois members that offer medical services, with regard to SB 1564's application to their activities and impact on their beliefs.

<u>Dr. Tina Gingrich and Maryville Women's Center (Tina M.F. Gingrich, M.D., P.C.)</u>

72.   For years, Dr. Tina Gingrich has served the well-being of women, children, and families as a medical doctor in Illinois.

73.  Dr. Gingrich is licensed by the State of Illinois to practice medicine.

74.  Dr. Gingrich is Board Certified in Obstetrics and Gynecology by the American Board of Obstetrics and Gynecology.

75.  Dr. Gingrich's primary office is at the medical practice she founded in 1988 in Maryville, Illinois, named the Maryville Women's Center.

76.  Dr. Gingrich operates the Maryville Women's Center through her Illinois corporate entity Tina M.F. Gingrich, M.D., P.C., of which she is the President. Tina M.F. Gingrich, M.D., P.C., doing business as Maryville Women's Center, is referred to herein as "MWC."

77.  Dr. Gingrich also serves as the medical director of Mosaic and of the medical services offered at Mosaic.

78.  MWC's motto is "Women Serving Women," and it portrays their goal to provide excellent Ob/Gyn care by an all-female staff.

79.  MWC offers a broad array of medical care including obstetrics, ultrasound, various female surgeries, menopause treatment, and a medical spa.

80.  Many women come to MWC because they want to receive medical care from doctors and staff that share Dr. Gingrich's unconditional respect for human life in all its stages, including in the womb.

81.  Dr. Gingrich and MWC practice medicine, including Obstetrics and Gynecology, aligned with the ethical medical principles of the Hippocratic Oath. This includes the principle, expressed for example in the following sentence from one translation of the Oath, that "I will use treatment to help the sick according to my ability and judgment, but never with a view to injury and wrong-doing."

- 14 -

82. Dr. Gingrich's ethical and religious principles and conscience require her consider both the women who come to her practice and their preborn children as patients and not as beings she can intentionally inflict harm upon.

83. Dr. Gingrich considers abortion a violation of her duty of medical care and of her moral and religious beliefs and conscience.

84. As part of their beliefs and religious conscience, Dr. Gingrich and MWC believe that they would be complicit in the destruction of human life and the harm to women and families that comes from abortion if they or their staff or volunteers were to refer a patient for an abortion, transfer a patient to an abortion provider, or provide in writing information to the patient about other health care providers who they reasonably believe may offer the patient an abortion.

85. By and through Dr. Gingrich's direction, MWC exercises religion and religious conscience in its adherence to ethical and religious principles that respect human life at all stages including in the womb.

86. Dr. Gingrich's and MWC's ethical and religious beliefs and conscience prohibit them from referring a patient for an abortion, transferring a patient to an abortion provider, or providing in writing information to the patient about other health care providers who they reasonably believe may offer the patient an abortion or abortion causing drugs or devices, and Dr. Gingrich's ethical and religious beliefs and conscience prohibit her acting in her capacity as medical director over personnel if they were to do so.

87. Dr. Gingrich's and MWC's ethical and religious beliefs and conscience prohibit them from adopting or assisting in the adoption of protocols that would direct a health care facility to refer a patient for an abortion, transfer a patient to an abortion provider, or providing

in writing information to the patient about other health care providers who they reasonably believe may offer the patient an abortion or abortion causing drugs or devices.

88.  It would violate the ethical and religious beliefs and conscience of Dr. Gingrich to serve as a medical director for a pregnancy center that acted, or developed protocol insuring that it acted, to refer a patient for an abortion, transfer a patient to an abortion provider, or providing in writing information to the patient about other health care providers who they reasonably believe may offer the patient an abortion or abortion causing drugs or devices.

89.  Dr. Gingrich and MWC believe they would violate their religious and ethical principles and conscience if they or their staff were to introduce into their relationships with pregnant patients the notion that abortion is a "legal treatment option," or if they were to describe "benefits" of abortion that they disagree with.

90.  Many pregnant women seeking treatment from Dr. Gingrich and MWC do not want to be told that the destruction of their children through abortion is a "legal treatment option" and has various "benefits."

91.  Upon information and belief, information about health care providers that offer abortions is readily available near MWC.

92.  Upon information and belief, many clients of MWC have internet access, often through a mobile device or wi-fi accessible device, which provides easily accessible contact information for abortion providers.

