**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No.  16 CV 50310 |
| v. | ) ) ) | Judge Frederick J. Kapala |
| BRUCE RAUNER and BRYAN A. SCHNEIDER, | ) ) ) | Magistrate Judge Ian D. Johnston |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................... iii

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
   PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS'** ............. 1

**MOTION TO DISMISS** ............................................................................................ 1

**INTRODUCTION** .................................................................................................... 1

**FACTUAL BACKGROUND** ................................................................................... 3

**ARGUMENT** ........................................................................................................... 6

**I.**     **THIS COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS**. ............ 7

    **a.**     **Plaintiffs have stated a claim pursuant to the Equal Protection Clause
           of the Fourteenth Amendment.** ................................................................... 7

    **b.**     **Plaintiffs have stated a claim under 42 U.S.C. § 238n.** .............................. 8

        **i.**     **SB 1564 violates the 42 U.S.C. § 238n.** .......................................... 8

        **ii.**     **42 U.S.C. § 238n authorizes victims of discrimination to sue.** ........... 10

    **c.**     **GOVERNOR RAUNER IS A PROPER DEFENDANT.** .............................. 13

**II.**     **PLAINTIFFS HAVE DEMONSTRATED A LIKELIHOOD OF SUCCESS
           ON THE MERITS.** ....................................................................................... 14

    **a.**     **SB 1564 violates the right to free speech protected by the First
           Amendment.** ............................................................................................. 14

        **i.**     **SB 1564 compels speech.** ............................................................... 14

        **ii.**     **SB 1564 is subject to strict scrutiny because it is a content- and
           viewpoint-based restriction.** .......................................................... 15

        **iii.**     **SB 1564 cannot survive strict scrutiny.** .......................................... 17

        **iv.**     **Lower levels of scrutiny are inapplicable.** ...................................... 22

    **b.**     **SB 1564 violates the Free Exercise Clause of the First Amendment.** ............ 24

        **i.**     **SB 1564 burdens Plaintiffs' religious exercise.** ................................. 25

        **ii.**     **SB 1564 is neither neutral nor generally applicable.** ......................... 25

III.   PLAINTIFFS HAVE DEMONSTRATED THE REMAINING PRELIMINARY
       INUNCTION FACTORS. ............................................................................................ 26

**CONCLUSION** ....................................................................................................................... 28

# TABLE OF AUTHORITIES

*Cases***:**

*ACLU of Illinois v. Alvarez,*
    679 F.3d 583 (7th Cir. 2012) .................................................................. 7

*Alabama Fed. Savings & Loan Ass'n v.*
    *Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    680 F.2d 1384 (11th Cir. 1982) ........................................................... 11

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ...................................................................... 11,12

*Allen v. State Board of Elections*,
    393 U.S. 544 (1969) ......................................................................... 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2002) ........................................................................... 6

*Blessing v. Freestone*,
    520 U.S. 329 (1997) ......................................................................... 10

*Brown v. Entertainment Merchants Ass'n,*
    131 S. Ct. 2729 (2011) ..................................................................... 17

*Burwell v. Hobby Lobby*,
    134 S. Ct. 2751 (2014) ..................................................................... 27

*Cannon v. University of Chicago,*
    441 U.S. 677 (1979) .................................................................... 11, 12

*Christian Legal Society v. Walker,*
    453 F.3d 853 (7th Cir. 2006) .......................................................... 26, 27

*Church of the Lukumi Babalu Aye, Inc. v.*
    *City of Hialeah,*
    508 U.S. 520 (1993) ..................................................... 17, 18, 24, 25, 26

*City of Boerne v. Flores*,
    521 U.S. 507 (1997) ......................................................................... 17

*Clark v. Jeter*,
    486 U.S. 456 (1988) ........................................................................... 8

*Conant v. Walters,*
  309 F.3d 629 (9th Cir. 2002)..................................................................... 21, 22

*Cort v. Ash,*
  422 U.S. 66 (1975) ...................................................................................... 11

*Elrod v. Burns,*
  427 U.S. 347 (1976) .................................................................................... 27

*Employment Division Department of*
  *Human Resources of Oregon v. Smith,*
  494 U.S. 872 (1990) .................................................................................... 24

*Evergreen Ass'n v. City of New York,*
  740 F.3d 233 (2d Cir. 2014)........................................................................ 23

*Florida Bar v. Went-For-It, Inc.,*
  515 U.S. 618 (1995) .................................................................................... 23

*Frisby v. Schultz,*
  487 U.S. 474 (1988) ............................................................................... 20, 21

*Girl Scouts of Manitou Council, Inc. v.*
  *Girl Scouts of United States of America, Inc.,*
  549 F.3d 1079 (7th Cir. 2008) ...................................................................... 7

*Gonzaga University. v. Doe,*
  536 U.S. 273 (2002) ............................................................................... 10, 12

*Gonzales v. O Centro Espirita Beneficente*
  *Uniao do Vegetal,*
  546 U.S. 418 (2006) .................................................................................... 17

*Grutter v. Bollinger,*
  539 U.S. 306 (2003) .................................................................................... 20

*Hurley v. Irish-American Gay,*
  *Lesbian, & Bisexual Group of Boston,*
  515 U.S. 557 (1995) ............................................................................... 14, 16

*In re Primus,*
  36 U.S. 412 (1978) ...................................................................................... 22

*Jones v. Markiewicz-Qualkinbush,*
  842 F.3d 1053 (7th Cir. 2016) ...................................................................... 7

*McCullen v. Coakley,*
  134 S. Ct. 2518 (2014) ........................................................................... 15, 16

*Morr-Fitz v. Quinn,*
    2012 Ill. App. (4th) 110398 ................................................................................ 13

*Pacific Gas & Electric Co. v.*
    *Public Utilities Community of California,*
    475 U.S. 1 (1986) ............................................................................................. 27

*Planned Parenthood Southeastern Pennsylvania v.*
    *Casey,*
    505 U.S. 833 (1992) ................................................................................... 21, 23

*Plyler v. Doe,*
    457 U.S. 202 (1982) ........................................................................................... 8

*Plyler v. Doe,*
    547 U.S. 202 (1982) ........................................................................................... 8

*Pregnancy Care Center of Rockford v. Rauner*, No. 2016-MR-741,
    Memorandum Opinion and Order (Ill. 17th Judicial District, Winnebago County
    Dec. 20, 2016) .......................................................................................2, 15, 16

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015)............................................................................15, 16, 17

*Riley v. National Federal of the Blind of*
    *North Carolina*, Inc.,
    487 U.S. 781 (1988) .............................................................................14, 15, 20

*Rosenberger v.*
    *Rector & Visitors of University of Virginia*,
    515 U.S. 819 (1995) .....................................................................................15, 16

*Roe v. Wade,*
    410 U.S. 113 (1973) ......................................................................................... 18

