**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL INSTITUTE OF FAMILY | ) | |
| AND LIFE ADVOCATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | No.  16 CV 50310 |
| | ) | |
| | ) | |
| BRYAN A. SCHNEIDER | ) | Judge Frederick J. Kapala |
| | ) | |
| | ) | Magistrate Judge Iain D. Johnston |
| Defendant. | ) | |

Elissa M. Graves (admitted *pro hac vice*)
Kevin H. Theriot (admitted *pro hac vice*)
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
egraves@ADFlegal.org
ktheriot@ADFlegal.org

Noel W. Sterett, Bar No. 6292008
Dalton & Tomich PLC
504 N. State St.
Belvidere, IL 61008
815.986.8050
nsterett@daltontomich.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT ......................................................................................................................... 4

I.      SB 1564 violates the Free Speech Clause. .......................................................... 5

      a.      The Act is content and viewpoint discriminatory ................................. 5

      b.      SB 1564 fails strict scrutiny. ............................................................... 5

            i.      SB 1564 does not further a compelling government interest..................... 6

            ii.      SB 1564 is not narrowly tailored. ............................................... 8

      c.      The Supreme Court's decision in *NIFLA* confirms SB 1564 is unconstitutional, even under intermediate scrutiny. ............................................ 11

II.      SB 1564 violates the Free Exercise Clause. ......................................................... 12

      a.      SB 1564 burdens religious conduct. .................................................... 13

      b.      SB 1564 is neither neutral nor generally applicable. ........................... 13

      c.      SB 1564 violates the Free Exercise Clause because it requires medical professionals who conscientiously object to abortion to violate their religious beliefs. ............................................................................. 14

CONCLUSION ...................................................................................................................... 15

i

## TABLE OF AUTHORITIES

### *Cases*:

*Abrams v. United States*,

    250 U.S. 616 (1919)...........................................................................................1

*Carroll v. Lynch*,

    698 F. 3d 561 (7th Cir. 2012) .........................................................................4

*Church of the Lukumi Babalu Aye. Inc. v. City of Hialeah*,

    508 U.S. 520 (1993)......................................................................6–7, 12–14

*Employment Division Department of Human Resources of Oregon v. Smith*,

    494 U.S. 872 (1990)..............................................................................12, 14–15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,

    546 U.S. 418 (2006)...........................................................................................6

*Grutter v. Bollinger*,

    539 U.S. 306 (2003)...........................................................................................9

*Hudson Insurance Co. v. City of Chicago Heights*,

    48 F.3d 234 (7th Cir. 1995) .............................................................................4

*Mansmith v. Hameeduddin*,

    369 Ill. App. 3d 417 (Ill. App. 2006) ............................................................7

*McCullen v. Coakley*,

    134 S. Ct. 2518 (2014)......................................................................................5

*National Institute of Family and Life Advocates v. Becerra*,

    138 S. Ct. 2361 (2018) ............................................................................ *passim*

*Reed v. Bascon,*

    124 Ill. 2d 386 (Ill. 1988)........................................................................................7

*Reed v. Town of Gilbert,*

    135 S. Ct. 2218 (2015)..........................................................................................5

*Riley v. National Federation of the Blind of North Carolina,*

    487 U.S. 781 (1988)...............................................................................5, 9, 10–12

*Roe v. Wade,*

    410 U.S. 113 (1973)..............................................................................................6

*St. John's United Church of Christ v. City of Chicago,*

    502 F.3d 616 (7th Cir. 2007) ...............................................................................8

*United States v. Playboy Entertainment Group, Inc.,*

    529 U.S. 803 (2000)........................................................................................10, 11

**_State Statutes_:**

745 ILCS 70/1 *et seq.*...................................................................................3, 4, 13

225 ILCS 60/22.................................................................................................4, 13

225 ILCS 65/70-5 .............................................................................................4, 13

**_Bills and Regulations:_**

Ill. Admin. Code tit. 68, § 1285.240 ......................................................................4

Ill. Admin. Code tit. 68, § 1300.90........................................................................4

