**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, et al., ) ) ) Plaintiffs, ) ) ) v. ) ) ) ) BRYAN A. SCHNEIDER ) ) ) Defendant. ) | No. 16 CV 50310 Judge Iain D. Johnston Magistrate Judge Lisa A. Jensen |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND AND TO CERTIFY FOR INTERLOCUTORY APPEAL THE COURT'S ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Kevin H. Theriot (admitted *pro hac vice*)
Elissa M. Graves (admitted *pro hac vice*)
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
egraves@ADFlegal.org
ktheriot@ADFlegal.org

Noel W. Sterett, Bar No. 6292008
Dalton & Tomich PLC
401 W. State St., Suite 509
Rockford, IL 61101
815.986.8050
nsterett@daltontomich.com

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.  The Order denying Plaintiffs' Motion for Summary Judgment involves controlling questions of law. ............................................................................................ 2

II. There is a substantial ground for difference of opinion as to Plaintiffs' First Amendment free speech and free exercise rights with respect to SB 1564. ..................... 4

  A. The Summary Judgment Denial Order conflicts with the Preliminary Injunction Order's legal analysis. .......................................................................... 5

  B. The summary judgment denial Order's finding that *Casey* is controlling conflicts with *NIFLA*. ............................................................................................ 8

  C. There is substantial ground for difference of opinion with respect to Plaintiffs' Free Exercise claims. ............................................................................ 9

III. An immediate appeal would advance the ultimate termination of this litigation. ............ 10

IV. Plaintiffs' request is timely. ............................................................................................. 10

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Ahrenholz v. Bd. of Trustees of Univ. of Ill.*,
 219 F.3d 674 (7th Cir. 2000) ...................................................................................2, 4, 10

*Carlson v. Brandt*,
 1997 WL 534500 (N.D. Ill. Aug. 22, 1997) ............................................................................4

*Church of Lukumi Babalu Aye v. City of Hialeah*,
 508 U.S. 520 (1993).................................................................................................................9

*Employment Division Department of Human Resources of Oregon v. Smith*,
 494 U.S. 872 (1990)..............................................................................................................3, 9

*National Institute of Family and Life Advocates v. Becerra* ("*NIFLA*"),
 138 S. Ct. 2361 (2018)................................................................................................1, 4, 6, 9

*Planned Parenthood v. Casey,*
 505 U.S. 833 (1992).............................................................................................................5, 8

*Pregnancy Care Center of Rockford v. Rauner*,
 No. 2016-MR-741....................................................................................................................5

*Richardson Electronics, Ltd. v. Panache Broadcasting of Pennsylvania, Inc.*,
 202 F.3d 957 (7th Cir.2000) ................................................................................................11

*Riley v. Nat'l Federation of the Blind*,
 487 U.S. 781 (1988).................................................................................................................6

*Sokaogon Gaming Enterp. v. Tushie–Montgomery Assoc.*,
 86 F.3d 656 (7th Cir.1996) ...................................................................................................2

**Statutes**

28 U.S.C. § 1292(b) .............................................................................................................1, 11

**Other Authorities**

16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure
 § 3930, at 426 (2d ed. 1996) ..................................................................................................2

Opinion, *Pregnancy Care Center v. Rauner,*
  https://perma.cc/CSH5-QCQZ...............................................................................................5

**Rules**

Fed. R. Civ. P. 59(e) ...............................................................................................................11
Fed. R. App. P. 5(a)(3)............................................................................................................11

## INTRODUCTION

The federal practice of certifying an order for interlocutory appeal promotes judicial efficiency when the issues sought to be appealed are contested, controlling issues of law. This is just such a case. Two judges have examined the same set of facts and reached differing conclusions based on their conflicting reading of the law. This is a paradigm case for interlocutory review.

