**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 16 CV 50310 |
| BRYAN A. SCHNEIDER | ) ) ) | Judge Iain D. Johnston |
| Defendant. | ) ) | Magistrate Judge Lisa A. Jensen |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND AND TO CERTIFY
FOR INTERLOCUTORY APPEAL THE COURT'S ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Kevin H. Theriot (admitted *pro hac vice*)
Elissa M. Graves (admitted *pro hac vice*)
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
egraves@ADFlegal.org
ktheriot@ADFlegal.org

Noel W. Sterett, Bar No. 6292008
Dalton & Tomich PLC
401 W. State St., Suite 509
Rockford, IL 61101
815.986.8050
nsterett@daltontomich.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.      The Summary Judgment Denial Order involves controlling questions of law on which there is substantial ground for difference of opinion. ............................... 2

        a.      The two opinions diverged over whether SB 1564 is a regulation of professional conduct or speech. ............................................................. 3

        b.      The current procedural posture does not preclude interlocutory appeal. ............... 5

        c.      The Eleventh Circuit recently held that the government cannot escape First Amendment scrutiny by classifying a regulation of speech as a regulation of professional conduct. ......................................................................... 6

        d.      The evidentiary records before the two judges do not justify radically divergent opinions. ............................................................................... 7

        e.      There is a substantial ground for difference of opinion on Plaintiffs' Free Exercise claims. ................................................................................... 8

II.     Resolutions of these controlling questions of law will "speed up" the litigation. ............ 10

CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Ahrenholz v. Board of Trustees of University of Illinois*,
219 F.3d 674 (7th Cir. 2000) ........................................................................... 2, 5

*National Institute of Family and Life Advocates v. Becerra*,
138 S.Ct. (2018)................................................................................................ 4, 6, 7

*Otto v. City of Boca Raton*,
981 F.3d 854 (11th Cir. Nov. 20, 2020) ........................................................ 6, 7

*Planned Parenthood v. Casey*,
505 U.S. 833 (1992)........................................................................................... 3

*Roe v. Wade*,
410 U.S. 113 (1973)........................................................................................... 4

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S.Ct. 63 (2020)..................................................................................... 1, 2, 9, 10

*The Family Planning Association of Maine v. U.S. Department of Health and Human
Services*,
466 F. Supp. 3d 259 (D. Me. June 9, 2020)..................................................... 5

**Statutes**

28 U.S.C. § 1292(b) ....................................................................................... passim

**Other Authorities**

Congressional Research Service, "The History and Effect of Abortion Conscience Clause
Laws," (Jan. 29, 2010), https://crsreports.congress.gov/product/pdf/RL/RL34703 ........... 4

The Abortion Performance Refusal Act was repealed when the Reproductive Health Act,
P.A. 101-13 became effective on June 6, 2019. *See* Illinois General Assembly,
Reproductive Health Act,
http://www.ilga.gov/legislation/ilcs/ilcs5.asp?ActID=3987&ChapterID=64.................... 4

**Rules**

Federal Rule of Appellate Procedure 5(a)(3) ................................................. 10

**Regulations**

745 ILCS 30/1 ..................................................................................................... 4

745 ILCS 70/4 ..................................................................................................... 4

The Reproductive Health Act, 775 ILCS 55/ ................................................... 4

**INTRODUCTION**

Illinois Senate Bill 1564 ("SB 1564") targets pro-life medical professionals and facilities and requires them to promote abortion. Medical professionals and facilities must discuss the "benefits" of abortion with their pregnant patients. They must also give women a list of doctors who perform abortions if a woman asks about abortion. This Court (Judge Kapala) preliminarily enjoined the enforcement of SB 1564, holding that Plaintiffs had shown a likelihood of success on their First Amendment Free Speech claim. ECF No. 65 (July 29, 2017) ("P.I. Order"). On September 3, 2020, this Court (Judge Pallmeyer) denied Plaintiffs' motion for summary judgment. ECF No. 176 ("S.J. Denial Order"). The S.J. Denial Order involves controlling questions of law on which there is substantial ground for difference of opinion. Plaintiffs thus requested that this Court amend and certify the S.J. Denial Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Defendant's opposition to Plaintiffs' motion rests almost entirely on the *legal* question of whether SB 1564 regulates speech or professional conduct incidental to speech. Plaintiffs seek an interlocutory appeal to resolve this precise issue. Throughout this litigation, Defendant has insisted that SB 1564 regulates the standard of medical care. Both the P.I Order and S.J Denial Order considered whether this question controls the outcome of this litigation and reached *opposite* conclusions. Judge Kapala found this argument unavailing and dismissed it outright. P.I. Order at 7. Judge Pallmeyer found it controlling. S.J. Denial Order at 18–19, 26. The two starkly different opinions from two judges on the same court—concerning the same set of facts and the same legal issue—shows a substantial ground for difference of opinion on the answer to this question of law. This is precisely why immediate appellate review is warranted under 28 U.S.C. § 1292(b).

