**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BRYAN A. SCHNEIDER, <br><br> Defendant. | Case No. 16-50310 <br><br> Hon. Iain D. Johnston <br><br> Magistrate Judge Lisa A. Jensen |
| RONALD L. SCHROEDER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BRYAN A. SCHNEIDER, <br><br> Defendant. | Case No. 17-4663 <br><br> Hon. Iain D. Johnston <br><br> Magistrate Judge Lisa A. Jensen |

**DEFENDANT'S POSITION PAPER REGARDING *DOE V. ROKITA***

Date: January 13, 2023

Kathryn Hunt Muse
Elizabeth Morris
Sarah J. Gallo
Hannah Jurowicz
John Hazinski
Office of the Illinois Attorney General
100 W. Randolph St., 11th Floor
Chicago, Illinois 60601
(312) 814-3000
Kathryn.Muse@ilag.gov
Elizabeth.Morris@ilag.gov
Sarah.Gallo@ilag.gov
H.GroschJurowicz@ilag.gov
John.Hazinski@ilag.gov

*Counsel for Defendant*

The Court requested the parties' positions on the effect of the Seventh Circuit's decision in *Doe v. Rokita*, 54 F.4th 518 (7th Cir. 2022), on the cases at bar.

*Rokita* confirms the following: (i) *Planned Parenthood v. Casey* provides the proper framework for analyzing these cases, as this Court recognized in denying Plaintiffs summary judgment; (ii) *Casey*'s standard for reviewing disclosure provisions applicable to health care providers remains good law, notwithstanding *Dobbs v. Jackson Women's Health Organization*; and (iii) because *Rokita* and *Casey* are controlling precedent, Plaintiffs' Free Speech challenges to the disclosure provisions at issue here fail as a matter of law.

By eliminating any ambiguity about the governing legal standard, *Rokita* streamlines the disposition of these cases and minimizes the need for any evidentiary proceeding. The Court need not resolve the factual issues identified in the previous summary judgment ruling because each arose from application of intermediate scrutiny that neither *Rokita* nor *Casey* require. Instead, in light of *Rokita*, Defendant respectfully requests that the Court permit him to file a motion for summary judgment and set a briefing schedule on that motion.

## Background

Defendant briefly summarizes the procedural history of these cases to aid the Court in its assessment of *Rokita*'s impact. As the procedural history reveals, there has been uncertainty about what standard applies to the compelled speech claims at the core of Plaintiffs' lawsuits. After initially applying strict scrutiny to preliminarily enjoin the challenged statute, the Court applied the *Casey* standard in denying Plaintiffs summary judgment, while leaving open the possibility that intermediate scrutiny might apply. *Rokita* eliminates any uncertainty: the *Casey* standard applies, and it is unnecessary for the Court to apply either intermediate or strict scrutiny.

1

### A. Plaintiffs sued, the parties engaged in discovery, and Plaintiffs requested summary judgment.

Defendant Mario Treto, Jr.[1] is the head of the Illinois Department of Financial & Professional Regulation, which is the agency tasked by the State to license and regulate health care professionals. Plaintiffs are health care facilities and a doctor seeking to enjoin the 2017 amendment to the Illinois Health Care Right of Conscience Act ("Amendment"), 745 ILCS 70/6-6.1. (*See* Illinois Public Act 99-0690, attached as Exhibit A.) Broadly, the Health Care Right of Conscience Act (the "HCRCA"), 745 ILCS 70/1 *et seq.*, "grants immunity from civil liability and other protections to healthcare providers who have religiously-motivated objections to providing certain forms of treatment." *Nat'l Institute of Family & Life Advocates v. Schneider*, 484 F. Supp. 3d 596, 603 (N.D. Ill. 2020) (citing 745 ILCS 70/2).[2] It strikes a balance "to respect and protect the right of conscience" of health care professionals while "ensur[ing] that patients receive timely access to information and medically appropriate care." 745 ILCS 70/2.