93.  Upon information and belief, internet searches, and phone directories in print and online, which are available near MWC, contain listings specifically for abortion providers and, separately, for Ob/Gyns, family practitioners, public and community health clinics, and other health care providers.

94.   Upon information and belief, information about health care providers that offer abortions is readily available near MWC, such as through phone directories, readily accessible internet searches, or public libraries.

SB 1564'S UNLAWFUL PROVISIONS

95.   The primary policy furthered by the underlying HRC Act, which was amended by SB 1564, is "to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care…." 745 ILCS 70/2.

96.   SB1564 recently amended the HRC Act to include, among other things, the following statement:  "It is also the public policy of the State of Illinois to ensure that patients receive timely access to information and medically appropriate care."  Exhibit A, SB 1564 (amending 745 ILCS 70/2).

97.   Under the HRC Act's underlying definition, "health care" is defined as "any phase of patient care, including but not limited to, testing; diagnosis; prognosis; ancillary research; instructions; family planning, counselling [sic], referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures; medication; or surgery or other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional, and mental well-being of persons."  745 ILCS 70/3.

98.   "Physician" is defined in the HRC Act as "any person who is licensed by the State of Illinois under the Medical Practice Act of 1987." *Id.*

99.   The medical directors of Informed Choices, TLC, Mosaic, and NIFLA's Illinois members offering medical services, and Dr. Gingrich, are "physician[s]" under the HRC Act.

- 17 -

100. "Health care personnel" is defined in the HRC Act as "any nurse, nurse's aide, medical school student, professional, paraprofessional or any other person who furnishes, or assists in the furnishing of, health care services." *Id*.

101. The licensed medical professionals, such as medical directors, nurses, nurse midwives, or physician assistants, working or volunteering at or through the facilities of Informed Choices, TLC, Mosaic, MWC, and NIFLA's Illinois members offering medical services, including Dr. Gingrich, are "health care personnel" under the HRC Act.

102. "Health care facility" is defined in the HRC Act as "any public or private hospital, clinic, center, medical school, medical training institution, laboratory or diagnostic facility, physician's office, infirmary, dispensary, ambulatory surgical treatment center or other institution or location wherein health care services are provided to any person…." *Id.*

103. Informed Choices, TLC, Mosaic, MWC, and NIFLA's Illinois members offering medical services, are "health care facilit[ies]" under the HRC Act.

104. "Conscience" is defined in the HRC Act as "a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." *Id.*

105. The provision of medical services by Plaintiffs (hereinafter including Plaintiffs' medical directors and staff, and NIFLA's Illinois members offering medical services) in pursuit of and consistent with their pro-life and religious beliefs, and their objection to referring a patient for an abortion, transferring a patient to an abortion provider, or providing in writing information to the patient about other health care providers who they reasonably believe may offer the patient an abortion or abortion causing drug or device, constitute Plaintiffs' exercises of conscience under the HRC Act.

106. When SB 1564 was signed into law on July 29, 2016, it added, *inter alia*, a new § 6.1 to the HRC Act.

107. This new section § 6.1 added by SB 1564 declares:

Sec. 6.1. Access to care and information protocols. All health care facilities shall adopt written access to care and information protocols that are designed to ensure that conscience-based objections do not cause impairment of patients' health and that explain how conscience-based objections will be addressed in a timely manner to facilitate patient health care services. The protections of Sections 4, 5, 7, 8, 9, 10, and 11 of this Act only apply if conscience-based refusals occur in accordance with these protocols. These protocols must, at a minimum, address the following:

(1) The health care facility, physician, or health care personnel shall inform a patient of the patient's condition, prognosis, legal treatment options, and risks and benefits of the treatment options in a timely manner, consistent with current standards of medical practice or care.

(2) When a health care facility, physician, or health care personnel is unable to permit, perform, or participate in a health care service that is a diagnostic or treatment option requested by a patient because the health care service is contrary to the conscience of the health care facility, physician, or health care personnel, then the patient shall either be provided the requested health care service by others in the facility or be notified that the health care will not be provided and be referred, transferred, or given information in accordance with paragraph (3).

(3) If requested by the patient or the legal representative of the patient, the health care facility, physician, or health care personnel shall: (i) refer the patient to, or (ii) transfer the patient to, or (iii) provide in writing information to the patient about other health care providers who they reasonably believe may offer the health care service the health care facility, physician, or health personnel refuses to permit, perform, or participate in because of a conscience-based objection.