*Schwier v. Cox,*
    340 F.3d 1284 (11th Cir. 2003) ......................................................................... 13

*Santa Clara Pueblo v. Martinez*,
    436 U.S. 49 (1978) .............................................................................................. 1

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .....................................................................................17, 24

*Stuart v. Camnitz,*
    774 F.3d 238 (4th Cir. 2014).........................................................................21, 23

*Thomas v. Collins*,
    323 U.S. 516 (1945) .................................................................................. 17

*Thompson. v.*
    *Western States Medical Center*,
    535 U.S. 357 (2002) .................................................................................. 22

*Turner Broadcasting System Inc. v.*
    *FCC* ("*Turner I*"),
    512 U.S. 624 (1994) .................................................................................. 14

*United States v.*
    *Playboy Entertainment Group, Inc.*,
    529 U.S. 803 (2000) ............................................................................ 20, 22

*Vision Church v. Village of Long Grove*,
    468 F.3d 975 (7th Cir. 2006)...................................................................... 8

*West Virginia State Board of Education v.*
    *Barnette*,
    319 U.S. 624 (1943) .................................................................................. 14

*Wooley v. Maynard*,
    430 U.S. 705 (1977) .................................................................................. 14


### *Constitutional Provision:*

United States Constitution, Free Speech Clause of the First Amendment........................ 1, 7, 22

United States Constitution, Free Exercise Clause of the First
Amendment (1974)..............................................................................2, 7, 24, 25, 26, 27

United States Constitution, Equal Protection Clause of the Fourteenth Amendment ........... 2, 7, 8

Voting Rights Act of 1965 ........................................................................... 12

### *Federal Statutes*

32 U.S.C. § 238n...............................................................................................7

42 U.S.C. § 238n ("Coats-Snowe Amendment") (1996)...........................................2, 8, 9, 10, 13

### *State Statutes*:

225 ILCS 60/2...................................................................................................5

225 ILCS 60/22 .......................................................................................................5, 6, 25

225 ILCS 65/50-10 ....................................................................................................5

225 ILCS 65/70 -5 ......................................................................................................5

745 ILCS 70/1 et seq (Illinois Healthcare Right of Conscience Act).......................1, 4, 5

745 ILCS 70/4 ............................................................................................................5

745 ILCS 70/5 ............................................................................................................5

### _Bills and Regulations:_

2012 Ill. App. (4th) 110398, ¶¶ 3, 84 .......................................................................13

Senate Bill 1564 ................................................................................................ passim

### _Rules:_

Ill. Admin. Code tit. 68, § 1285.240(a)(1) ...............................................................6

Ill. Admin. Code tit. 68, § 1300.90(a)(1) .................................................................5

### _Other Authorities:_

_Pregnancy Care Center v. Rauner_ https://adflegal.blob.core.windows.net/web-content-dev/docs/default-source/documents/case-documents/the-pregnancy-care-center-of-rockford-v.-rauner/the-pregnancy-care-center-of-rockford-v-rauner---order-granting-preliminary-injunction.pdf?sfvrsn=4 ...............................................................................2


https://www.plannedparenthood.org/health-center/IL ...........................................4

CODE OF MEDICAL ETHICS OF THE AMERICAN MEDICAL ASSOCIATION,
     American Medical Ass'n, 1.1.7 Physician Exercise of Conscience, 5 (2016)
     https://www.ama-assn.org/sites/default/files/media-browser/code-of-medical-
     ethics-chapter-1.pdf ) ........................................................................................ 19

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

Plaintiffs National Institute of Family and Life Advocates d/b/a NIFLA; Tri-County Crisis Pregnancy Center, d/b/a Informed Choices; The Life Center, Inc., d/b/a TLC Pregnancy Services; Mosaic Pregnancy & Health Centers; Tina Gingrich; and Tina M.F. Gingrich, M.D., P.C., d/b/a Maryville Women's Center, by and through their undersigned attorneys, hereby submit this memorandum of law in support of their Motion for Preliminary Injunction, filed simultaneously with this memorandum, as well as their opposition to Defendants' Motion to Dismiss. ECF Dkt. 16 (filed Dec. 16, 2016).

## INTRODUCTION

The State of Illinois enacted Senate Bill 1564 (SB 1564, amending 745 ILCS 70/1 et seq.) (attached to the Verified Complaint, hereinafter "V.C.", as Exhibit A), which targets pro-life medical professionals and facilities and requires them to promote abortions by giving women a list of doctors who may perform them. SB 1564 further forces them to discuss the "benefits" of abortion. This mandate is unnecessary since women can easily obtain information about abortion providers in many other ways, including on the internet or in a phone directory, or by the government providing it. SB 1564's restrictions apply only to conscientious objectors of abortion, but the law does not apply to health care professionals who object to abortion for non-conscience reasons. The law's effect would be to drive pro-life health professionals from medicine and social service, depriving them of their livelihood, and therefore also restricting patient choices and the free help that patients receive from these professionals.

SB 1564's regulation of protected speech violates the Free Speech Clause of the First Amendment to the United States Constitution. By forcing Plaintiffs to speak particular messages

about abortion and its providers, the law compels speech in a content-based way and also impermissibly targets conscientious objectors because of their viewpoint. Moreover, SB 1564 fails to satisfy constitutional scrutiny for this violation of free speech rights, since compelling Plaintiffs to provide such information is completely unnecessary.

SB 1564 additionally violates the Free Exercise Clause of the First Amendment. Because SB 1564 singles out for regulation only individual medical providers and health care organizations which object to abortion on the basis of their conscience, SB 1564 is not neutral toward religion. SB 1564 is also not generally applicable because its requirements only apply to individuals and organizations who refuse to perform procedures on the basis of conscience, but does not apply to other similarly situated objectors. A state court has already issued an injunction against SB 1564 on the basis that the plaintiffs there demonstrated a likelihood of success on the merits of their free speech claim under the Illinois Constitution, protecting parties substantially similar to Plaintiffs. *See Pregnancy Care Center of Rockford v. Rauner*, No. 2016-MR-741, Memorandum Opinion and Order (Ill. 17th Judicial District, Winnebago County Dec. 20, 2016).[1]

Furthermore, Plaintiffs have stated a cause of action pursuant to the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 238n. For these reasons, the Court should grant Plaintiffs' request for a preliminary injunction and deny Defendants' Motion to Dismiss.

---

[1] A copy of the opinion in *Pregnancy Care Center v. Rauner* is available at https://adflegal.blob.core.windows.net/web-content-dev/docs/default-source/documents/case-documents/the-pregnancy-care-center-of-rockford-v.-rauner/the-pregnancy-care-center-of-rockford-v-rauner---order-granting-preliminary-injunction.pdf?sfvrsn=4.