**_Rules:_**

Federal Rule of Civil Procedure 56 ........................................................................4

**_Other Sources:_**

38 Am. Jur. Proof of Facts 2d 445 §6, Vicarious Liability of Physician for Negligence of Another—Referral to Another Physician.....................................................................7

## INTRODUCTION

"'[T]he people lose when the government is the one deciding which ideas should prevail."
*National Institute of Family and Life Advocates v. Becerra* ("*NIFLA*")*,* 138 S. Ct. 2361, 2375
(2018) (citing *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)). The
Constitution forbids the government from choosing which ideas succeed in our nation of diverse
viewpoints. But the State of Illinois unconstitutionally imposes its ideas on unwilling speakers,
forcing pro-life medical professionals and pregnancy centers to promote abortion, a message
directly at odds with their beliefs. "Governments must not be allowed to force persons to express
a message contrary to their deepest convictions." *Id.* at 2379 (Kennedy, J., concurring).

Illinois Senate Bill 1564 ("SB 1564") targets pro-life medical professionals and facilities
and requires them to promote abortion. Medical professionals and facilities are required to discuss
the "benefits" of abortion with their pregnant patients. They must also give women a list of doctors
who may perform abortions if a woman inquires about abortion. This Court preliminarily enjoined
the enforcement of SB 1564 on July 19, 2017, holding that Plaintiffs had demonstrated a likelihood
of success on their First Amendment Free Speech claim. "It is clear that the amended act targets
the free speech rights of people who have a specific viewpoint," and is subject to strict scrutiny.
*See* Order of Mot. for Prelim. Inj., ECF No. 65 at 7 (hereinafter "July 19 Order"). In its application
of strict scrutiny, this Court held that "plaintiffs have demonstrated a better than negligible chance
of showing that Illinois has multiple options less restrictive than compelling those with conscience-
based objections to abortion to communicate to a patient that abortion is a legal treatment option
as well as the information she will need to obtain an abortion." July 19 Order at 8.

Following the issuance of the injunction, this case was stayed pending the outcome of the
decision in *NIFLA*. *See* Mot. to Stay Proceedings, ECF. No. 74 (filed Nov. 20, 2017). As Plaintiffs

1

noted in their motion, the legal claims and the facts involved in *NIFLA* are substantially similar to those involved here, and "[b]ecause the Supreme Court will be considering these facts in the context of a compelled speech claim, its decision in [*NIFLA*] will almost certainly inform the way this Court will analyze and rule on the merits of the First Amendment claim at issue in this case . ..." *Id.* at 3. On June 26, 2018, the Supreme Court held that a California law compelling pro-life pregnancy centers to engage in speech promoting abortion likely violates the Free Speech Clause. *NIFLA* controls the outcome of this case, and confirms that SB 1564 violates the Free Speech Clause. SB 1564 also violates the Free Exercise Clause because it is neither neutral toward religion nor generally applicable. There remain no genuine issues of material fact, and summary judgment is appropriate.

## FACTUAL BACKGROUND

Plaintiffs Informed Choices, The Life Center/TLC Pregnancy Services, and Mosaic Pregnancy & Health Centers provide pro-life information and practical help to women experiencing unplanned pregnancies so that they will be supported in choosing to give birth. Pls.' Statement of Material Facts at ¶ 22 (hereinafter "Pls.' Statement"). They provide information and assistance that is both medical and non-medical, is free of charge, and is offered in furtherance of their pro-life religious viewpoint. *Id.* at ¶¶ 27–29. Plaintiff National Institute of Family and Life Advocates (NIFLA) is a non-profit religious network with approximately 40 member facilities in Illinois that offer medical services, including Informed Choices and Mosaic. *Id.* at ¶ 44. Plaintiffs' religious convictions and conscientious views prohibit them from performing, assisting in, referring for, or participating in any way with abortion or abortion causing drugs. *Id.* at ¶ 26, 48. The Plaintiffs' religious and pro-life beliefs prohibit them from providing women with the names of doctors who may perform abortions because that would implicate them in destroying a human life. Pls.' Statement at ¶¶ 34–35, 48. Based on their religious and ethical beliefs, Plaintiffs do not

consider abortion to have significant medical "benefits," and do not consider it a "treatment option" *Id*. at ¶ 68. Contact information about doctors who perform abortions is widely available, including on the internet, in any paper phone directory, at a local library, or the government itself can make such information accessible. *Id*. at ¶¶ 36–38.