Illinois Senate Bill 1564 ("SB 1564") targets pro-life medical professionals and facilities and requires them to promote abortion. These medical professionals and facilities are required to discuss the "benefits" of abortion with their pregnant patients; they must also give women a list of doctors who may perform abortions if a woman asks for a referral. Conversely, the law does not impose the same requirements on pro-choice medical professionals and facilities who do not perform abortions. This Court (Judge Kapala) preliminarily enjoined enforcement of SB 1564, holding that Plaintiffs demonstrated a likelihood of success on their First Amendment Free Speech claim. Order of Mot. for Prelim. Inj., ECF No. 65 (July 19, 2017) ("P.I. Order"). This case was then stayed pending the outcome in *National Institute of Family and Life Advocates v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361, 2375 (2018), which held unlawful a California law that similarly required pro-life medical professionals and pregnancy resource centers to promote and refer for abortions. *See* Mot. to Stay Proceedings, ECF. No. 74 (filed Nov. 20, 2017).

After the *NIFLA* opinion issued, Plaintiffs filed a motion for summary judgment. ECF No. 90 (filed Jan. 29, 2019). On September 3, 2020, this Court (Judge Pallmeyer) denied that motion, holding that a genuine issue of material fact as to the applicable standard of care remains. ECF No. 176 ("S.J. Denial Order"). But the S.J. Denial Order involves controlling questions of law as to which the P.I. Order reached opposite conclusions. Accordingly, Plaintiffs request that this Court amend and certify the S.J. Denial Order for interlocutory appeal under 28 U.S.C. § 1292(b).

1

**ARGUMENT**

"There are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (alterations in original). This case satisfies all four criteria.

**I.** **The Order denying Plaintiffs' Motion for Summary Judgment involves controlling questions of law.**

"A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *See Sokaogon Gaming Enterp. v. Tushie–Montgomery Assoc.*, 86 F.3d 656, 659 (7th Cir.1996). The Seventh Circuit has noted: "[w]e think 'question of law' as used in section 1292(b) has reference to a question of the *meaning of a statutory or constitutional provision*, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact." *Ahrenholz*, 219 F.3d at 676 (emphasis added). Put differently, an "abstract issue of law" is appropriate in a § 1292(b) interlocutory appeal of a denial of summary judgment. *Id.* at 677. A question is controlling "if interlocutory reversal might save time for the district court, and time and expense for the litigants." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930, at 426 (2d ed. 1996).

Here, resolution of Plaintiffs' summary-judgment motion requires applying the appropriate legal standard. But the S.J. Denial Order and the P.I. Order applied different legal standards to SB 1564, leading to two opinions of the same Court in irreconcilable tension. *See* Section II.A. In the S.J. Denial Order, the Court held that Plaintiffs' right to freedom of speech was not violated because SB 1564 is a regulation of professional conduct that incidentally burdens speech. S.J. Denial Order at 18–19 (as to SB 1564's "benefits-discussion" requirement); *see also id.* at 26

2

(applying the same analysis to SB 1564's "refer, transfer, or provide information" requirement). The Court (without deciding which level of scrutiny actually applies) then applied intermediate scrutiny to SB 1564. S.J. Denial Order at 23. In contrast, the P.I. Order held that SB 1564 compels speech and applied strict scrutiny because SB 1564 discriminates based on the viewpoint of the speaker. P.I. Order at 7.

As explained in Section II.A, the application of two different legal standards to Plaintiffs' Free Speech claims led to two very different opinions in several additional ways, including whether SB 1564 is impermissibly content- or viewpoint-based (*compare* S.J. Denial Order at 30–31 *with* P.I. Order at 7), and whether SB 1564 possibly imposes an unconstitutional condition on Plaintiffs' exercise of constitutional rights (*compare* S.J. Denial Order at 40–41 *with* P.I. Order at 8). This confirms that the appropriate legal standard applicable to Plaintiffs' Free Speech claims is a controlling question of law that controls the litigation's outcome.