Interlocutory review is independently warranted based on the Supreme Court's recent decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, which reaffirmed that laws which

single out religion are subject to strict scrutiny. 141 S.Ct. 63 (2020) . This Court determined that SB 1564 applies only to religious conduct, but did not subject it to strict scrutiny. S.J. Denial Order at 37. That holding conflicts with *Cuomo*. Defendant does not respond to Plaintiffs' argument that the S.J. Denial Order involves a controlling question of law to which there is substantial ground for difference of opinion regarding Plaintiffs' Free Exercise claim. Instead, Defendant mentions only this Court's ruling and makes no argument in opposition to Plaintiffs' position. *See* D.'s Opp. at 10 (citing S.J. Denial Order).

The salient facts remain unchanged following discovery after the preliminary injunction order. Plaintiffs therefore urge this Court to certify the S.J. Denial Order for appeal under 28 U.S.C. § 1292(b) to resolve the legal issue of whether SB 1564 regulate speech or conduct.

## ARGUMENT

### I.   The Summary Judgment Denial Order involves controlling questions of law on which there is substantial ground for difference of opinion.

Four criteria govern the resolution of a petition for interlocutory review pursuant to 28 U.S.C. § 1292(b): "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (alterations in original). The question of which legal standards should apply to Plaintiffs' Free Speech and Free Exercise claims is an issue of law, on which resolution of this case ultimately depends. As shown by the contradictory opinions of the P.I. Order and the S.J. Denial Order on Plaintiffs' Free Speech claims, as well as divergence between the S.J. Denial Order and recent Supreme Court precedent on the issue of Free Exercise, there is substantial ground for difference of opinion on these controlling issues of law, warranting an interlocutory appeal.

### a. The two opinions diverged over whether SB 1564 is a regulation of professional conduct or speech.

Throughout this litigation, Defendant has argued that SB 1564's compelled speech requirements are permissible regulations of professional conduct under *Planned Parenthood v. Casey*, 505 U.S. 833 (1992). They repeat this argument in their opposition. D.'s Opp. at 6.

Whether *Casey* applies is a controlling legal question. The S.J. Denial Order held that "as in *Casey*, [SB 1564] is a regulation of professional conduct that only incidentally burdens speech," and that there was a genuine issue of material fact as to whether SB 1564 regulates the standard of care. S.J. Denial Order at 18–19 (as to SB 1564's "benefits-discussion" requirement); *see also id*. at 26 (applying the same analysis to SB 1564's "refer, transfer, or provide information" requirement). But Judge Kapala rejected the identical legal argument: "[t]he amended act fundamentally changes the HCRCA by conditioning its protection on a protocol requiring health care providers with conscience-based objections to abortion to now do some of the things the HCRCA formerly excused them from doing." *See* P.I. Order at 7; Ps.' Mot. to Certify at 5–6.

The two opinions differ on a question of *law*; namely, whether *Casey* controls the outcome. Defendant argues it is entitled to expert discovery on the issue of the standard of care "under any legal standard." D.'s Opp. at 4. But if SB 1564 regulates speech, and not professional conduct, the standard of care is irrelevant and expert discovery is not warranted. Resolution of this legal question determines the outcome of this case.

As Plaintiffs noted in their motion to certify, *Casey* does not apply. Obtaining informed consent for abortion, as with any medical procedure, requires a discussion of the risks, consequences, and alternatives of the procedure. *See Casey*, 505 U.S. at 881; P.s' Mot. to Certify at 8–9. But Plaintiffs do not provide the "procedure," i.e., abortion, and therefore need not obtain informed consent for it. The Supreme Court rejected an argument nearly identical to Defendant's,

holding that the pro-life pregnancy center plaintiffs did not provide abortion, and therefore the speech regulation there (which required abortion referral information, just as SB 1564) "does not facilitate informed consent to a medical procedure." *National Institute of Family and Life Advocates v. Becerra,* 138 S.Ct., 138 S.Ct. 2361, 2373 (2018) ; *see also* P.s' Mot. to Certify at 8–9. Likewise, SB 1564's compelled speech provisions have no connection to informed consent to any medical procedure performed by Plaintiffs.