The Amendment was adopted to ensure patients have relevant information to give informed consent and obtain access to safe and legal treatments, as well as to protect the integrity and ethics of the medical profession. *See Schneider*, 484 F. Supp. 3d at 604. The Amendment requires protocols to inform a patient "of the patient's condition, prognosis, legal treatment options, and risks and benefits of treatment options in a timely manner, consistent with current standards of medical practice or care." 745 ILCS 70/6.1(1). The Amendment further requires that if a patient requests a service which a health care professional is unable to participate in due to a conscience

---

[1] Plaintiffs sued Bryan A. Schneider in his official capacity as Secretary of the Illinois Department of Financial & Professional Regulation. Mr. Schneider no longer serves in this role; Mario Treto, Jr. is the Secretary of the Illinois Department of Financial and Professional Regulation. Pursuant to Federal Rule of Civil Procedure 25(d), this litigation has proceeded against Secretary Treto as Mr. Schneider's successor.
[2] This paper uses the page citations from the official reporter where the September 3, 2020 decision is published. The decision can also be found on the *NIFLA* docket at 176 and the *Schroeder* docket at 154.

objection, then the health care facility must refer, transfer, or give the patient information about other health care providers "who they reasonably believe may offer" the service. *Id.* at 70/6.1(2)-(3). Failure to comply with the Amendment could prevent health care professionals from later receiving immunity from liability or protection from discrimination on the basis of their conscientious refusal. *Id.* at 607-08. Simply put, the State offers immunity and protections for health care professionals who otherwise could face liability or discrimination by third parties for how they practice medicine—on the condition that their affiliated facilities take steps to ensure patients still receive accurate information about legal treatment options and access to them.[3]

Plaintiffs filed these lawsuits in 2016 and 2017, alleging the Amendment violated their constitutional rights. NIFLA Plaintiffs secured a preliminary injunction in 2017 enjoining the Amendments with respect to health care professionals with conscience-based objections to abortion. NIFLA Dkt. 65 at 9-10.[4] Proceedings were stayed temporarily while the Supreme Court decided *National Institute of Family and Life Advocates v. Becerra*, 585 U.S.\_\_, 138 S. Ct. 2361 (2018) (NIFLA Dkt. 78, 79, Schroeder Dkt. 59), which challenged a California law that required anti-abortion pregnancy centers to disseminate government-written notices. Fact discovery resumed in these actions and after it was complete, Plaintiffs moved for summary judgment on the remaining Free Speech and Free Exercise claims. NIFLA Dkt. 90-92; Schroeder Dkt. 67. Defendant requested the opportunity to engage in expert discovery before filing his own summary judgment motion.[5] *See Schneider*, 484 F. Supp. 3d at 608.

---

[3] A more detailed description of the HCRCA with citations and how it relates to other provisions in state law regulating health care professionals can be found at Defendant's Opposition to Plaintiffs' Motions for Summary Judgment, NIFLA Dkt. 146 at 3-6; Schroeder Dkt. 124 at 3-6.
[4] Schroeder Plaintiffs also challenge the Amendment due to their beliefs regarding contraception and sterilization.
[5] Additional procedural history is summarized at *Schneider*, 484 F. Supp. 3d at 608.

3

> **B. The Court denied Plaintiffs summary judgment, identified two possible standards for the remaining Free Speech claims, and requested expert evidence.**

On September 3, 2020, the Court denied Plaintiffs summary judgment. *Id.* at 600. The Court applied *Employment Division v. Smith*, 494 U.S. 872 (1990) to deny Plaintiffs' motions on their Free Exercise claims, finding the Amendment to be neutral to religion and able to withstand rational basis scrutiny. *Schneider*, 484 F. Supp. 3d at 625-26.

The Court closely examined the Free Speech claims and concluded that the Amendment is a "regulation of professional conduct that only incidentally burdens speech." *Id.* at 612; *see also id.* at 615, 617, 619-20, 622-23. In doing so, the Court relied in part on the Free Speech holdings in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), and noted that the Amendment "bears striking similarities to the law at issue in *Casey*[.]" *Schneider*, 484 F. Supp. 3d at 617. In *Casey*, the Supreme Court affirmed an informed consent law that required health care professionals to supply information about abortion to those seeking the procedure and to discuss the risks of childbirth, medical assistance for childbirth, and child support and adoption services with those patients. *See id.* at 612-14 (citing and analyzing *Casey*, 505 U.S. at 881).

In applying *Casey*, this Court rejected Plaintiffs' analogy to *Becerra*, 138 S. Ct. 2361, where a California law required anti-abortion centers to disseminate particular government-written information not connected to medical care. *Schneider*, 484 F. Supp. 3d at 609. The Court observed that *Becerra* affirmed the parts of *Casey* that allow for state regulation of professional conduct, and noted how *Becerra* explicitly distinguished itself from *Casey* by acknowledging that "the law [at issue in *Casey*] regulated speech only as part of the *practice* of medicine, subject to reasonable licensing and regulation by the State." *Id.* at 610 (quoting *Becerra*, 138 S. Ct. at 2373 (internal quotation omitted, emphasis in original)). Here, the state law at issue details how "health care

4

facilities shall adopt written access to care and information protocols" so that personnel's objections "do not cause impairment of patients' health"—a quintessential regulation of professional conduct. 745 ILCS 70/6.1.