(4) If requested by the patient or the legal representative of the patient, the health care facility, physician, or health care personnel shall provide copies of medical records to the patient or to another health care professional or health care facility designated by the patient in accordance with Illinois law, without undue delay.

See Exhibit A.

108. Section 6.1 requires Plaintiffs and their staff to refer to, transfer to, or provide information regarding, other health care providers that may provide surgical abortion, abortion causing drugs and devices, and contraception, and develop protocols to ensure the same.

109. It would violate the religious and moral beliefs and conscience of Plaintiffs and their staff to comply with SB 1564 § 6.1(3)'s directive that their "facility, physician, or health care personnel shall: (i) refer the patient to, or (ii) transfer the patient to, or (iii) provide in writing information to the patient about other health care providers who they reasonably believe may offer the health care service the health care facility, physician, or health personnel refuses to permit, perform, or participate in because of a conscience-based objection."

110. It would violate the religious and moral beliefs and conscience of Plaintiffs and their staff to comply with SB 1564 § 6.1's directive that they "shall adopt written access to care and information protocols" that "must, at a minimum, address" the requirements of § 6.1(2) & (3) that they "shall" refer to, transfer to, or give a patient information about other health care providers who may perform abortions.

111. SB 1564 § 6.1(1) requires Plaintiffs to tell every patient they treat that abortion is a "legal treatment option."

112. Defendants believe that there are several "benefits" to abortion that Plaintiffs must describe to every pregnant woman pursuant to SB 1564 § 6.1(1).

113. It would violate the religious and moral beliefs and conscience of Plaintiffs and their staff to comply with SB 1564 § 6.1(1)'s requirement that for every pregnant woman they treat, they must "inform" her that abortion as a "legal treatment option," and that they must describe "benefits" of abortion that they disagree with.

114. SB 1564, including its requirement to help women find abortion providers, forces Plaintiffs to speak in a way that contradicts the pro-life mission their facilities were founded to promote, and the reasons they entered the medical profession.

115. SB 1564 requires the Plaintiff facilities, and medical directors responsible for them, to expend resources now in order to develop SB 1564's mandated protocols.

116. SB 1564 amends the HRC Act so that it conditions the Act's conscience protections for Plaintiffs' sincerely held religious convictions, found elsewhere in §§ 4, 5, 7, 8, 9, 10, and 11 of the HRC Act, upon their compliance with § 6.1 and § 6.1(3) in its referral/transfer/information provision requirement and requirement to adopt protocols requiring the same.

117. One of the authors of SB 1564, Lori Chaiten, an attorney for the American Civil Liberties Union, testified at the Human Services Committee Hearing on May 13, 2015, that the amendments of the law would require facilities like the Plaintiffs' facilities, and licensed medical professionals like those who work or volunteer for Plaintiffs, to refer, transfer, or provide information regarding procuring an abortion when a woman requests abortion, and not just to provide a list of pro-life doctors who do not offer abortion, nor a generic list of doctors without regard to whether they perform abortions. A transcript of this hearing is attached as Exhibit B.

118. Regarding how the new provisions of § 6.1 of SB 1564 work in practice, Ms. Chaiten testified, "Well, they will refer for abortion, or they will talk to the patient about all of their options. And if the patient says 'I choose termination," they will assist that patient in – they will facilitate access to that care." *Id.*

119. The licensed medical personnel among the Plaintiffs, including Dr. Gingrich, or those working or volunteering for Plaintiffs' facilities, are regulated by the Illinois Department of Financial & Professional Regulation ("IDFPR"), directed by Defendant Schneider.

120. The IDFPR under Defendant Schneider's direction will consider it a violation of the conditions of the licenses of the licensed medical personnel working or volunteering for

Plaintiff facilities, and of Dr. Gingrich, if they do not provide the information or adopt the protocol that § 6.1 of SB 1564 says they "shall" provide and adopt.

121. Defendant Rauner is the chief executive officer of the State of Illinois, signed SB 1564 into law, and is ultimately responsible for the policies of IDFPR and any other state agency in enforcing SB 1564.

122. Plaintiffs will suffer the loss of their constitutionally and statutorily guaranteed rights of freedom of speech, free exercise of religion, and equal protection, because of the Defendants' actions, including SB 1564's mandates and threatened enforcement, unless Defendants' actions are enjoined.