**FACTUAL BACKGROUND**

<u>Plaintiffs Offer Pregnancy Services to Women and Pro-Life Patients</u>

Plaintiffs Informed Choices, The Life Center/TLC Pregnancy Services, and Mosaic Pregnancy & Health Centers provide pro-life information and practical support to women having unplanned pregnancies so that they will be supported in choosing to give birth. V.C. ¶ 1. They provide information and support that is both medical and non-medical, is free of charge, and is offered in furtherance of their pro-life religious viewpoint and consciences. *Id*. at ¶ 3. Plaintiff National Institute of Family and Life Advocates (NIFLA) is a non-profit religious network with approximately 40 member facilities in Illinois that offer medical services, including Informed Choices and Mosaic (Informed Choices, TLC, Mosaic, NIFLA's medical Illinois members, and their medical staff, are collectively referred to herein as the "Pregnancy Centers."). *Id*. at ¶ 4. The Pregnancy Centers' religious convictions and conscience prohibit them from performing, assisting in, referring for, or participating in any way with abortion or abortion causing drugs. *Id*. at ¶ 5.

Tina Gingrich, MD, is an Illinois Ob/Gyn who has served women for decades. V.C. at ¶ 6. She offers a wide range of women's medical care at her private practice Maryville Women's Center in Maryville, Illinois, where her motto is "Women Serving Women." (Maryville Women's Center is a business of Dr. Gingrich's corporation Tina M.F. Gingrich, M.D., P.C., which are together referred to hereinafter as "MWC.") *Id*. Dr. Gingrich practices medicine in conformity with her unconditional respect for all human life, for women in all stages of life, whether or not they are pregnant, and for the children they may be carrying in their wombs. *Id*. Many women come to MWC because they want to receive medical care consistent with their own respect for the value of human life. Dr. Gingrich also provides care as the medical director for Mosaic Pregnancy & Health Centers. *Id*.

The Plaintiffs treat every unborn child as a human being with inalienable dignity, and as a patient along with the child's mother. Therefore, their religious and pro-life beliefs prohibit them from providing women with the names of doctors who may perform abortions because that would implicate them in destroying a human life and violate one of the leading principles of the Hippocratic Oath, which is that doctors do no harm to those under their care. V.C. at ¶¶ 48–49, 66, 87–89. Plaintiffs' ethical and religious beliefs also lead them to not consider abortion to have significant medical "benefits," and do not consider it a "treatment option." *Id.* Dr. Gingrich has many patients who would be offended if she suggested that abortion is a "treatment option" or has medical "benefits." *Id.* at ¶ 90.

Contact information about doctors who perform abortions is ubiquitous. It is widely available, including on the internet, through most people's smartphones or otherwise, and in any paper phone directory still distributed, or in both sources at a local library, or the government can make it available itself. V.C. at ¶¶ 51–57, 91–94. More detailed information about abortion is available from doctors or pharmacists who provide them. Furthermore, abortion providers such as Planned Parenthood—which offers abortion services at several Illinois clinic locations, *see* Planned Parenthood, Illinois locations, https://www.plannedparenthood.org/health-center/IL—are well known throughout the United States

SB 1564 Forces Pro-Life Medical Providers to Distribute Abortion-Doctor Information

Defendant Governor Rauner signed Senate Bill 1564, *see* V.C. Exh. A, into law on July 29, 2016. SB 1564 amended the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 *et seq.* ("the HRC Act").

SB 1564 declares, in section 6.1, that "[a]ll health care facilities shall adopt written access to care and information protocols" requiring the facilities or their personnel to provide certain

information to patients if the facilities or medical professionals have a conscientious objection to providing certain services. V.C. Exh. A. Under the protocols the "facility, physician, or health care personnel shall inform a patient of the patient's … legal treatment options, and risks and benefits … consistent with current standards of medical practice or care." *Id.* If the facility, physician, or health care personnel object to a particular health care service, "then the patient shall either be provided the requested health care service by others in the facility" or they "shall: (i) refer the patient to, or (ii) transfer the patient to, or (iii) provide in writing information to the patient about other health care providers who they reasonably believe may offer the health care service." *Id.* The HRC Act defines the Plaintiff pregnancy centers as health care facilities because they provide some medical services to patients. V.C. at ¶ 99–103.

SB 1564 specifies that if its required speech and speech protocols do not occur, "[t]he protections of Sections 4, 5, 7, 8, 9, 10, and 11 of this [HRC] Act" do not apply. V.C. Exh. A. Notably, section 4 of the HRC Act otherwise protects physicians and health care personnel from being "civilly … liable to any … public … entity or public official," and section 5 bans any "public … institution … or public official [from] discriminat[ing] against any person in any manner, including … licensing" because they object to providing health information such as SB 1564 section 6.1 requires. 745 ILCS 70/4 & 70/5.

Thus, SB 1564 allows Defendant state officials and their entities to enforce SB 1564's mandates on the Plaintiffs' and their licensed medical staff. The Illinois Department of Financial and Professional Regulation (IDFPR) has preexisting statutory authority to discipline physicians, nurses, or other licensed medical professionals. *See* 225 ILCS 60/22 ("The Department" may discipline licensed physicians); 225 ILCS 65/70-5 (same for nurses); 225 ILCS 60/2 & 65/50-10 (defining the "Department" as IDFPR).

IDFPR may revoke physicians' and nurses' licenses and impose fines up to $10,000 per offense. 225 ILCS 60/22 (physicians); 225 ILCS 65/70-5(a) (nurses). IDFPR asserts that it can punish physicians for activities that are "violative of ... respect [for] the rights of patients" or of "laws ... pertaining to any relevant specialty," or that "[c]onstitute a breach of the physician's responsibility to a patient." Ill. Admin. Code tit. 68, § 1285.240(a)(1). IDFPR asserts it can punish nurses for activities it deems are "likely to deceive, defraud or harm the public, or demonstrating a willful disregard for the health, welfare or safety of a patient," or that it deems "[a] departure from or failure to conform to the standards of practice," and in either case "[a]ctual injury need not be established." Ill. Admin. Code tit. 68, § 1300.90(a)(1). Defendant Schneider of IDFPR carries out his responsibilities under Governor Rauner.

## ARGUMENT

In order to survive a Motion to Dismiss, Plaintiffs' Complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2002)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. The Court must therefore accept as true all well-pleaded factual allegations. Plaintiffs have amply stated their claims and provided specific facts to support them, and the Court should therefore deny Defendants' Motion to Dismiss.

Plaintiffs are entitled to a preliminary injunction under their First Amendment Freedom of Speech and Free Exercise claims. To obtain a preliminary injunction, the Plaintiffs must show that (1) they will suffer irreparable harm in the period before final resolution of their claims; (2) traditional legal remedies are inadequate; and (3) the Plaintiffs demonstrate that their claims

have some likelihood of success on the merits. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc*., 549 F.3d 1079, 1086 (7th Cir. 2008). Once Plaintiffs have made this showing, the Court "will weigh the factors against one another, assessing whether the balance of harms favors them or whether the harm to other parties or the public is sufficiently weighty that the injunction should be denied." *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1058 (7th Cir. 2016) (citing *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012)). For decades, Plaintiffs' patients have never needed SB 1564's mandatory abortion information. An injunction would preserve the status quo. Unless the Court issues a preliminary injunction prohibiting Defendants and their agents from enforcing SB 1564, Plaintiffs face immediate and irreparable harm to their rights. Plaintiffs have demonstrated all of these factors, and are therefore entitled to injunctive relief.