SB 1564 amended the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 *et seq*. ("the HRC Act"). Pls.' Statement ¶ 59. It declares, in section 6.1, that "[a]ll health care facilities shall adopt written access to care and information protocols" requiring the facilities or their personnel to provide certain information to patients if the facilities or medical professionals have a conscientious objection to providing certain services. *Id*. Under the protocols, the "facility, physician, or health care personnel shall inform a patient of the patient's … legal treatment options, and risks and benefits … consistent with current standards of medical practice or care." *Id.* If the facility, physician, or health care personnel object to a particular health care service, "then the patient shall either be provided the requested health care service by others in the facility" or they "shall: (i) refer the patient to, or (ii) transfer the patient to, or (iii) provide in writing information to the patient about other health care providers who they reasonably believe may offer the health care service." *Id.* The adoption of these protocols is required regardless of whether a medical professional actually intends to invoke the protections of the HRC Act. *See id*. at ¶ 60. The HRC Act defines the Plaintiff pregnancy centers as health care facilities because they provide some medical services to patients. *Id*. at ¶ 62.

SB 1564 specifies that if its required speech and speech protocols do not occur, "[t]he protections of Sections 4, 5, 7, 8, 9, 10, and 11 of this [HRC] Act" do not apply. Pls.' Statement ¶ 63. Notably, section 4 of the HRC Act otherwise protects physicians and health care personnel from being "civilly … liable to any … public … entity or public official," and section 5 bans any

"public … institution … or public official [from] discriminat[ing] against any person in any manner, including … licensing" because they object to providing health information such as SB 1564 section 6.1 requires. *Id*. (citing 745 ILCS 70/4 & 70/5).

The Illinois Department of Financial and Professional Regulation (IDFPR) has preexisting statutory authority to discipline physicians, nurses, or other licensed medical professionals. Pls.' Statement ¶ 71 (citing 225 ILCS 60/22; 225 ILCS 65/70-5). Thus, SB 1564 allows Defendant to enforce SB 1564's mandates on the Plaintiffs and their licensed medical staff. *Id*. IDFPR may revoke physicians' and nurses' licenses and impose fines up to $10,000 per offense. *Id*. (citing 225 ILCS 60/22; 225 ILCS 65/70-5(a)). IDFPR can punish physicians for activities that are "violative of ... respect [for] the rights of patients" or of "laws ... pertaining to any relevant specialty," or that "[c]onstitute a breach of the physician's responsibility to a patient." Pls.' Statement ¶ 72 (citing Ill. Admin. Code tit. 68, § 1285.240(a)(1)). IDFPR can punish nurses for activities it deems are "likely to deceive, defraud or harm the public, or demonstrating a willful disregard for the health, welfare or safety of a patient," or that it deems "[a] departure from or failure to conform to the standards of practice," and in either case "[a]ctual injury need not be established." *Id.* (citing Ill. Admin. Code tit. 68, § 1300.90(a)(1)).

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when, viewing all facts and inferences in favor of the nonmoving party, no genuine dispute as to material fact exists, and the moving party is entitled to judgment as a matter of law." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing Fed. R. Civ. P. 56(a); *Hudson Ins. Co. v. City of Chi. Heights*, 48 F.3d 234, 237 (7th Cir. 1995)). A party may move for summary judgment "at any time until 30 days after the close of all discovery." Fed.R.Civ. P. 56(b).