As to Plaintiffs' Free Exercise claims, it is also a pure question of law whether SB 1564 should be analyzed within the broader context of the overall regulation of medical professionals (as the Court stated in the S.J. Denial Order), and therefore viewed as an accommodation that the State did not have to provide, or whether SB 1564 targets religion and is therefore neither neutral nor generally applicable. If the latter, *Employment Division Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990), it is subject to strict scrutiny (*see* section II.C below for further discussion). While the P.I. Order did not directly address Plaintiffs' Free Exercise claim because it found Plaintiffs had demonstrated a likelihood of success on the merits of their Free Speech claim alone, P.I. Order at 5 & n. 1, the Court said it "is clear that the amended act targets the free speech rights of people who have a specific viewpoint"—namely, those with "conscience-

3

based objections" to providing information about or referrals for abortion. *Id*. at 7. SB 1564 cannot therefore be neutral, and this Court should have applied strict scrutiny.

The question of which legal standard should apply to Plaintiffs' Free Speech and Free Exercise claims is an issue of law, on which resolution of this case ultimately depends. The first two statutory criteria for an interlocutory appeal under § 1292(b)—"there must be a question of *law*, it must be *controlling*," *Ahrenholz*, 219 F.3d at 675—are therefore met.

**II.    There is a substantial ground for difference of opinion as to Plaintiffs' First Amendment free speech and free exercise rights with respect to SB 1564.**

The requirement that the S.J. Denial Order is "contestable" is also met, as there is "substantial" ground for a difference of opinion on the proper interpretation of SB 1564. *See Ahrenholz*, 219 F.3d at 675. "[S]ubstantial conflicting decisions regarding the claimed controlling issue of law" are powerful evidence of a substantial ground for a difference of opinion. *Carlson v. Brandt*, Nos. 97 C 2165, 96 B 9606, 97 C 3630, 1997 WL 534500 at *6 (N.D. Ill. Aug. 22, 1997).

Here, the legal analysis of the S.J. Denial Order conflicts directly with the previous P.I. Order. (ECF No. 65). It is difficult to imagine a more striking example of a substantial conflict when two judges on the same Court analyze the law and apply it to the same set of facts yet reach contradictory conclusions. Incidentally, the S.J. Denial Order also conflicts with a substantially similar case, *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct 2361 (2018) (*NIFLA*), and other Supreme Court precedent, further buttressing that there is substantial ground for difference of opinion. The S.J. Denial Order additionally conflicts with a state court action challenging SB 1564, where an Illinois trial court preliminarily enjoined SB 1564 on the basis that the plaintiffs there demonstrated a likelihood of success on the merits of their free speech claim

under the Illinois Constitution. *Pregnancy Care Center of Rockford v. Rauner*, No. 2016-MR-741, Memorandum Opinion and Order (Ill. 17th Judicial District, Winnebago County Dec. 20, 2016)[1]

### A. The Summary Judgment Denial Order conflicts with the Preliminary Injunction Order's legal analysis.

The S.J. Denial and P.I. Orders first conflict on the application of the informed-consent analysis of *Planned Parenthood v. Casey,* 505 U.S. 833 (1992), to pregnancy-center speech cases. More specifically, the Orders disagree on the issue of whether SB 1564 codifies the standard of care applicable to all medical professionals in the administration of informed consent.

The S.J. Denial Order held that "as in *Casey*, [SB 1564] is a regulation of professional conduct that only incidentally burdens speech." S.J. Denial Order at 18–19 (as to SB 1564's "benefits-discussion" requirement); *see also id.* at 26 (applying the same analysis to SB 1564's "refer, transfer, or provide information" requirement). The Court then held that there was a genuine issue of material fact as to whether SB 1564 regulates the standard of care (by regulating informed consent) and denied Plaintiffs' motion for summary judgment.