For decades, federal and state laws have recognized that medical facilities and personnel cannot be forced to promote abortion. *Roe v. Wade*, while mandating legal abortion throughout the country, states that the physician is "free to determine" whether to have any involvement in abortion. 410 U.S. 113, 163 (1973). Shortly after *Roe*, nearly every state enacted a law prohibiting a requirement that doctors provide information assisting abortion.[1] Illinois was no exception, enacting the Abortion Performance Refusal Act in October 1973 and declaring that no health care personnel can be required to "recommend" abortion. 745 ILCS 30/1.[2] A different law, the Health Care Right of Conscience Act, prohibited requiring health care personnel to "counsel, suggest, recommend, refer or participate in any way in any particular form of health care" until it was amended by SB 1564. 745 ILCS 70/4. Until 2019, the Abortion Performance Refusal Act protected *all* health care personnel from being forced to "recommend" abortion—no matter the reason for the objection. 745 ILCS 30/1. Defendant cannot plausibly claim that the standard of care has

---

[1] Congressional Research Service, "The History and Effect of Abortion Conscience Clause Laws," (Jan. 29, 2010), https://crsreports.congress.gov/product/pdf/RL/RL34703 (last accessed Jan. 4, 2021).

[2] The Abortion Performance Refusal Act was repealed when the Reproductive Health Act, P.A. 101-13 became effective on June 6, 2019. *See* Illinois General Assembly, Reproductive Health Act, http://www.ilga.gov/legislation/ilcs/ilcs5.asp?ActID=3987&ChapterID=64 (last accessed Jan. 4, 2021). The Reproductive Health Act, codified at 775 ILCS 55/, repealed many laws regulating abortion.

always required all medical personnel to discuss the benefits of abortion and to provide information about abortion providers when an Illinois law explicitly permitted all medical professionals to refuse to even "recommend" abortion until three years *after* SB 1564 was enacted.[3]

Expert testimony is unnecessary if SB 1564 regulates speech, not conduct. And this legal question controls the outcome of this case. Judge Kapala and Judge Pallmeyer disagreed on this fundamental question of law, and immediate appellate review is therefore warranted.

### b. The current procedural posture does not preclude interlocutory appeal.

Defendant insists that Plaintiffs are not entitled to interlocutory review under *Ahrenholz* because the current procedural posture is a denial of summary judgment. *See* D.'s Opp. at 5. But Plaintiffs are not arguing that disputed questions of fact should be resolved in their favor such that summary judgment should be granted; Plaintiffs are requesting review of controlling questions of law that were resolved differently by two judges of this Court. Indeed, *Ahrenholz* itself drew a 1292(b) distinction between parties fighting over "a genuine issue of material fact" for purposes of summary judgment and a "question of law" such as "the *meaning of a statutory or constitutional provision*." 219 F.3d at 676 (emphasis added). Put differently, "'question of law' [in section

---

[3] A District Court recently rejected the argument—made throughout this case by Defendant—that medical ethics requires that medical professionals provide abortion referrals. *The Family Planning Ass'n of Maine v. U.S. Dep't. of Health and Human Servs.*, 466 F. Supp. 3d 259 (D. Me. June 9, 2020) (upholding Title X family planning rules). In doing so, the Court noted the "AMA's Code of Medical Ethics . . . does not mandate that physicians make referrals for any and all care their patients desire. Rather, it states patients 'should be able to expect that their physician will cooperate in coordinating medically indicated care with other health care professionals.'" *Id.* at 267–68 (internal citations omitted). The Court "observe[d] that while the AMA says the Department [of Health and Human Services] must condone abortion referrals, it does not state that physicians must make abortion referrals. *Id.* The opinion further noted that "[t]he AMA also gives physicians freedom to decline to accept a patient in non-emergency situations, including where the care requested by the patient 'is incompatible with the physician's deeply held personal, religious, or moral beliefs in keeping with ethics guidance on exercise of conscience.' Thus, the AMA does not hold the position that abortion referral is mandatory and acknowledges that physicians can withhold referrals on grounds of conscience." *Id.* (internal citations omitted).

1292(b)] means an abstract legal issue rather than an issue of whether summary judgment should be granted." *Id*. at 677.

The "meaning" of SB 1564—whether it regulates speech or whether it regulates conduct—is the legal question involved in this case and is therefore appropriate for interlocutory review.