After rightly recognizing *Casey*'s applicability, the Court also observed that the Seventh Circuit had not yet addressed how to analyze regulations of professional conduct, such as the law at issue here, in a Free Speech challenge. *Schneider*, 484 F. Supp. 3d at 614 n.20. The Court cited with approval the three-prong test that the Sixth Circuit derived from *Casey* and applied in *EMW Women's Surgical Center v. Beshear*, 920 F.3d 421, 428-29 (6th Cir. 2019). *Schneider*, 484 F. Supp. 3d at 612-14. But, in an abundance of caution, the Court went on to consider and deny Plaintiffs' motion applying a more robust "intermediate scrutiny" as well. *Id.* at 615. While the Court had sufficient evidence to deny Plaintiffs summary judgment under either standard, the Court noted ways expert evidence would assist the Court in applying intermediate scrutiny to a future motion from Defendant, should that standard apply. *See, e.g.*, *id.* at 616 (explaining an "important issue of fact remains" to decide whether a part of the statute "burdens more speech than necessary," as intermediate scrutiny requires considering); *id.* at 617 ("There are remaining issues of fact that prevent the court from determining whether the law satisfies intermediate scrutiny (assuming without yet deciding, whether that standard applies).").

Since the Court's 2020 decision denying Plaintiffs summary judgment: Plaintiffs filed, and the Court denied, a motion for interlocutory appeal; the parties engaged in expert discovery; and the parties filed *Daubert* motions to exclude certain expert testimony. On November 29, 2022, this Court requested the parties' positions on the effect of a Seventh Circuit decision issued the day prior in *Rokita*. NIFLA Dkt. 221; Schroeder Dkt. 190.

**Discussion**

**I.** ***Rokita* confirms this Court properly denied Plaintiffs summary judgment based on *Casey*.**

The Seventh Circuit's decision in *Rokita* shows that the Court correctly denied Plaintiffs' earlier requests for summary judgment. Further, *Rokita* confirms that *Casey* and *EMW* provide the appropriate framework for analyzing Plaintiffs' Free Speech claims, and eliminates the need for this Court to consider evidence of how the Amendment fairs under intermediate scrutiny.

    **A.** ***Rokita* confirms *Casey*'s standard for regulations of professional conduct remains good law.**

*Rokita* considered Indiana's requirement that health care providers advise patients that abortion providers who retain custody of fetal remains must dispose of them through cremation or burial, and that patients who choose to take custody of the remains may dispose of them as they wish. *See* 54 F.4th 519. The Seventh Circuit upheld the state law, and in doing so, unambiguously stated that the First Amendment holdings in *Casey* were unaffected by *Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022), which overruled *Casey*'s substantive Due Process holdings regarding abortion. *See Rokita*, 54 F.4th at 520.

The Seventh Circuit considered head-on whether *Casey*'s holding that a state may regulate health care professionals to ensure patients receive accurate information is still good law, and conclusively found that it was:

> The norm that units of government may require physicians (and other professionals) to provide accurate information to their clients long predates *Casey* and has not been disturbed since. Physicians must tell patients about drugs' side effects and provide information that enables informed consent to risky procedures such as surgery. Nothing in *Dobbs*, or any other post-*Casey* decision, implies that similar notice requirements violate the Constitution.

*Rokita*, 54 F.4th at 520. The Court of Appeals expressly rejected the notion that "the state's authority to require medical providers to provide information has evaporated, so that all such

requirements violate the First Amendment unless the state shows a compelling need" as there is no "such implication in *Dobbs*, which did not discuss that aspect of *Casey*." *Id*.

### B. *Rokita* confirms intermediate scrutiny does not apply to professional conduct regulations like the statute challenged here.

In discussing the law at issue in *Rokita*, the Court of Appeals also resolved the ambiguity around the governing legal standard evident in this Court's summary judgment ruling. *Rokita* made clear that the Seventh Circuit scrutinizes a state law compelling health care professionals to provide information relating to medical care under *Casey*'s deferential "truthful, non-misleading" standard, 505 U.S. at 882, not intermediate scrutiny.