123. Additionally, Plaintiffs are suffering and will suffer a chilling effect on the exercise of their rights as a result of the Defendants' actions.

124. SB 1564 and its enforcement and threatened enforcement by Defendants are actions taken under of color of state law.

125. Plaintiffs desire to continue engaging in their pro-life and religiously motivated medical services but fear penalization under SB 1564 and their staff's medical licenses if they continue to do so.

126. SB 1564 is imposing and will continue to impose irreparable harm upon Plaintiffs' free exercise of religion and free speech activities unless it is declared illegal or unconstitutional and enjoined.

127. Plaintiffs have no adequate remedy at law.

## COUNT I

**Violation of the Free Speech Protections of the First Amendment of the U.S. Constitution and Art. I, § 4 of the Illinois Constitution**

128. Plaintiffs incorporate by reference paragraphs 1–127.

129. SB 1564, namely §§ 6.1 and 6.1(1)–(3), direct that Plaintiffs (hereinafter including Plaintiffs' medical directors and staff, and NIFLA's Illinois members offering medical services), "shall" engage in speech providing information about providers of abortion, abortion causing drugs, or contraception, and written speech adopting protocols to ensure the same.

130. SB 1564, the Defendants, and the State are prohibited by the free speech provisions of the First Amendment and Art. 1, § 4 of the Illinois Constitution from imposing SB 1564 §§ 6.1 and 6.1(1)–(3)'s speech requirements, or penalizing Plaintiffs for failure to comply with the same.

131. SB 1564 § 6.1(1) requires Plaintiffs to tell pregnant women they treat that abortion is a "legal treatment option."

132. SB 1564 § 6.1(1) requires Plaintiffs to describe to pregnant women they treat all "benefits" of abortion as Defendants so deem those benefits to exist.

133. SB 1564 § 6.1(1) forces Plaintiffs to speak messages they disagree with, and which violate Plaintiffs ethical and religious beliefs and conscience.

134. The HRC Act underlying SB 1564 provides an important governmental benefit to Plaintiffs by protecting them from liability and governmental retaliation for abiding by their religious convictions and refusing to participate in abortion.

135. SB 1564 and its amendments to the HRC Act condition that benefit upon the forfeiture of their right not to engage in speech referring for or providing information to facilitate abortions, abortion causing drugs, or contraception, and adopting written protocols to ensure the same.

136. Defendants are prohibited by the free speech provisions of the First Amendment of the United States Constitution and Art. 1, § 4 of the Illinois Constitution from conditioning the

governmental benefits of the HRC Act upon the requirement that the recipient engage in speech contrary to their views.

137. Art. 1, § 4 of the Illinois Constitution can provide even more stringent protection for speech than the First Amendment of the United States Constitution, and does so for this claim.

138. Any interest Defendants have in compelling Plaintiffs to engage in their speech is outside the scope of the Act's purpose of protecting the right of conscience.

139. There is no essential nexus between forcing Plaintiffs to give up their free speech rights and a legitimate interest on the part of the State because there are multiple other avenues for the State to get the required information to women.

140. The significant burden on Plaintiffs' free speech rights resulting from being forced to speak in a way that facilitates access to services antithetical to their beliefs is not proportional to the State's limited interest in forcing these Plaintiffs to provide information to facilitate abortion since that information can be communicated in myriad other ways.

141. SB 1564 is a content based regulation of speech, and requires speech of particular content mandated by the state that provides in writing information to the patient about other health care providers who they reasonably believe may offer the health care service the health care facility, physician, or health personnel refuses to permit, perform, or participate in because of a conscience-based objection.

142. SB 1564 is a viewpoint based regulation of speech because it imposes speech on health facilities, physicians, and personnel who have conscience-based objections but not to those who have objections based on other viewpoints or who do not have conscience-based objections, and because it requires conscience-based objectors to undermine their viewpoint by the speech SB 1564 imposes.

143. There is no compelling interest sufficient to justify this substantial burden on Plaintiffs' free speech.

144. There is no significant government interest to compel Plaintiffs to engage in the speech objected to above, nor is the compulsion narrowly tailored in furtherance of such an interest.

145. Requiring Plaintiffs to refer for or provide information to facilitate abortion is not the least restrictive means of furthering any interest the State has.