## I.   THIS COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS.

This Court should deny Defendants' Motion to Dismiss because Plaintiffs have amply stated a claim under the Equal Protection Clause of the Fourteenth Amendment, 32 U.S.C. § 238n, the Free Speech Clause of the First Amendment, and the Free Exercise Clause of the First Amendment. Plaintiffs' claims under the Free Speech and Free Exercise clauses of the First Amendment are discussed in greater detail in Section II.

Plaintiffs agree to withdraw their state law claims without prejudice. Such claims include the Religious Freedom Restoration Act, as well as free speech, free exercise, and equal protection claims under the Illinois Constitution.

### a.   Plaintiffs have stated a claim pursuant to the Equal Protection Clause of the Fourteenth Amendment.

SB 1564 treats similarly situated individuals and organizations differently based upon their religious convictions in violation of the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws, which essentially is a direction that all persons similarly situated should be treated alike." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006) (internal citations omitted); *see also Plyler v. Doe*, 547 U.S. 202, 216 (1982). Strict scrutiny "is appropriate when government action interferes with a person's fundamental rights, such as freedom of speech or religion." *Vision Church*, 468 F.3d at 1000. Distinctions among similarly-situated groups that affect fundamental rights "are given the most exacting scrutiny," *Clark v. Jeter*, 486 U.S. 456, 461 (1988), and discriminatory intent is presumed, *see Plyler v. Doe,* 457 U.S. 202, 216-17 (1982) ("[W]e have treated as presumptively invidious those classifications that … impinge upon the exercise of a 'fundamental right.'").

Organizations and individuals like Plaintiff whose religious convictions require them to not participate in abortion, or abortion causing drugs, and not to refer for or provide information facilitating such services, cannot obtain protection of SB 1564 without violating their convictions. However, organizations and individuals who have no religious convictions prohibiting them from referring for or providing information facilitating abortion, or abortion causing drugs, but only believe actual participation in abortion is immoral are protected by SB 1564 without having to violate their convictions. Such individuals are therefore treated more favorably than Plaintiffs as a result of SB 1564. Thus, SB 1564 engenders strict scrutiny.

As explained in greater detail in Section II.a.iii, SB 1564 cannot withstand strict scrutiny, and is therefore invalid under the Equal Protection Clause.

### b.  Plaintiffs have stated a claim under 42 U.S.C. § 238n.

#### i.  SB 1564 violates the 42 U.S.C. § 238n.

SB 1564 violates 42 U.S.C. § 238n, the Coats Snowe Amendment, because it impermissibly discriminates against pro-life medical professionals and organizations, such as

Plaintiffs, because they refuse to provide referrals or make arrangements for referrals for abortions.

The Coats Snowe Amendment states:

> (a) In general. The Federal Government, and any State or local government that receives Federal financial assistance, may not subject any health care entity to discrimination on the basis that—
>
> (1) the entity refuses to undergo training in the performance of induced abortions, to require or provide such training, to perform such abortions, or to provide referrals for such training or such abortions;
>
> (2) the entity refuses to make arrangements for any of the activities specified in paragraph (1); or
>
> (3) the entity attends (or attended) a post-graduate physician training program, or any other program of training in the health professions, that does not (or did not) perform induced abortions or require, provide or refer for training in the performance of induced abortions, or make arrangements for the provision of such training.

42 U.S.C. § 238n. "The term 'health care entity' includes an individual physician…." *see id*. at § 238n(c). Upon information and belief, the state of Illinois receives federal funding, and is therefore subject to this law.

SB 1564 discriminates against Plaintiffs and similarly situated individuals and organizations because it subjects only conscientious objectors to abortion to its requirements. SB 1564 additionally requires such conscientious objectors to provide referrals or make arrangements for referrals for abortions. The State contends that SB 1564 does not contain a referral requirement, because one option of compliance is to provide information to patients about health care providers who they reasonably believe may offer abortion services. *See* State Br. at 24. However, this provision clearly qualifies as requiring a "referral," or at the very least an "arrangement for a referral," for it requires objecting medical professionals such as Plaintiffs, to provide contact information for abortion doctors. By definition that is referring the patient to another doctor. At

the very least, it is an "arrangement" for a referral, and therefore within the purview of the Coats Snowe Amendment. SB 1564 thus violates 42 U.S.C. § 238n.

### ii. 42 U.S.C. § 238n authorizes victims of discrimination to sue.

Contrary to Defendants' claims that Congress did not intend to create a private right of action in 42 U.S.C. § 238n, under Supreme Court precedent, the text of 42 U.S.C. § 238n creates both an individual right and a private remedy ("right of action") for victims such as Plaintiffs. Under Supreme Court case law, many statutes contain an implied right of action even without an explicit one. To determine whether an implied private right of action exists, the Supreme Court engages in a two-step analysis: (1) does the statute create a right for the plaintiff; and (2) does it imply a remedy. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–86 (2002).

The Coats Snowe Amendment protects the rights of individual medical providers and health care entities. The Supreme Court has provided factors to help determine whether a statute creates an individual right: (1) "Congress must have intended that the provision in question benefit the Plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (internal citations and quotation marks omitted). All of these factors are satisfied by a statute such as 42 U.S.C. § 238n(a). The provision unequivocally protects the Plaintiffs: its plain terms protect individuals and organizations from discrimination on the basis of their refusal to refer or make arrangements for referrals for abortions. Such a right is contained in § 238n's explicit language, which forbids the government from discriminating against any health care entity or individual physician who refuses to require or "provide referrals for . . . .abortions" or to make arrangements for referrals for abortion. *See id.* at § 238an(a)(1)-(2). Furthermore, § 238n(a)

10

unquestionably provides a binding obligation, as it expressly prohibits any government entity receiving federal funding from discriminating on the basis of an individual's or organization's refusal to provide referrals or to make arrangements for referrals for abortion.

Furthermore, §238n(a) contains an implied remedy. The bulk of Supreme Court precedent shows that implied remedies exist particularly in statutes such as §238n. SB 1564 requires Plaintiffs to provide information about abortion doctors, and in doing so directly discriminates against conscientious objectors to abortion, in direct violation of 42 U.S.C. § 238n. "[T]his Court has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case." *Cannon v. U. of Chi.*, 441 U.S. 677, 690 n.13 (1979). That assertion is still true today, and requires the implication of a remedy for Plaintiffs to sue under § 238n.