4

I.      **SB 1564 violates the Free Speech Clause.**

       a. **The Act is content and viewpoint discriminatory**

As this Court has already recognized, SB 1564 compels speech on the basis of both content and viewpoint. This Court held "there is a substantial likelihood that plaintiffs will be successful in demonstrating that the amended act is content-based because it '[m]andates speech that a speaker would not otherwise make' which 'necessarily alters the content of the speech.'" July 19 Order at 7 (citing *Riley v. Nat'l Fed'n of the Blind of North Carolina*, 487 U.S. 781, 795 (1988)) (alterations in original). *NIFLA* confirms this Court's analysis: SB 1564 compels speech, which necessarily affects the *content* of speech. *See* 138 S. Ct. at 2371. Moreover, this Court held that it is "clear" that SB 1564 discriminates on the basis of viewpoint. July 19 Order at 7. "[T]he amended act now requires plaintiffs to inform their patients about abortion and counsel them on the risks and benefits of abortion. In addition, if requested by the patient or her legal representative, those with conscience-based objections must now either refer their patient to a provider who will perform the abortion, transfer her to a provider who will perform the abortion, or provide her with the information about other providers who will perform the abortion," and is therefore viewpoint discriminatory. *Id*. (internal citations omitted).

       b. **SB 1564 fails strict scrutiny.**

This Court has already held that "the amended act will be subject to strict scrutiny, that is, it must be the least restrictive means of achieving a compelling state interest." July 19 Order at 8 (citing *McCullen v. Coakley*, 134 S. Ct. 2518, 2530 (2014)); *see also Reed v. Town of Gilbert,* 135 S.Ct. 2218, 2226 (2015). SB 1564 cannot meet this exacting standard.

i.    <u>**SB 1564 does not further a compelling government interest.**</u>

The government does not have a compelling interest to force SB 1564's compelled disclosures on pro-life medical professionals and facilities. The State has previously asserted that it is has two compelling interests: (1) "protecting the health and autonomy of its citizens by ensuring that they receive the information that they need to make informed medical decisions," and (2) "ensuring that health care providers conform to the ethical standards of their professions." *See* Def.'s Mot. to Dismiss, ECF No. 15 at 13.

Generic, "broadly formulated" interests, such as protecting health or the autonomy of citizens, are not compelling. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). The government must show a compelling interest to force "particular claimants"—pro-life pregnancy centers and doctors—to tell women the names of abortion providers and that abortion is a "treatment option" for pregnancy. The names of abortion providers are available instantly in many places, including online by a simple internet search. Information about abortion providers is readily available from a variety of alternative sources, including the internet and other health care providers. Pls.' Statement ¶¶ 36–38. Moreover, the government can provide that information itself. The Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973), declaring abortion a constitutional right has been considered a landmark case for 46 years. It is virtually impossible for women not to know that abortion is a "treatment option." Pls.' Statement ¶ 39. It is not necessary to require pro-life pregnancy centers and doctors to provide this information.

SB 1564 also does not serve a compelling interest because it singles out conscientious objectors rather than imposing its mandate on all medical professionals and facilities. "[A] law cannot be regarded as protecting an interest 'of the highest order' when it leaves appreciable

6

damage to that supposedly vital interest unprohibited." *Church of the Lukumi Babalu Aye. Inc. v. City of Hialeah,* 508 U.S. 520, 547 (1993) (internal citations omitted). SB 1564's mandatory speech provision only applies in the context of "conscience-based refusals." Pls.' Statement ¶ 59. SB 1564 does not impose its speech-compelling disclosures on all medical facilities and professionals treating pregnancy, nor even on all that refrain from abortions. SB 1564 only compels speech from medical providers who do not do abortions based on a conscientious objection. If they do not do abortions for other reasons, SB 1564 does not apply. This leaves "appreciable damage" to the government's claimed interest: if a woman goes to a medical provider who does not do abortions for some other, non-conscience reason (such as professional liability or maintaining public relations),[1] the state is content to leave her without SB 1564's mandatory information. Pls.' Statement ¶ 64. As the Illinois state court noted when considering the constitutionality of SB 1564, "[i]f the legislative purpose to be served by SB 1564 is to impose on providers the legal obligation to make the referrals or engage in the discussions objected to by Plaintiffs, why has the State singled out only conscientious objectors as providers who must carry that message?" *Pregnancy Care Center of Rockford v. Rauner*, No. 2016-MR-741, Memorandum Opinion and Order (Ill. 17th Judicial District, Winnebago County Dec. 20, 2016).[2]