Defendant previously raised the same "informed consent" argument in opposition to Plaintiffs' motion for preliminary injunction, and this Court (Judge Kapala) categorically rejected it. P.I. Order at 7. The P.I. Order noted Defendants' argument: "that the HCRCA was amended to ensure that health care providers with conscience-based objections to certain treatments nevertheless provide their patients with certain information to make an informed decision regarding their health, and thus the amended act is not a viewpoint-based law." P.I. Order at 7. But the P.I. categorically rejected Defendant's position: "[t]he amended act fundamentally changes the HCRCA by conditioning its protection on a protocol requiring health care providers with

---

[1] A copy of the opinion in *Pregnancy Care Center v. Rauner* is available at https://perma.cc/CSH5-QCQZ (last accessed Oct. 1, 2020).

5

conscience-based objections to abortion to now do some of the things the HCRCA formerly excused them from doing." In sum, the Court concluded, "the amended act targets the free speech rights of people who have a specific viewpoint." *Id*. at 7.

The S.J. Denial and P.I. Orders conflict in other ways, including the proper level of scrutiny (as the S.J. Denial Order itself notes, ECF No. 176 at 13). S.J. Denial Order at 23; P.I. Order at 7). As discussed in Section I, the S.J. Denial Order applied intermediate scrutiny, and the P.I. Order applied strict scrutiny to the same law and underlying facts. *Id*. Moreover, the S.J. Denial Order incorrectly applied intermediate scrutiny because it did not require that Defendant demonstrate that less restrictive alternatives were not successful. S.J. Denial Order at 24–25. *NIFLA* mandates such a showing. As the *NIFLA v. Becerra* Court reasoned: California could inform low-income women about its services 'without burdening a speaker with unwanted speech.'" 138 S.Ct. at 2376 (citing *Riley v. Nat'l Federation of the Blind*, 487 U.S. 781, at 800 (1988)). *NIFLA v. Becerra* further noted that "[m]ost obviously, it could inform the women itself with a public-information campaign. . . California could even post the information on public property near crisis pregnancy centers. California argues that it has already tried an advertising campaign, and that many women who are eligible for publicly-funded healthcare have not enrolled. But California has identified no evidence to that effect." *Id*. Yet the S.J. Denial Order did not even consider the fact that Defendant has not attempted less restrictive alternatives, summarily concluding—contrary to *NIFLA*—that "[a] public awareness campaign covering such information [mandated by SB 1564] would have little practical utility." S.J. Denial Order at 25. The S.J. Denial Order therefore conflicts with *NIFLA's* application of intermediate scrutiny.

The Court's two Orders also conflict on the issue whether SB 1564 is impermissibly content- or viewpoint-based. The S.J. Denial Order reasoned: "any regulation of professional

6

conduct that incidentally burdens speech will necessarily be speaker-based—and viewpoint-based, in many cases—because it affects only those operating within the regulated profession." S.J. Denial Order at 30. That Order conceded that "the challenged law here applies only to conscience objectors, but any change to the HCRCA would affect only conscience objectors because the HCRCA grants protections only to conscience objectors." *Id.* at 31. The Court thus concluded that SB 1564 was not subject to a higher level of scrutiny because of content or viewpoint discrimination. *Id.* at 30–32.

Conversely, the P.I. Order unequivocally held that "[i]t is clear that the amended act targets the free speech rights of people who have a specific viewpoint," and therefore applied strict scrutiny. P.I. Order at 7. So while one Order found viewpoint regulation and excused it as a function of the regulatory subject matter, the other Order found viewpoint regulation and required Defendant to satisfy strict scrutiny, concluding that Defendant could not do so.

The Orders also differ on the issue whether SB 1564 possibly imposes an unconstitutional condition on Plaintiffs' exercise of constitutional rights. The S.J. Denial Order held that "[b]ecause Plaintiffs have not succeeded in demonstrating that the challenged sections of the HCRCA are unconstitutional as applied directly to them, they have necessarily failed to show that the law's conditional protections are an unconstitutional condition." S.J. Denial Order at 41. In direct conflict, the P.I. Order held that "[t]he amended act fundamentally changes the HCRCA by conditioning its protection on a protocol requiring health care providers with conscience-based objections to abortion to now do some of the things the HCRCA formerly excused them from doing," and "in conditioning the protections of the HCRCA on compelled speech, the amended act has potentially violated the unconstitutional conditions doctrine." P.I. Order at 7–8.