### c. The Eleventh Circuit recently held that the government cannot escape First Amendment scrutiny by classifying a regulation of speech as a regulation of professional conduct.

The Eleventh Circuit recently made clear that the government cannot simply characterize a speech regulation as a "professional regulation" to escape First Amendment scrutiny. *Otto v. City of Boca Raton*, 981 F.3d 854, 861 (11th Cir. Nov. 20, 2020). *Otto* struck down a regulation that prohibited licensed marriage and family therapists "from treating minors with any counseling, practice or treatment performed with the goal of changing an individual's sexual orientation or gender identity" under the Free Speech Clause of the First Amendment. *Id*. at 859.

The Court held that the "governments' characterization of their ordinances as professional regulations cannot" escape the requirement that "content-based restrictions must receive strict scrutiny." *Id*. at 861. "The Supreme Court has consistently rejected attempts to set aside the dangers of content-based speech regulation in professional settings: 'As with other kinds of speech, regulating the content of professionals' speech 'pose[s] the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information.'" *Id*. (citing *NIFLA*, 138 S.Ct. at 2374).

The government cannot "evade the First Amendment's ordinary presumption against content-based speech restrictions by saying that the plaintiffs' speech is actually conduct." *Id*. at 861. The "Supreme Court [] rejected an attempt to regulate speech by recharacterizing it as professional conduct. *See NIFLA*, 138 S.Ct. at 2373–74. So too here. *The local governments cannot*

*rescue their ordinances by calling the plaintiffs' speech conduct*. Strict scrutiny ordinarily applies to content-based restrictions of speech, and this case is no different." *Id*. (emphasis added).

Judge Pallmeyer reached a different conclusion on this legal question regarding SB 1564, opining that whether a law requiring Plaintiffs to discuss the benefits of abortion, and to provide abortion referrals when a woman requests abortion information, regulates conduct rather than speech. That legal issue warrants interlocutory review.

### d. The evidentiary records before the two judges do not justify radically divergent opinions.

The evidence obtained during discovery does not change the legal question of whether SB 1564 regulates speech or whether it regulates professional conduct. Several facts key to this Court's preliminary injunction holding that SB 1564 likely violates the Free Speech Clause of the First Amendment were unchanged by discovery and the summary-judgment stage. The only thing that changed was the Court's legal conclusions.

At the preliminary injunction stage, this Court held that SB 1564 "includes an affirmative duty that physicians and other health care personnel [subject to SB 1564] inform his or her patient of the patient's 'legal treatment options, and risks and benefits of treatment options." P.I. Order at 3 (internal citations omitted). In particular, this Court concluded that SB 1564 "requires plaintiffs to inform their patients about abortion and counsel them on the risks and benefits of abortion." P.I. Order at 7. Defendant does not contest these facts, and discovery did not change these facts. SB 1564's "affirmative duty" compels Plaintiffs to speak, and triggers the legal question of whether SB 1564 regulates speech or whether it regulates conduct.

The S.J Denial Order likewise acknowledged that SB 1564 requires that "doctors with conscience objections . . . must 'inform his or her patient of the patient's condition, prognosis, *legal treatment options*, and risks *and benefits of treatment options*.'" S.J. Denial Order at 11

(internal citations omitted) (emphasis in original). These facts were unchanged by discovery and were therefore the same at the preliminary injunction stage and the summary judgment stage.

Plaintiffs' religious and pro-life beliefs—which prevent them from discussing the "benefits" of abortion or from referring for abortion as mandated by SB 1564—also stayed the same. *See* P.I. Order at 3; S.J. Denial Order at 3. These facts were key in determining whether SB 1564 discriminates based on content or viewpoint, thereby determining the appropriate level of constitutional scrutiny applicable to SB 1564.

The P.I. Order also held that SB 1564 "applies only to health care providers with conscience-based objections to certain legal treatment options such as abortion." P.I. Order at 8. This fact remains unchanged at the summary judgment stage, as this Court acknowledged in the S.J. Denial order. *See* S.J. Denial Order at 37 (SB 1564 applies "only to those with religiously-motivated objections to certain treatments."). The fact that SB 1564 applies only to conscientious objectors is key to the legal analysis as to whether SB 1564 survives constitutional scrutiny under the Free Speech and Free Exercise clauses.

In sum, the evidentiary record does not support the radical differences between the P.I. Order and the S.J. Denial Order because the salient facts were unchanged. The only explanation for the different outcomes is that different Judges construed the legal framework differently.