Just as this Court did in its summary judgment order, the Seventh Circuit rejected any contention that *Becerra* disturbed *Casey*'s deferential approach to laws regulating professional conduct. The Seventh Circuit explained that *Becerra* "does not question the propriety of requirements that medical professionals alert patients to laws that affect medical choices." *Rokita*, 54 F.4th at 520-21.

Additionally, *Rokita* clarifies the framework courts should apply to decide regulated professionals' compelled speech claims. The Court of Appeals did not apply intermediate scrutiny to the Indiana law, *e.g.*, *id.* at 520 (refusing to require a "compelling need"), and instead upheld the law based on criteria articulated in *Casey* and distilled by the Sixth Circuit's *EMW* test. Specifically, *Rokita* held that states may require health care professionals to "provide accurate information to their clients," give them "information that enables informed consent," and share "information that facilitates patients' choices directly linked to procedures that have been or may be performed." 54 F.4th at 520-21. These points follow the same *Casey* language relied upon in *EMW* regarding provision of information to patients that is accurate and relevant to a medical decision. *See EMW*, 920 F.3d at 424.

7

As *Rokita*, *Casey*, and *EMW* make clear, courts examining state regulations of professional disclosure provisions need only consider whether the regulations relate to medical treatments relevant to the patient and compel speech that is truthful and not misleading.

## II. *Rokita* invites judgment as a matter of law in Defendant's favor.

Since *Rokita* settled the open legal question identified in the Court's summary judgment decision, the need to consider expert testimony in these cases has been significantly reduced, if not altogether eliminated. The Court of Appeals engaged in the simple analysis employed in *Casey* and *EMW*, neither of which mentions, much less requires, expert evidence to justify the state law. In *Rokita*, there was no battle of experts over whether the standard of care required medical providers to discuss the disposition of fetal remains with their patients. *Rokita* confirms that a deferential review applies to medical information disclosure statutes.

To resolve this matter expeditiously, and if it pleases the Court, Defendant is prepared to move for summary judgment in light of *Rokita* on the remaining claims. On its face, the Amendment plainly comports with the truthful, non-misleading, and relevance requirements articulated in *Casey* and reaffirmed in *Rokita*. Health care professionals seeking the protections of the HCRCA must inform patients of their "condition[s], prognos[es], legal treatment options, and risks and benefits of treatment options," and provide information about other providers of requested medical care. 745 ILCS 70/6.1. These disclosures fall plainly within the scope of professional conduct regulations deemed permitted by *Casey* and *Rokita*. The undisputed material facts here only further demonstrate this point.

Plaintiffs have been afforded ample opportunity to support and argue their claims and failed—even under standards more generous to them than those properly applied. Plaintiffs have spent years attempting to develop hypotheticals where they could interpret this plain and neutral

8

language to require them to provide information they disagree with. But the Amendment compels even less speech than the Indiana law in *Rokita*. In fact, the Amendment does not compel Plaintiffs to say or do anything. Rather, it establishes conditions by which Plaintiffs can, for example, claim immunity if confronted with a future claim from a patient arising from a provider's failure to discuss a medically appropriate health service. There is nothing in First Amendment case law that authorizes a court to enjoin a state medical disclosure statute indefinitely until the court has resolved when plaintiffs with varying conscience objections to multiple procedures must provide specific information to a variety of hypothetical patients with various medical conditions.

      A draft motion for summary judgment is attached as Exhibit B to preview Defendant's proposed path to resolution of these matters. Defendant requests thirty days' notice to file a final version of the motion with a supporting memorandum of law and a Local Rule 56.1 statement.

Dated: January 13, 2023                            Respectfully submitted,

                                                */s/ Elizabeth Morris*
                                                Kathryn Hunt Muse
                                                Elizabeth Morris
                                                Sarah J. Gallo
                                                Hannah Jurowicz
                                                John Hazinski
                                                Office of the Illinois Attorney General
                                                100 West Randolph St., 11th Floor
                                                Chicago, IL 60601
                                                (312) 814-3000
                                                Kathryn.Muse@ilag.gov
                                                Elizabeth.Morris@ilag.gov
                                                Sarah.Gallo@ilag.gov
                                                H.GroschJurowicz@ilag.gov
                                                John.Hazinski@ilag.gov

                                                *Counsel for Defendant*