## COUNT II

**Violation of the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq*.**

146. Plaintiffs incorporate by reference paragraphs 1–127.

147. Section 15 of the Illinois Religious Freedom Restoration Act of 1998, 775 ILCS 35/15 provides that:

> Free exercise of religion protected. Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest.

148. SB 1564 §§ 6.1 and 6.1(1)–(3) direct that Plaintiffs (hereinafter including Plaintiffs' medical directors and staff, and NIFLA's Illinois members offering medical services) "shall" provide certain referrals, transfers, or information pertaining to other providers that offer abortion, abortion causing drugs, or contraception, and that they shall adopt protocols ensuring the same.

149. SB 1564 § 6.1(1) requires Plaintiffs to provide information about the "benefits" of abortion as the state so deems, but the state deems abortion beneficial in ways with which the Plaintiffs disagree as a medical and religious matter.

150. SB 1564 § 6.1(1) requires Plaintiffs to tell pregnant women they treat that abortion is a "legal treatment option," but as a medical and religious matter Plaintiffs disagree that abortion is a "treatment."

151. Dr. Gingrich and MWC disagree with telling the pregnant women they treat at MWC that abortion of their unborn children is a "legal treatment option."

152. The Illinois Department of Financial & Professional Regulation will impose those directives of § 6.1 and its subsections as a condition of the medical licenses of Dr. Gingrich and Plaintiffs' medical directors, nurses, and health care personnel, and impose penalties on them for non-compliance.

153. Those directives of § 6.1 and its subsections burden Plaintiffs' religious exercise by forcing them to choose between, on the one hand, adhering to their consciences and violating the statute and facing attendant penalties, or, on the other hand, violating their conscientious beliefs against performing, transferring for, referring for, or providing names of providers who they believe may provide abortions, and developing protocol to do the same.

154. SB 1564, the Defendants, and the State have no compelling governmental interest to require Plaintiffs to provide women information about other medical providers that is readily available to any patient by running an internet search or looking in any print or online phone directory.

155. Such compulsion by SB 1564, the Defendants, and the State, is not a least restrictive means of furthering a compelling government interest when information about other medical providers is readily available to any patient on the internet or in any print or online phone directory.

156. The HRC Act underlying SB 1564 provides an important governmental benefit to Plaintiffs by protecting them from liability and governmental retaliation for abiding by their religious convictions and refusing to participate in abortion.

157. SB 1564 and its amendments to the HRC Act condition those benefits upon the forfeiture of Plaintiffs' religious beliefs that prohibit them from referring for, or providing information regarding how to obtain, abortions.

158. Moreover, the HRC Act as now amended discriminates against individuals like Plaintiffs whose religious convictions and conscience require them to not participate in abortion, and not to refer for or provide information to facilitate abortion.

159. Individuals and organizations whose religious convictions prohibit participation in abortion but do not prohibit referring for or providing information to facilitate abortion are treated more favorably by the Act.

160. There is no compelling interest sufficient to justify this substantial burden on Plaintiffs' religious beliefs.

161. Requiring Plaintiffs to refer for or provide information to facilitate abortion is not the least restrictive means of furthering any interest the State has.

## **COUNT III**

### **Violation of the Free Exercise of Religion Protected by the First Amendment of the U.S. Constitution and Art. I, § 3 of the Illinois Constitution**

162. Plaintiffs incorporate by reference paragraphs 1–127.

163. The HRC Act provides an important governmental benefit to Plaintiffs (hereinafter including Plaintiffs' medical directors and staff, and NIFLA's Illinois members offering medical services) by protecting them from liability and governmental retaliation for abiding by their religious convictions and refusing to participate in or facilitate access to abortion.

- 27 -

164. But the amendments to the Act by SB 1564 condition that benefit upon the forfeiture of their religious beliefs that prohibit them from referring to or providing information to facilitate obtaining abortions and other services.

165. Moreover, the Act as now amended discriminates against individuals and organizations like Plaintiffs whose religious convictions require them to not participate in abortion and other services, *and* not to refer for or provide information to facilitate those services.

166. Individuals and organizations whose religious convictions prohibit participation in abortion but do not prohibit referring for or providing information facilitating abortion, abortion causing drugs, or contraception are treated more favorably by the Act.

167. SB 1564 imposes a burden on the Plaintiffs' exercise of religious beliefs by forcing them to refer for, transfer to, or provide information about sources of, abortion providers.