The Supreme Court recognizes an implied remedy based on factors similar to those considered for discerning rights. These generally include: (1) Whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) Whether there is explicit or implicit legislative intent to create or to deny such a remedy; (3) Whether the right of action would be consistent with the purposes of the legislative scheme; and (4) Whether the cause of action is inappropriate for federal law because it is traditionally a concern of the States. *Cort v. Ash*, 422 U.S. 66, 78 (1975) (quotation marks and citations omitted). Recent precedent has not rendered any of these individual *Cort* factors irrelevant to the analysis, but it has placed primary emphasis on the second factor, legislative intent. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *see also Ala. Fed. Sav. & Loan Ass'n v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 680 F.2d 1384, 1386 (11th Cir. 1982) ("[L]egislative intent is the principal factor in determining the existence of

implied rights of action."). The other factors remain relevant and are considered in light of their implications for legislative intent.

Although the right and remedy inquiries are conceptually distinct, they overlap in substance. "Not surprisingly, the right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action." *Cannon*, 441 U.S. at 690 n.13. In other words, statutes creating rights have been found to imply rights of action, while cases where the Court found no right of action did so largely based on factors also showing that the statute never created an individual right. *Id.* The Supreme Court has recognized implied private rights of action in numerous statutes whose purposes were to guarantee individual rights. Among many examples is an implied private right of action in the Voting Rights Act of 1965. *Allen v. St. Bd. of Elections*, 393 U.S. 544, 556 (1969). As quoted above, *every time* the Court has observed an individual right, it has inferred a private lawsuit remedy. *Cannon*, 441 U.S. at n.13. *Cannon* lists a catalog of decisions recognizing such implied rights of action. *Id.*

When Congress said that Defendants may not impose requirements on the moral beliefs of individual Plaintiffs regarding abortion, its actions evinced an intent to permit a private remedy. In *Allen*, the Court explained that an implied action existed because Congress "drafted [the law] to make the guarantees of the Fifteenth Amendment finally a reality for all citizens." 393 U.S. at 556. *Cannon*, in a section favorably cited in *Sandoval*, 532 U.S. at 288, and *Gonzaga*, 536 U.S. at 284 & n.3, declares that the Supreme Court has never failed to recognize an implied remedy in a circumstance involving individual statutory rights. *Cannon*, 441 U.S. at 690 n.13.[2] As discussed in the citations above, all of the ordinarily relevant statutory indicators that Congress might *not*

---

[2] The one exception, *Cannon* notes, was where Congress' known purpose in support of Indian tribal sovereignty was incompatible with an implied remedy because it overrode protected rights that tribal remedies also protected. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978).

have implied a private remedy are absent in this case, and the characteristics indicating that Congress did imply a remedy are present here. If an explicit individual protection like subsection (d) lacks an implied remedy, all statutes lack an implied remedy—which would negate and overturn the Supreme Court's implied remedy jurisprudence.

It is of no moment that §238n(a) confers rights on "entities." In *Schwier v. Cox,* the statutory language prohibited "federal, state, or local agencies from denying 'any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number' to the agency." 340 F.3d 1284, 1288 (11th Cir. 2003). The court admitted that this language was not as explicit as language saying no individual shall suffer adverse action, but regardless found an enforceable right. *Id*. at 1292 ("The relevant clauses of [statutes which conferred rights] is "person," whereas the subject of the relevant clause of the Privacy Act is "it"). Here, Congress has created individual rights protecting the class of health care personnel and organizations to which Plaintiffs belong.

Accordingly, this Court should find that Plaintiffs have stated a cause of action under the Coats Snowe Amendment of 42 U.S.C. § 238n and deny Defendants' Motion to Dismiss.

### c. GOVERNOR RAUNER IS A PROPER DEFENDANT.

The State contends that suit is not appropriate against Governor Rauner. But in *Morr-Fitz v. Quinn*, a case on which the State extensively relies, the trial court issued an order "enjoining defendants," and the appeals court order likewise "enjoins defendants." 2012 Ill. App. (4th) 110398, ¶¶ 3, 84. "Defendants" in that case included the Governor, Pat Quinn. The same grounds for enjoining the Governor from enforcement of the conscience-violating rule in *Morr-Fitz* apply to enjoining his enforcement of SB 1564. Both are ultimately under the Governor's enforcement responsibility as well as IDFPR's.

13

This Court should therefore deny Defendants' Motion to Dismiss.

## II. PLAINTIFFS HAVE DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS.

### a. SB 1564 violates the right to free speech protected by the First Amendment.

#### i. SB 1564 compels speech.

SB 1564 impermissibly compels Plaintiffs to communicate the government's message. The Supreme Court has explained that the "right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'" *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citing *W.V. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943)). Accordingly, the Court has emphasized that the First Amendment protects not only the right of a speaker to choose what to say, but also the right of the speaker "to decide what not to say." *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995) (internal quotation marks and citation omitted). In this manner, the First Amendment "presume[s] that speakers, not the government, know best both what they want to say and how to say it." *Riley v. Nat'l Fed. of the Blind of N.C.*, Inc., 487 U.S. 781, 791 (1988). Therefore, the government "may not substitute its judgment as to how best to speak for that of speakers and listeners; free and robust debate cannot thrive if directed by the government." *Id*. at 791. The First Amendment protects Plaintiffs from being compelled to engage in government-sanctioned speech.

"In the context of protected speech," any "difference between compelled speech and compelled silence . . . is without constitutional significance." *Id*. at 796. "Laws that compel speakers to utter or distribute speech bearing a particular message are subject to the same rigorous scrutiny" as those "that suppress, disadvantage, or impose differential burdens upon speech because of its content." *Turner Broad. Sys. Inc. v. FCC* ("*Turner I*"), 512 U.S. 624, 642 (1994).

Similarly, there is no distinction between "compelled statements of opinion" and "compelled statements of 'fact': either form burdens protected speech." *Id*. at 797–98.

SB 1564 compels speech because it requires medical providers to provide referrals or to make arrangements for referrals for abortion, and additionally requires medical providers to speak to their patients about the "benefits" of abortion. The speech is required notwithstanding the professional opinion or personal views of the physician. An Illinois trial court found that SB 1564 does "in fact" compel speech. *See Pregnancy Care Center of Rockford*, No. 2016-MR-741, Memorandum Opinion and Order at 9 (Ill. 17th Judicial District, Winnebago County Dec. 20, 2016). SB 1564 unquestionably compels speech, and is therefore subject to First Amendment scrutiny.

### ii. SB 1564 is subject to strict scrutiny because it is a content- and viewpoint-based restriction.

SB 1564 is subject to strict scrutiny because it is a content-based law. A compelled speech law is "content-based," because "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley*, 487 U.S. at 795. "A law that is content based on its face is subject to strict scrutiny." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015); *McCullen v. Coakley,* 134 S. Ct. 2518, 2530 (2014) (laws that are content or viewpoint based "must satisfy strict scrutiny*"*). SB 1564 is subject to strict scrutiny because it forces Plaintiffs to give information about doctors who may offer abortions and to speak about abortion as a treatment option with benefits.