---

[1] *See Reed v. Bascon*, 124 Ill. 2d 386, 394 (Ill. 1988) ("A referring physician will be held liable for the wrongful acts of another doctor if he failed to exercise due care in referring the patient to that doctor."); *Mansmith v. Hameeduddin*, 369 Ill. App. 3d 417, 419–420, 435–436 (Ill. App. 2006) (Physician held liable for medical malpractice due partially to negligent treatment from a specialist to which physician referred patient); 38 Am. Jur. Proof of Facts 2d 445 §6, Vicarious Liability of Physician for Negligence of Another—Referral to Another Physician (in some circumstances, a "referring physician may be held liable for damages resulting from his failure to exercise reasonable care in making the referral . . . .")

[2] A copy of the preliminary injunction opinion in *Pregnancy Care Center v. Rauner* is available at https://adflegal.blob.core.windows.net/web-content-dev/docs/default-source/documents/case-documents/the-pregnancy-care-center-of-rockford-v.-rauner/the-pregnancy-care-center-of-rockford-v-rauner---order-granting-preliminary-injunction.pdf?sfvrsn=4

Furthermore, while the State has the authority to regulate the practice of medicine, SB 1564 does not serve the government's interest in "ensuring that health care providers conform to the ethical standards of their professions." The HRC Act, prior to being amended by SB 1564, unequivocally protected doctors from being forced to provide such information. And the standard of care prior to SB 1564 did not require medical professionals to recommend treatments to which such professionals have a conscientious objection. In taking a position against SB 1564 prior to its passage, the Illinois State Medical Society (ISMS) stated that the "current common law requirement" is that "legal treatment options be mentioned to the patient, but health care professionals should not be required to recommend that patients undergo treatment to which they have a conscientious objection." Excerpts from Defendant's Document Production at 3 (attached as Exhibit E). Defendant has not presented any evidence that the standard of care *now* requires pro-life medical professionals and facilities to provide the information mandated by SB 1564, despite Plaintiffs requesting such evidence. *See* Def.'s Resp. to Pls.' Req. for Docs., *Pregnancy Care Center of Rockford v. Schneider,* No. 16-MR-741 (17th Judicial Circuit, Winnebago County),[3] (attached as Exhibit F).

### ii.  SB 1564 is not narrowly tailored.

In its preliminary injunction order, this Court held that defendant had not "satisf[ied] [its] burden of proving that the compelled speech requirements of the amended act are the least restrictive means of achieving its interest." July 19 Order at 8 (citing *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 646 (7th Cir. 2007)). Defendant has still not produced any

---

[3] Plaintiffs and Defendant have agreed to consolidate the discovery in this case and the state court case challenging the same law, as discussed at the September 12, 2017 status conference before Judge Johnston. *See* ECF No. 69. Therefore, Plaintiffs refer to the discovery produced in that litigation to support this motion for summary judgment.

such evidence, despite ample opportunity to do so. The least restrictive means test requires a "serious, good faith consideration of workable … alternatives that will achieve" the alleged interests. *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). The least restrictive means test requires the government to attempt alternative methods such as engaging in its own speech, or prosecuting alleged harms directly before compelling speech. *Riley*, 487 U.S. at 799–800.

As this Court has noted, "plaintiffs have demonstrated a better than negligible chance of showing that Illinois has multiple options less restrictive than compelling those with conscience-based objections to abortion to communicate to a patient that abortion is a legal treatment option as well as the information she will need to obtain an abortion." July 19 Order at 8. There is no evidence that that State has even attempted to pursue a wide range of less restrictive alternatives. As the Supreme Court has explained, "[b]road prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." *Riley*, 487 U.S. at 801 (internal quotations and citations omitted). "In contrast to the prophylactic, imprecise, and unduly burdensome" law adopted by the Illinois Legislature, "more benign and narrowly tailored options are available." *See id.* at 800. The State has the ability to prosecute wrongdoing by doctors where patients are harmed and the state medical board has the authority to discipline doctors who engage in wrongdoing, yet the State has refused to employ these options to combat any alleged harm.[4] These enforcement mechanisms are much less restrictive than SB 1564's compelled speech regulations.