7

In sum, the S.J. Denial and P.I. Orders are in irreconcilable tension. This demonstrates conclusively that there is a substantial ground for difference of opinion.

### B. The summary judgment denial Order's finding that *Casey* is controlling conflicts with *NIFLA*.

*NIFLA v. Becerra* dealt with a nearly identical informed consent issue. The Supreme Court held that the California law compelling pregnancy centers and medical professional's to speak the government's message did *not* regulate informed consent. Yet this Court in the S.J. Denial Order reached the opposite conclusion.

By way of background, obtaining informed consent for abortion—as with any medical procedure—requires a discussion of the risks, consequences, and alternatives of the procedure. *See Casey*, 505 U.S. at 881. In *Casey*, the Court reviewed a multifaceted law regulating abortion procedures. The law required a doctor performing an abortion to inform a patient, in the doctor's own words, of "the nature of the procedure, the health risks of the abortion and of childbirth, and the 'probable gestational age of the unborn child.'" *Id*. The doctor was also required to inform the patient about a variety of materials from the State offering alternatives to abortion, and to furnish those materials if a woman expressed interest. The Court dispatched the free speech claims in one paragraph, holding that the requirement was reasonable in the context of regulating the practice of medicine. *Id*. at 882–83. "As with any medical procedure," the Court explained, "the State may enact regulations to further the health or safety of a woman seeking an abortion." *Id*. at 878. The Court viewed informed consent for abortion akin to informed consent for other medical procedures. *See id*. at 883 (analogizing to a kidney transplant operation).

In rejecting *Casey*'s application to California's compelled-speech law in *NIFLA*, the Supreme Court held that the required notice was *not* related to informed consent:

> The licensed notice at issue here is not an informed-consent requirement or any other regulation of professional conduct. The

8

> notice does not facilitate informed consent to a medical procedure. In fact, it is not tied to a procedure at all. It applies to all interactions between a covered facility and its clients, regardless of whether a medical procedure is ever sought, offered, or performed. If a covered facility does provide medical procedures, the notice provides no information about the risks or benefits of those procedures. [138 S. Ct. 2373.]

So too here. SB 1564's compelled speech provisions have no connection to informed consent to any medical procedure performed by Plaintiff Pregnancy Centers. So *NIFLA* controls. But instead, the S.J. Denial Order effectively adopts Justice Breyer's *NIFLA dissent*. The S.J. Denial Order held that *Casey* applied to SB 1564—even though Plaintiffs (like the plaintiffs in *NIFLA*) do not provide abortion. S.J. Denial Order at 21. In other words, after staying this case to obtain the benefit of the Supreme Court's ruling in *NIFLA*, the S.J. Denial Order does exactly the opposite of what *NIFLA* instructed. *Id.* at 22.

Accordingly, there is disagreement over *Casey*'s application in similar contexts.

### C. There is substantial ground for difference of opinion with respect to Plaintiffs' Free Exercise claims.

The Supreme Court has made clear that laws targeting religion are subject to Free Exercise analysis. *See Smith*, 494 U.S. at 879 (burdens on religiously motivated conduct are subject to strict scrutiny when a regulation lacks neutrality or general applicability); *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532 (1993) ("At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons."). Yet the S.J. Denial Order avoided the Free Exercise analysis by holding that Illinois did not have to grant *any* religious accommodation and could therefore amend or withdraw such accommodations without being subject to Free Exercise analysis. S.J. Denial Order at 35–36.

9

But SB 1564, on its face, is not neutral toward religion. Even the S.J. Denial Order "recognizes that the amended Act applies only to those with religiously-motivated objections to certain treatments." S.J. Denial Order at 37. The law—because it applies only to religious conduct and not comparable secular conduct—is not neutral and should have been subject to strict scrutiny. So the S.J. Denial order conflicts with *Smith*, too.