### e. There is a substantial ground for difference of opinion on Plaintiffs' Free Exercise claims.

Defendant alleges that expert discovery on the standard of care is necessary to the resolution of Plaintiffs' Free Exercise claim. D.s' Opp. at 9. But the standard of care is irrelevant to the controlling legal question of whether Free Exercise strict scrutiny applies to SB 1564—

especially since the Court acknowledged that religious objectors are targeted by SB 1654. S.J. Denial Order at 37.[4]

Recently, the Supreme Court affirmed that laws targeting religion are subject to strict scrutiny. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct.63, (2020). But the S.J. Denial Order avoided the Free Exercise analysis by assuming that Illinois was not required to grant a religious accommodation to conscientious objectors and could withdraw the accommodation without being subject to free exercise scrutiny. S.J. Denial Order at 35–36. *Cuomo* confirms this analysis is incorrect, and the divergence between the Supreme Court on this question of law and this Court warrants immediate appellate review.

*Cuomo* invalidated New York State's COVID-19 regulations that restricted attendance at religious services in "red" and "orange" zones to no more than 10 and 25 people, respectively. *Id*. at 66. Meanwhile, in the "red" zones, essential businesses could admit "as many people as they wish," and in "orange" zones "even non-essential businesses may decide for themselves how many persons to admit." *Id*. Because religious gatherings were singled out for disparate treatment, the challenged restrictions were neither neutral nor generally applicable, and therefore subject to strict scrutiny. *Id*. (internal citations omitted).

This Court concluded that SB 1564 "applies *only to those with religiously-motivated objections* to certain treatments." S.J. Denial Order at 37 (emphasis added). As a result, under *Cuomo*, SB 1564 is neither neutral nor generally applicable, and must satisfy strict scrutiny. This is a question of law that should be resolved by interlocutory appeal.

---

[4] Defendant does not address Plaintiffs' argument that the S.J. Denial Order decision on Plaintiffs' Free Exercise claim involves a controlling question of law to which there is substantial ground for difference of opinion. D.'s Opp. at 10.

**II.     Resolutions of these controlling questions of law will "speed up" the litigation.**

Engaging in unnecessary discovery—as Defendant urges—will undeniably slow the litigation. But determining which legal standard applies to SB 1564 is likely to render Defendant's desired expert testimony unnecessary, saving the parties substantial time, money, and effort, therefore "speeding up" the litigation. Determining the applicable legal standard will also save this Court time and effort. Interlocutory appeal is therefore appropriate.

## CONCLUSION

As the two divergent opinions make plain, whether SB 1564 regulates speech or professional conduct is a controlling legal question. Yet two judges on the same court issued two opinions that disagreed on this point of law. The Supreme Court's recent decision in *Cuomo* further demonstrates that whether SB 1564 is subject to Free Exercise strict scrutiny is a controlling question of law upon which there is substantial ground for difference of opinion.

Federal Rule of Appellate Procedure 5(a)(3) authorizes this Court to amend the September 3, 2020 Order denying Plaintiffs' Motion for Summary Judgment to make the necessary certification findings that will allow Plaintiffs to pursue an interlocutory appeal under 28 U.S.C. § 1292(b). Plaintiffs request that this Court grant Plaintiffs' Motion and amend the September 3, 2020 Order to certify it for interlocutory appeal.

Respectfully submitted this 8th day of January, 2021,

*s/ Elissa M. Graves*
Kevin H. Theriot (admitted *pro hac vice*)
Elissa M. Graves (admitted *pro hac vice*)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
egraves@ADFlegal.org
ktheriot@ADFlegal.org

Noel W. Sterett, Bar No. 6292008
Dalton & Tomich PLC
401 W. State St., Suite 509
Rockford, IL 61101
815.986.8050
nsterett@daltontomich.com


*Counsel for Plaintiffs*

THIS DOCUMENT HAS BEEN ELECTRONICALLY FILED

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2021 I electronically filed the foregoing paper with the Clerk of Court for the by using the ECF system which will send notification of such filing to the following:

Kwame Raoul
Attorney General of Illinois
Lauren H. Barski
Matthew V. Chimienti
Sarah J. Gallo
Elizabeth Morris
Special Litigation Bureau
Assistant Attorneys General
100 W. Randolph St.
Chicago, Illinois 60601
312-814-3422/312-814-8309
lbarski@atg.state.il.us
mchimienti@atg.state.il.us
sgallo@atg.state.il.us
emorris@atg.state.il.us

_s/ Elissa M. Graves_
Elissa M. Graves

12