168. The burden on Plaintiffs' religious exercise is a substantial burden.

169. SB 1564 is not religiously neutral or generally applicable.

170. There is no compelling interest, or even a rational interest, sufficient to justify SB 1564's burden on Plaintiffs' religious beliefs.

171. SB 1564's burden on Plaintiffs' religious exercise is not the least restrictive means of furthering the government's alleged interests.

## COUNT IV

### Violation of 42 U.S.C. § 238n

172. Plaintiffs incorporate by reference paragraphs 1–127.

173. 42 U.S.C. § 238n(a) declares:

(a) In general. The Federal Government, and any State or local government that receives Federal financial assistance, may not subject any health care entity to discrimination on the basis that—

(1) the entity refuses to undergo training in the performance of induced abortions, to require or provide such training, to perform such abortions, or to provide referrals for such training or such abortions;

(2) the entity refuses to make arrangements for any of the activities specified in paragraph (1); or

(3) the entity attends (or attended) a post-graduate physician training program, or any other program of training in the health professions, that does not (or did not) perform induced abortions or require, provide or refer for training in the performance of induced abortions, or make arrangements for the provision of such training.

174. 42 U.S.C. § 238n protects the individual right against discrimination possessed by Dr. Gingrich, Informed Choices, TLC, Mosaic, MWC, and NIFLA's members that offer medical services.

175. In 42 U.S.C. § 238n, "[t]he term 'health care entity' includes an individual physician…." § 238n(c).

176. In 42 U.S.C. § 238n, the term health care entity also includes any health care entity under the ordinary meaning of that term.

177. Dr. Gingrich, Informed Choices, TLC, Mosaic, MWC, NIFLA's members that offer medical services, and the individual physicians working or volunteering for them, are health care entities under 42 U.S.C. § 238n.

178. Upon information and belief, Illinois receives federal financial assistance.

179. Illinois and the departments of Illinois overseen by Defendants are a "State or local government that receives Federal financial assistance" under 42 U.S.C. § 238n(a).

180. SB 1564 requires Plaintiffs to provide referrals for abortions, or to make arrangements for providing referrals for abortions, in violation of 42 U.S.C. § 238n(a).

181. SB 1564, and Defendants' enforcement thereof, constitutes discrimination against Plaintiffs' facilities and individual physicians in violation of 42 U.S.C. § 238n.

182. Defendants' actions as described herein deprive Plaintiffs and their physicians of their rights secured by 42 U.S.C. § 238n, and are undertaken under color of State statute, under 42 U.S.C. § 1983.

## COUNT V

### Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Art. I, § 2 of the Illinois Constitution

183. Plaintiffs incorporate by reference paragraphs 1–127.

184. The Act as now amended treats similarly situated individuals and organizations differently based upon their religious convictions.

185. Organizations and individuals like Plaintiffs (hereinafter including Plaintiffs' medical directors and staff, and NIFLA's Illinois members offering medical services) whose religious convictions require them to not participate in abortion, abortion causing drugs, or contraception, *and* not to refer for or provide information facilitating such services, cannot obtain protection of the Act without violating their convictions.

186. Organizations and individuals who have no religious convictions prohibiting them from referring for or providing information facilitating abortion, abortion causing drugs, or contraception, but only believe actual participation in abortion is immoral are protected by the Act without having to violate their convictions.

187. Individuals and organizations whose religious convictions prohibit participation in abortion, abortion causing drugs, or contraception, but do not prohibit referring for or providing information facilitating the same are treated more favorably by the Act.

188. This differential treatment is based on upon the fundamental right of freedom of religion.

189. There is no compelling interest sufficient to justify this differential treatment.

190. Requiring Plaintiffs to refer for or provide information facilitating abortion is not the least restrictive means of furthering any interest the State has.