In fact, SB 1564 goes further than being simply content-based. It is a law disfavoring Plaintiffs' viewpoint, and therefore impermissibly viewpoint-based. "Viewpoint discrimination is . . . an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of U. of Va.*, 515 U.S. 819, 829 (1995). SB 1564 does not apply to all medical providers or all those that do not

provide abortions: it singles out conscientious objectors and only applies its compelled speech requirement in the context of "conscience-based refusals." V.C. Exh. A. The law is an explicit attack grounded on one's conscientious belief. Therefore, it is viewpoint based, and unconstitutional *per se*. *See Hurley*, 515 U.S. at 579 ("The Speech Clause has no more certain antithesis" than to "interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government.").

On its face, the law does not require the speech of all doctors, and not even of all "refusing" doctors, but only "if conscience-based refusals occur." SB 1564 § 6.1. This places a special speech burden on the viewpoint of religious objectors to abortion. By definition, the law is based on the perspective of the speaker, who must recite particular disclosures that are not mandated on others who hold different views. This constitutes facial content discrimination under *Reed* and *McCullen*, viewpoint discrimination under *Rosenberger*, and must be subjected to strict scrutiny (if it is not regarded as *per se* unconstitutional as viewpoint discriminatory, *see Hurley*, 515 U.S. at 579). In the Illinois state court case challenging SB 1564, the court noted that it was of noted that it was of "particular concern that SB 1564 seeks to compel speech on 'public issues,' and that it imposes its restrictions selectively upon only those who may invoke a conscientious objection to participation in them." *See Pregnancy Care Center of Rockford*, No. 2016-MR-741, Memorandum Opinion and Order at 1 (Ill. 17th Judicial District, Winnebago County Dec. 20, 2016).

The special constitutional offense in a viewpoint discriminatory law such as SB 1564 is that the government is abusing its regulatory power: targeting particular perspectives instead of addressing an alleged problem straightforwardly. Such an approach strongly suggests that instead of responding to an actual concern the government has defined dissenters as the "problem," which

it must never do. "The vice of content-based legislation ... is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes." *Reed*, 35 S. Ct. at 2229. When this targeting implicates free speech, such as by mandating disclosures, it runs afoul of constitutional speech protections in the most egregious way. Even in a commercial or medical context, more than intermediate scrutiny is required and laws that regulate protected speech will rarely be upheld. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563–65 (2011).

### iii. SB 1564 cannot survive strict scrutiny.

#### 1. SB 1564 does not serve any compelling government interest.

In order to satisfy strict scrutiny, the government must demonstrate that SB 1564 is narrowly tailored to achieve a compelling government interest. *See Lukumi*, 508 U.S. at 546. It cannot meet this exacting standard. Strict scrutiny is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), and is implicated only by "the gravest abuses, endangering paramount interests." *Thomas v. Collins*, 323 U.S. 516, 530 (1945). The Court must look "beyond broadly formulated interests" and determine whether "particular religious claimants" can be exempted. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). If the government's "evidence is not compelling," it fails its strict scrutiny burden. *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2739 (2011).

The government does not have a compelling interest to force SB 1564's compelled disclosures on pro-life doctors and pregnancy centers. The State asserts it has two compelling interests: (1) "protecting the health and autonomy of its citizens by ensuring that they receive the information that they need to make informed medical decisions," and (2) "ensuring that health care providers conform to the ethical standards of their professions." *See* Ds.' Mot. to D. at 13.

17

First, generic interests, such as protecting "health" or the "autonomy of citizens," are not compelling. *See, e.g, O Centro Espirita*, 546 U.S. at 431. The government must show a compelling interest to force "particular claimants"—pro-life pregnancy centers and doctors—to tell women the names of abortion providers, or that abortion is a "treatment option" for pregnancy. But this is impossible. The names of abortion providers are available instantly in many places, including online—even in most people's pockets on their phones—by a simple internet search. Even positing someone without internet access, they could go to a library and look up those names, or a gas station to ask to borrow the phone book, or the government can provide that information itself. Moreover, in the 44 years since the Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973), declaring abortion a constitutional right, it is impossible for women not to know that abortion is a "treatment option."

SB 1564 also does not serve a compelling interest because it singles out conscientious objectors rather than imposing its mandate on all medical facilities. "[A] law cannot be regarded as protecting an interest 'of the highest order' when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547 (internal citations omitted). SB 1564's mandatory speech provision only applies in the context of "conscience-based refusals." V.C. Exh. A. Thus, it coerces the Plaintiffs, who do not provide abortions as a matter of conscience. SB 1564 does not impose its speech-compelling disclosures on all medical facilities and professionals treating pregnancy, nor even on all that refrain from abortions. SB 1564 only compels speech from medical providers who do not do abortions based on a conscientious objection. If they do not do abortions for other reasons, SB 1564 does not apply. This leaves "appreciable damage" to the government's claimed interest: if a woman goes to a medical provider who does not do abortions for some other, non-conscience reason, the state is content to leave her

without SB 1564's mandatory information. There is no compelling interest for the state to discriminatorily target conscientious objectors.

Furthermore, while the State has the authority to regulate the practice of medicine, SB 1564 does not serve the government's interest in "ensuring that health care providers conform to the ethical standards of their professions." Contrary to Defendants' allegations, SB 1564 does not codify standard medical practice, but instead reaches further than standard ethical requirements when it requires Plaintiffs to provide information about abortion doctors, as well as information about the "benefits" of abortion. Conscience-based refusals—including refusals to provide information about abortion doctors or to discuss the "benefits" of abortion—are commonplace in the medical community. *See* CODE OF MEDICAL ETHICS OF THE AMERICAN MEDICAL ASSOCIATION, American Medical Ass'n, 1.1.7 Physician Exercise of Conscience, 5 (2016) (https://www.ama-assn.org/sites/default/files/media-browser/code-of-medical-ethics-chapter-1.pdf) ("Preserving opportunity for physicians to act (or to refrain from acting) in accordance with the dictates of conscience is important for preserving the integrity of the medical profession, as well as the integrity of the individual physician, on which patients and the public rely. Thus, physicians should have considerable latitude to practice in accord with well-considered, deeply held beliefs that are central to their self-identities"). Furthermore, where a "deeply held, well-considered personal belief leads a physician to also decline to refer, the physician should offer impartial guidance to patients about how to inform themselves regarding access to desired services." *Id.* at 6. Therefore, the idea that a physician can refuse to refer on the basis of sincerely held religious beliefs is accepted within the medical community. The standard of care applicable to Illinois doctors does not require medical professionals to refer for abortions, or to discuss the "benefits" of abortions where such actions violate a physician's religious beliefs.