---

[4] *See* Def.'s Resp. to Pls.' First Req. for Admis., *Pregnancy Care Center of Rockford v. Schneider*, No. 16-MR-741 (17th Judicial Circuit, Winnebago County), No. 3 (Attached as Exhibit G) (Defendant "is without knowledge or information sufficient to admit or deny" whether any medical professional "has ever been disciplined for failing to provide information about abortion and/or information about abortion providers to patients," and would continue its investigation. Defendant's response was served on Plaintiffs on September 20, 2017, and no evidence has been produced in the intervening months.); Pls.' Statement ¶ 78.

Another less restrictive alternative is a targeted State public awareness campaign to promote its message. The State's failure to try this option is fatal, just as it was in *NIFLA*:

> Further, California could inform low-income women about its services "without burdening a speaker with unwanted speech." *Riley*, 487 U.S., at 800, 108 S.Ct. 2667. Most obviously, it could inform the women itself with a public-information campaign. See *ibid.* (concluding that a compelled disclosure was unconstitutional because the government could "itself publish ... the disclosure"). California could even post the information on public property near crisis pregnancy centers. California argues that it has already tried an advertising campaign, and that many women who are eligible for publicly-funded healthcare have not enrolled. But California has identified no evidence to that effect. And regardless, a "tepid response" does not prove that an advertising campaign is not a sufficient alternative. *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). Here, for example, individuals might not have enrolled in California's services because they do not want them, or because California spent insufficient resources on the advertising campaign. Either way, California cannot co-opt the licensed facilities to deliver its message for it.

138 S. Ct. at 2376. There is no evidence Defendant has engaged in any public awareness campaigns. Pls. Statement ¶ 80. The failure to pursue less restrictive alternatives means that SB 1564 impermissibly infringes on the speech of Plaintiffs.

SB 1564 further fails narrow tailoring because it is "wildly underinclusive." *See NIFLA*, 138 S. Ct. at 2375. The State has previously asserted a compelling interest in protecting the health and autonomy of its citizens, as well as ensuring that medical professionals conform to ethical standards. *See* Def.'s Mot. to Dismiss, ECF No. 15 at 13. However, SB 1564's compelled disclosures apply only to conscientious objectors. It does not apply to providers of pregnancy-related services who do not provide or refer for abortions for non-conscientious reasons. Medical professionals and facilities frequently refuse to provide or refer for abortions for myriad non-conscience reasons, such as avoiding professional liability or maintaining public relations. *Supra* note 1. These medical providers are excluded from the compelled speech requirements of SB 1564 "without explanation." *NIFLA*, 138 S. Ct. at 2376. The state has voluntarily chosen to only force speakers who disagree with abortion for reasons of conscience to speak, and no others. "Such

'[u]nderinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.'" *Id*. The State has produced no evidence justifying why only conscientious objectors must deliver the State's allegedly compelling message. "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). SB 1564 therefore fails strict scrutiny.

### c. The Supreme Court's decision in *NIFLA* confirms SB 1564 is unconstitutional, even under intermediate scrutiny.

This Court's previous holding that SB 1564 likely violates the First Amendment was corroborated in *NIFLA*, which held a similar law was not likely to survive even intermediate scrutiny. *NIFLA* challenged a California statute which compelled licensed pro-life pregnancy centers to distribute to patients a notice stating that "California has public programs that provide immediate free or low-cost access to comprehensive family planning services (including all FDA-approved methods of contraception), prenatal care, and abortion for eligible women." 138 S. Ct at 2369 (citing Cal. Health & Safety Code Ann. § 123472(a)(2)). The Court found that the disclaimer was a content-based regulation: "[b]y compelling individuals to speak a particular message, such notices 'alte[r] the content of [their] speech.'" *Id*. at 2371 (citing *Riley*, 487 U.S. 781, 795 (1988)) (alterations in original).