### III. An immediate appeal would advance the ultimate termination of this litigation.

The Seventh Circuit's guidance is needed promptly so that the parties have proper guiderails in discovery and this Court can apply the appropriate test when evaluating the claims in Plaintiffs' Verified Complaint and explained in their Motion for Summary Judgment.

For example, Defendant has repeatedly requested expert discovery on the issue of the standard of care. The S.J. Denial Order welcomes this discovery—given its finding that a genuine issue of material fact remains regarding the standard of care—and the Court has requested that the parties propose a discovery schedule. If the expert testimony of Plaintiffs and Defendant is conflicting, a trial may be necessary. But the parties and the Court can avoid this lengthy and costly process (and the possibility of repeating it after appeal) if the Seventh Circuit clarifies now the appropriate controlling legal standards to apply to the Pregnancy Centers' claim. This satisfies the requirement that resolution will "speed up" the litigation. *Ahrenholz*, 219 F.3d at 675.

All statutory criteria for a certification of interlocutory appeal are therefore met.

### IV. Plaintiffs' request is timely.

While § 1292 requires a party to file its interlocutory petition with the court of appeals within 10 days of a district court's certification order, *Ahrenholz,* 219 F.3d at 675–76, the only timing requirement for requesting certification in the district court is that a party do so "within a *reasonable time* after the order sought to be appealed." *Id*. (citing *Richardson Electronics, Ltd. v.*

10

*Panache Broadcasting of Pennsylvania, Inc.*, 202 F.3d 957, 958 (7th Cir.2000)) (emphasis in original).

Under the Federal Rules of Civil Procedure, the deadline to file a motion to amend a judgment is 28 days. FED. R. CIV. P. 59(e). While this Court's order was not a final judgment, Rule 59(e) is analogous here, where Plaintiffs are requesting that this Court certify its September 3, 2020 Order for interlocutory appeal by amending the order to make the necessary findings, as authorized by Federal Rule of Appellate Procedure 5(a)(3). A period of 28 days is therefore reasonable.

Plaintiffs received notice two days ago, on September 29, 2020 that this case was being moved to District Judge Iain Johnston. The previous District Court Judges Kapala and Pallmeyer wrote two opinions that are undeniably in tension, as detailed above. Because this case is now before a third District Court judge, immediate interlocutory appeal is warranted to resolve this tension and clarify the appropriate applicable constitutional analysis.

## CONCLUSION

Federal Rule of Appellate Procedure 5(a)(3) authorizes this Court to amend the September 3, 2020 Order denying Plaintiffs' Motion for Summary Judgment make the necessary certification findings that will allow Plaintiffs to pursue an interlocutory appeal under 28 U.S.C. § 1292(b). Plaintiffs request that this Court grant Plaintiffs' Motion and amend the S.J. Denial Order to certify it for interlocutory appeal.

Respectfully submitted this 1st day of October, 2020,

*s/ Elissa M. Graves*
Kevin H. Theriot (admitted *pro hac vice*)
Elissa M. Graves (admitted *pro hac vice*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020

11

480.444.0028 (fax)
egraves@ADFlegal.org
ktheriot@ADFlegal.org

Noel W. Sterett, Bar No. 6292008
Dalton & Tomich PLC
401 W. State St., Suite 509
Rockford, IL 61101
815.986.8050
nsterett@daltontomich.com


*Counsel for Plaintiffs*

THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 1, 2020 I electronically filed the foregoing paper with the Clerk of Court for the by using the ECF system which will send notification of such filing to the following:

Kwame Raoul
Attorney General of Illinois
Lauren H. Barski
Matthew V. Chimienti
Sarah J. Gallo
Elizabeth Morris
Special Litigation Bureau
Assistant Attorneys General
100 W. Randolph St.
Chicago, Illinois 60601
312-814-3422/312-814-8309
lbarski@atg.state.il.us
mchimienti@atg.state.il.us
sgallo@atg.state.il.us
emorris@atg.state.il.us

                                                  *s/ Elissa M. Graves*
                                                  Elissa M. Graves