WHEREFORE, the Plaintiff respectfully requests that:

A)   This Court render a Declaratory Judgment, adjudging and declaring that SB 1564 §§ 6.1 and 6.1(1)–(3), the Amendment to the HRC Act:

1)  Violates the Free Speech Clause of the First Amendment of the United States Constitution;

2)  Violates Art. I, § 4 of the Illinois Constitution;

3)  Violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq*.;

4)  Violates the Free Exercise of Religion Clause of the First Amendment of the United States Constitution;

5)  Violates Art. I, § 3 of the Illinois Constitution;

6)  Violates 42 U.S.C. § 238n;

7)  Violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

8)  Violates Art. I, § 2 of the Illinois Constitution;

B)   This Court enter an injunction preliminarily and permanently enjoining Defendants and their agents from enforcing SB 1564 to require the Plaintiffs or their staff or volunteers to

comply with SB 1564 §§ 6.1 and 6.1(1)–(3), or to penalize or discriminate against them for non-compliance, or in any way that violates the rights of the Plaintiffs;

    C)   That this Court issue the requested injunctive relief without a condition of bond or other security being required of Plaintiffs;

    D)  This Court award Plaintiffs attorney fees and costs against the Defendants pursuant to, at least, 42 U.S.C. § 1988, Section 20 of the Illinois Religious Freedom Restoration Act, and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5; and

    E)  This Court award such other and further relief as it deems equitable and just.

    Plaintiffs demand a jury on all issues so triable.

    Respectfully submitted this 29th day of September, 2016.

   *s/ Noel W. Sterett*
Noel W. Sterett, Ill. Bar No. 6292008
John W. Mauck, Ill. Bar No. 1797328        .
Mauck & Baker, LLC
1 N. LaSalle, Suite 600
Chicago, IL 60602
(312) 726-1243
(866) 619-8661 (fax)
nsterett@mauckbaker.com
jmauck@mauckbaker.com

Kevin H. Theriot*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
ktheriot@ADFlegal.org

Matthew S. Bowman*
Alliance Defending Freedom
440 First Street NW
Washington, D.C. 20001
202.393.8690

202.347.3622 (fax)
mbowman@ADFlegal.org


Anne O'Connor*
National Institute of Family and Life Advocates
5601 Southpoint Centre Blvd.
Fredericksburg, VA 22407
(540) 372-3930
AOConnor@nifla.org

*Counsel for Plaintiffs*

**\*** Motions *pro hac vice* to be submitted

THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED

## DECLARATION UNDER PENALTY OF PERJURY

I hereby declare under penalty of perjury, including pursuant to 28 U.S.C. § 1746, that the

foregoing allegations relating to Dr. Tina Gingrich, Tina M.F. Gingrich, M.D., P.C., and Maryville

Women's Center, are true and correct.

Executed on this 17th day of September, 2016, in the United States.


Tina Gingrich, MD
Individually and on behalf of Tina M.F. Gingrich, M.D., P.C. and
Maryville Women's Center

## DECLARATION UNDER PENALTY OF PERJURY

I hereby declare under penalty of perjury, including pursuant to 28 U.S.C. § 1746, that the foregoing allegations with respect to Informed Choices and its staff, volunteers, and medical director, are true and correct.

Executed on this _20_ day of September, 2016, in the United States.

Sarah VanDerLip, Executive Director of Tri-County Crisis Pregnancy
Center, d/b/a Informed Choices
On behalf of Informed Choices

## DECLARATION UNDER PENALTY OF PERJURY

I hereby declare under penalty of perjury, including pursuant to 28 U.S.C. § 1746, that the foregoing allegations with respect to the National Institute of Family and Life Advocates (NIFLA) and its members are true and correct.

Executed on this ____19____ day of September, 2016, in the United States.

Thomas A. Glessner., Esq., President of NIFLA
On behalf of NIFLA

## DECLARATION UNDER PENALTY OF PERJURY

I hereby declare under penalty of perjury, including pursuant to 28 U.S.C. § 1746, that

the foregoing allegations with respect to TLC Pregnancy Services and its staff, volunteers, and

medical director, are true and correct.

Executed on this _____ day of September, 2016, in the United States.

Vivian Maly, Executive Director of The Life Center, Inc.,
d/b/a TLC Pregnancy Services
On behalf of TLC Pregnancy Services

## DECLARATION UNDER PENALTY OF PERJURY

I hereby declare under penalty of perjury, including pursuant to 28 U.S.C. § 1746, that

the foregoing allegations with respect to Mosaic Pregnancy & Health Centers and its staff,

volunteers, and medical director, are true and correct.

Executed on this **20** ᵗʰ day of September, 2016, in the United States.

*Kathy Sparks Lesnoff, President/CEO*

Kathy (Sparks) Lesnoff, President & CEO, Mosaic Pregnancy & Health
  Centers
On behalf of Mosaic Pregnancy & Health Centers