19

The State also has no interest in forcing Plaintiffs to discuss the "benefits" of abortion, or to tell women it is a "treatment option." But there is no need to require pro-life pregnancy centers, doctors, and nurses to speak what a woman will necessarily be able to easily learn elsewhere, whether from the internet or a doctor she must see if she wants an abortion. And she can find that doctor in an instant in many ways.

### 2. SB 1564 is not narrowly tailored to Illinois' alleged interests.

SB 1564 additionally fails strict scrutiny because it is not narrowly tailored to the State's asserted interests. The State bears the burden of demonstrating that there are no less restrictive alternatives that would further its alleged interests. *See Playboy*, 529 U.S. at 813. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988).

The least restrictive means test requires a "serious, good faith consideration of workable … alternatives that will achieve" the alleged interests. *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). The Court should not assume that "plausible, less restrictive alternative[s] would be ineffective." *Playboy Entm't Grp., Inc.*, 529 U.S. at 824. Even when the government insists it must force persons to speak, the least restrictive means test requires the government to use alternative methods such as engaging in its own speech itself, or prosecuting alleged harms directly instead of imposing prophylactic disclosures. *Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 799–800 (1988).

The State has completely failed to pursue a wide range of less restrictive alternatives. As the Supreme Court has explained, "[b]road prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *Riley*, 487 U.S. at 801 (internal quotations and citations omitted). "In

contrast to the prophylactic, imprecise, and unduly burdensome" law adopted by the Illinois Legislature, "more benign and narrowly tailored options are available." *See id.* at 800. The State has the ability to prosecute wrongdoing by doctors where patients are harmed and the state medical board has the authority to discipline doctors who engage in wrongdoing, yet the State has refused to employ these options to combat any alleged harm.

SB 1564 also fails the narrow tailoring inquiry because it fails to "target[] and eliminate[] no more than the exact source of the 'evil' it seeks to remedy." *Frisby,* 487 U.S. at 485. SB 1564 is a prophylactic speech restriction, which applies to all pro-life medical providers and pro-life pregnancy centers across the board, without reference to whether such a center has engaged in, or even been accused of, wrongdoing. SB 1564 seeks to restrict speech without specifically targeting any alleged wrongdoing, and therefore fails narrow tailoring.

In *Stuart v. Camnitz*, the Fourth Circuit struck down a requirement that doctors describe fetal facts to women about to receive abortions. 774 F.3d 238, 246 (4th Cir. 2014). The court admitted the disclosure was factual and was incident to performing surgery, but deemed it too politically charged. *Planned Parenthood Se. Pa. v. Casey*, 505 U.S. 833 (1992), and other cases allowing for informed consent before a particular surgery (abortion) are inapplicable because SB 1564 is not a pre-surgery informed consent law. Informed consent laws are different because they apply only before a medical procedure, and they apply before all such procedures, so they are viewpoint neutral. SB 1564 is purposefully not a pre-procedure informed consent law because it only applies to conscience based objections—meaning, to the non-performance of a procedure, and only to some of those.

The Ninth Circuit recognized the free speech rights of doctors in *Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002), and struck down a law that banned recommending medical

marijuana. Here, SB 1564 mandates that pro-life facilities and personnel recommend abortion: for that is the nature result of compelling a pro-life doctor to speak the message that abortion is a treatment for pregnancy, tout its benefits, and hand out abortion providers' contact information.

Moreover, the Supreme Court has explained that "[i]f the First Amendment means anything, it means that regulation of speech *must* be a last-not first resort. Yet here it seems to have been the first strategy the Government thought to try." *Thompson. v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002). The state's use of compelled speech as "the first strategy" it thought to try, and its failure to consider many other available options, ends the analysis. So long as there is another mechanism for the government to convey its message, SB 1564 cannot survive strict scrutiny. *Playboy*, 529 U.S. at 813 ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative.") For these reasons, SB 1564 cannot survive scrutiny under the Free Speech Clause.

### iv. Lower levels of scrutiny are inapplicable.

SB 1564 should not receive a lower level of scrutiny under the commercial speech or professional speech doctrine for several reasons. First, Plaintiffs offer all their services free of charge, and thus they are not commercial speakers. Regulated professionals acting for no charge and to advance public advocacy receive the highest level of protection for their speech. *See In re Primus*, 36 U.S. 412 (1978) (requiring strict scrutiny, not intermediate scrutiny, to be imposed on a law burdening the speech of attorneys at the ACLU).

Additionally, in either a non-profit or for-profit context the doctor-patient relationship is sacrosanct and should not be interfered with absent strict scrutiny. Speech by doctors to patients about controversial issues "may be entitled to 'the strongest protection our Constitution has to offer.'" *Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002) (striking down a law regulating

whether doctors can recommend medical marijuana) (citing *Fla. Bar v. Went-For-It, Inc.*, 515 U.S. 618, 634 (1995)).

Lower scrutiny is especially inapplicable when the state is not ensuring that informed consent happens for a medical procedure. SB 1564 is not an informed consent law like the statute at issue in *Casey*, 505 U.S. at 881–83. It is an attempt to force speech when a medical facility or professional is not performing a procedure. This law implicates none of the government's interests in ensuring that when a patient does have a surgery, she provides informed consent. SB 1564 is a simple attempt to force medical professionals to speak messages about controversial health issues to which they object.

SB 1564 would fail free speech analysis even under a lower level of scrutiny. The Fourth Circuit struck down disclosures relating to abortion in *Stuart*, 774 F.3d at 246, where it held that a law that requires doctors to describe fetal facts to a woman prior to an abortion, because those facts "fall on one side of the abortion debate." The Second Circuit also ruled that forcing a pro-life center to speak about abortion and refer to other medical providers is unconstitutional either under the strict or intermediate scrutiny test. *Evergreen Ass'n v. City of N. Y.*, 740 F.3d 233, 249–50 (2d Cir. 2014). The compelled speech in *Evergreen* was much less burdensome than that at issue here: whereas in *Evergreen* the court held it unconstitutional to require a pro-life facility to simply say that they do not offer abortion or birth control, SB 1564 requires the Plaintiffs to provide specific contact information for abortion providers, speak of abortion's benefits, and recite it is a treatment option. SB 1564's speech-compelling mandates warrant strict scrutiny, even under *Evergreen's* rationale, as they act as "a law that requires a speaker to advertise on behalf of the government," namely, for those abortion providers whose contact information Plaintiffs must distribute. 740 F.3d

23

at 250. Likewise, the Supreme Court has struck down such content-based speech restrictions even in the commercial pharmaceutical context. *Sorrell*, 564 U.S. at 563–65.

> **b. SB 1564 violates the Free Exercise Clause of the First Amendment.**

SB 1564 violates the Free Exercise Clause of the First Amendment because it is neither neutral toward religion nor is it generally applicable. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Lukumi*, 508 U.S. at 532.