The Court, declining to determine the appropriate level of scrutiny, determined that the law did not likely survive intermediate scrutiny. 138 S. Ct. at 2375. It found that the law was not narrowly tailored to California's alleged interest in "educat[ing] low-income women about the services" provided by California for two main reasons. First, the law was "wildly underinclusive" where it applied *only* to pro-life pregnancy centers, and not to other medical providers offering services to low-income women. *Id*. at 2367. The failure to further its purported interests

11

"demonstrate[d] the disconnect between [AB 775's] stated purpose and its actual scope." *Id.* at 2376. Second, the Court found that California could have informed women of state services rather than "burdening a speaker with unwanted speech," but had presented insufficient evidence demonstrating that it had attempted less restrictive alternatives. *Id.* (citing *Riley*, 487 U.S. at 800). The California law therefore failed constitutional scrutiny. *Id.* at 2375. On remand, California agreed to a permanent injunction against the challenged law. *See NIFLA*, Order Granting Permanent Injunction, No. 3:15-cv-02277-JAH-RNB, ECF No. 76 (S.D. Ca. Oct. 26, 2018). Similarly, SB 1564 fails even intermediate scrutiny. It is not narrowly tailored to the State's interests where it requires *only* conscientious objectors to deliver SB 1564's allegedly compelling message, but does not require other medical professionals to deliver that message. Moreover, the State had available to it less restrictive alternatives to deliver SB 1564's compelled speech. *See infra* § I.b.ii.

## II.     SB 1564 violates the Free Exercise Clause.

Burdens on religiously-motivated conduct are subject to strict scrutiny under the Free Exercise Clause when a regulation lacks neutrality or general applicability. *Emp. Div. Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990). "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Lukumi*, 508 U.S. at 532. "If the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Id.* at 532. Furthermore, laws that are "underinclusive" to a government's asserted interests are not generally applicable. *See id.* at 543. SB 1564 lacks both neutrality and general applicability, triggering strict scrutiny.

### a. SB 1564 burdens religious conduct.

SB 1564 unquestionably burdens religious conduct, and clearly discriminates against religious objectors to providing abortion services, because such religious conduct "is undertaken for religious reasons." *See Lukumi*, 508 U.S. at 532. SB 1564 requires that pro-life doctors and pregnancy centers adopt written protocols, which "must" include provisions by which Plaintiffs and their medical staff "shall" tell women of abortion's "benefits" and that it is a "treatment option" for pregnancy. Pls.' Statement ¶ 59. Then they must either provide abortion or inform women of providers they reasonably believe may offer her an abortion. *Id*. But Plaintiffs have deep religious objections to doing so, and the religious objections to abortion are well known. As this Court has already noted, SB 1564 unconstitutionally conditions an important benefit on the relinquishment of rights: SB 1564 "fundamentally changes the HCRCA by conditioning its protection on a protocol requiring health care providers with conscience-based objections to abortion to now do some of the things the HCRCA formerly excused them from doing. In particular, the amended act now requires plaintiffs to inform their patients about abortion and counsel them on the risks and benefits of abortion." July 19 Order at 7. The penalties for violating SB 1564 are draconian. The IDFPR has broad authority to not only revoke the licenses of Plaintiffs' doctors and nurses, but to fine those professionals $10,000 per offense. 225 ILCS 60/22; 225 ILCS 65/70-5(a).

### b. SB 1564 is neither neutral nor generally applicable.

By its very terms, SB 1564 is not neutral toward religion. It only applies to the exercise of conscience, which is defined as "a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." 745 ILCS 70/3(e). SB 1564 singles out conscientious objectors—whose objections are most often based on sincerely held

religious beliefs, such as Plaintiffs here—and only applies its compelled requirements in the context of "conscience-based refusals." SB 1564 leaves completely unregulated medical professionals who do not provide abortion or information regarding abortion for reasons unrelated to conscience. It regulates religious medical providers because of their religious motivation, *see Lukumi*, 508 U.S. at 532, because its requirements apply only where a conscientious objection is asserted.