*Smith* established that burdens on religiously-motivated conduct are subject to strict scrutiny under the Free Exercise Clause when a regulation lacks neutrality or general applicability. *Emp. Div. Dep't of Hum. Res. of Or. v. Smith,* 494 U.S. 872, 879 (1990); *see also Lukumi*, 508 U.S. at 531 (same). Both are missing here. "If the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Lukumi*, 508 U.S. at 532. Furthermore, laws that are "underinclusive" to a government's asserted interests are not generally applicable. *See id.* at 543.

### i. SB 1564 burdens Plaintiffs' religious exercise.

SB 1564 unquestionably implicates Plaintiffs' religious exercise, and clearly discriminates against religious objectors to providing abortion services, because such religious conduct "is undertaken for religious reasons." *See Lukumi*, 508 U.S. at 532. The government is providing an important benefit when it permits conscientious objectors to refuse to provide medical services or refer for such services that violate their religious beliefs, but it has impermissibly conditioned that benefit on the relinquishment of religious beliefs—by forcing Plaintiffs to provide information on abortion doctors, as well as information concerning the "benefits" of abortion—in violation of the Free Exercise Clause. SB 1564 requires that pro-life doctors and pregnancy centers adopt written protocols, which "must" include provisions by which Plaintiffs and their medical staff "shall" tell women of the abortion's "benefits" and that it is a "treatment option" for pregnancy, and then they must either provide abortion or inform women of providers they reasonably believe may offer her an abortion. V.C. Exh A. But Plaintiffs have deep religious objections to doing so, and the religious objections to abortion are well known. The penalties for violating SB 1564 are draconian. The IDFPR has broad authority to not only revoke the licenses of Plaintiffs' doctors and nurses, but to fine those professionals $10,000 per offense. 225 ILCS 60/22; 225 ILCS 65/70-5(a).

### ii. SB 1564 is neither neutral nor generally applicable.

On its face, the law is not neutral toward religion: by its very terms, it only applies to medical providers who object to abortions on the basis of their conscience. SB 1564 singles out conscientious objectors—whose objections are most often based sincerely held religious beliefs, such as Plaintiffs here—and only applies its compelled requirements in the context of "conscience-based refusals." SB 1564 effectively singles out religious medical providers for regulation, but leaves completely unregulated medical providers without conscientious objections to procedures.

SB 1564 directly infringes on religious practice because of their religious motivation, *see Lukumi*, 508 U.S. at 532, because its requirements apply only where a conscientious objection is asserted.

Likewise, SB 1564 is also not generally applicable. It is underinclusive to support the State's interests in protecting the health of its citizens. SB 1564 does not apply to all medical providers or all those that do not provide abortions, but only imposes its compelled speech requirement on health care professionals and organizations in the context of "conscience-based refusals." V.C. Exh. A. SB 1564 does not require the same disclosures of all medical facilities and professionals treating pregnancy, nor even of all that refrain from abortions. SB 1564 only imposes its requirements on medical providers who do not do abortions because of their conscience. If they do not do abortions for any other reason, SB 1564 does not apply. The State cannot make an argument that it must regulate all conscientious objections for the health of its citizens, but completely ignore all other medical providers who object to providing services or referrals for services for a non-conscience based reason. SB 1564 is clearly not generally applicable.

As discussed above, SB 1564 cannot meet strict scrutiny, and is therefore invalid under the Free Exercise Clause.

### III.    PLAINTIFFS HAVE DEMONSTRATED THE REMAINING PRELIMINARY INUNCTION FACTORS.

Plaintiffs will suffer irreparable harm absent an injunction, and traditional legal remedies cannot cure such harm, and thus they satisfy the remaining two threshold requirements for a preliminary injunction. The Seventh Circuit has unequivocally held that "[t]he loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (internal citations

omitted). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Because the law is currently in effect, and could therefore be enforced against Plaintiffs and similarly situated parties at any moment, traditional legal remedies are inadequate to prevent this irreparable harm. SB 1564 requires Plaintiffs to engage in government-mandated speech, in violation of their First Amendment right to freedom of speech, as well as their rights under the Free Exercise Clause of the First Amendment. Damages are an inadequate remedy for the violation of constitutional rights. *See Walker*, 453 F.3d at 859.

Furthermore, the balance of hardships sharply favors the Plaintiffs. Plaintiffs' and other like-minded citizens' hardships if the injunction is not granted far outweigh the State's if the injunction is granted. The State will suffer little, if any, harm if an injunction is issued, especially since the state could serve its interests by other means. Plaintiffs' First Amendment free speech and free exercise rights will be burdened by the government's compelled speech regulations if an injunction does not issue, irreparably harming Plaintiffs and similarly situated organizations. The State is requiring Plaintiffs to "engage in conduct that seriously violates their religious beliefs" or comply with draconian penalties. *See Burwell v. Hobby Lobby*, 134 S. Ct. 2751, 2775 (2014).

Finally, an injunction serves the public interest. "[F]ree speech ʻserves significant societal interests' …. By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information." *Pac. Gas & Elec. Co..*, 475 U.S. at 8. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Walker*, 453 F.3d at 859.

Plaintiffs are therefore entitled to a preliminary injunction.

**CONCLUSION**

For all of the reasons offered above, Plaintiffs respectfully request that this Court grant

Plaintiffs' Motion for Preliminary Injunction and deny Defendants' Motion to dismiss.

Respectfully submitted this 21st day of February, 2017,


*/s/ Elissa M. Graves*
Elissa M. Graves*, Bar No. 030670

Kevin H. Theriot*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
ktheriot@ADFlegal.org
egraves@ADFlegal.org

Noel W. Sterett, Bar No. 6292008
Whitman H. Brisky
Mauck & Baker, LLC
1 N. LaSalle, Suite 600
Chicago, IL 60602
(312) 726-1243
(866) 619-8661 (fax)
nsterett@mauckbaker.com
wbrisky@mauckbaker.com

Anne O'Connor*
National Institute of Family and Life Advocates
5601 Southpoint Centre Blvd.
Fredericksburg, VA 22407
(540) 372-3930
AOConnor@nifla.org


*Counsel for Plaintiffs*

\* Admitted *Pro Hac Vice*

THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2017, I electronically filed the foregoing paper with the Clerk of Court for the by using the ECF system which will send notification of such filing to the following:

Lisa Madigan
Attorney General of Illinois
Sarah H. Newman
Michael T. Dierkes
Assistant Attorneys General
General Law Bureau
100 W. Randolph St., 13th Fl.
Chicago, Illinois 60601
312-814-6131/312-814-3672
lmadigan@atg.state.il.us
snewman@atg.state.il.us
mdierkes@atg.state.il.us


*/s/ Elissa M. Graves*
Elissa M. Graves, Bar No. 030670

Elissa M. Graves*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
egraves@ADFlegal.org