Likewise, SB 1564 is not generally applicable because it only imposes its requirements on health care professionals and organizations engaged in "conscience-based refusals." Pls.' Statement ¶ 59. If they do not do abortions for any other reason—such as avoiding professional liability or public relations, *supra* note 1—SB 1564 does not apply. The State cannot make an argument that it must regulate all conscientious objectors for the health of its citizens, but completely ignore all other medical providers who object to providing services or referrals for services for a non-conscience based reason. Because SB 1564 is neither neutral nor generally applicable, it is subject to strict scrutiny, which it cannot meet. *See infra* § I.b. It is therefore invalid under the Free Exercise Clause.

### c. SB 1564 violates the Free Exercise Clause because it requires medical professionals who conscientiously object to abortion to violate their religious beliefs.

Satisfying the *Smith* test is a necessary threshold to survive scrutiny under the Free Exercise Clause, but it is not always sufficient. The Supreme Court has expressly rejected the idea "that any application of a valid and neutral law of general applicability is necessarily constitutional under the Free Exercise Clause." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 & n.2 (2017). The Court has stated that the idea that satisfaction of *Smith* neutrality is sufficient authority to exclude long-established historical religious practices from Free Exercise clause protection "has no merit." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,

14

565 U.S. 171, 190 (2012) (Unanimously barring application of employment discrimination laws against teacher in religious school on free exercise grounds, without application of *Smith* test). Recently, the Court noted that—notwithstanding what might be required of *secular* officiants through "neutral and generally applicable" laws—it would be unconstitutional to compel objecting clergy "to perform [a same-sex wedding] ceremony." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1727 (2018). Likewise, it violates the Free Exercise Clause to require medical professionals that conscientiously object to abortion to discuss and refer for abortion–regardless of whether the law is neutral or generally applicable.

**CONCLUSION**

The Constitution does not allow the government to determine which ideas prevail in our society of diverse and numerous viewpoints. SB 1564 is "a paradigmatic example of the serious threat presented when government seeks to impose its own message in the place of individual speech, thought, and expression. For here the State requires primarily pro-life pregnancy centers to promote the State's own preferred message advertising abortions. This compels individuals to contradict their most deeply held beliefs, beliefs grounded in basic philosophical, ethical, or religious precepts, or all of these." *See NIFLA*, 138 S. Ct. at 2379 (Kennedy, J., concurring).

The First Amendment is built on the foundation of opposition to tyrannical oppression of thoughts and ideas. Indeed, "[i]t is forward thinking to begin by reading the First Amendment as ratified in 1791; to understand the history of authoritarian government as the Founders then knew it; to confirm that history since then shows how relentless authoritarian regimes are in their attempts to stifle free speech; and to carry those lessons onward as we seek to preserve and teach the necessity of freedom of speech for the generations to come." *Id.* Illinois' coercive and discriminatory law requiring pro-life medical professionals and pregnancy centers to directly contradict their religious beliefs unequivocally violates the First Amendment.

15

Respectfully submitted this 29th day of January, 2019,

*s/ Elissa M. Graves*
Elissa M. Graves (admitted *pro hac vice*)
Kevin H. Theriot (admitted *pro hac vice*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
egraves@ADFlegal.org
ktheriot@ADFlegal.org

Noel W. Sterett, Bar No. 6292008
DALTON & TOMICH PLC
504 N. State St.
Belvidere, IL 61008
815.986.8050
nsterett@daltontomich.com

*Counsel for Plaintiffs*

THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED

16

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2019, I electronically filed the foregoing paper with the

Clerk of Court for the by using the ECF system which will send notification of such filing to the

following:

Lisa Madigan
Attorney General of Illinois
Sarah H. Newman
Michael T. Dierkes
Assistant Attorneys General
General Law Bureau
100 W. Randolph St., 13th Fl.
Chicago, Illinois 60601
312-814-6131/312-814-3672
lmadigan@atg.state.il.us
snewman@atg.state.il.us
mdierkes@atg.state.il.us