# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BRYAN A. SCHNEIDER, <br><br> Defendant. | Case No. 16-50310 <br><br> Hon. Iain D. Johnston <br><br> Magistrate Judge Lisa A. Jensen |
| RONALD L. SCHROEDER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BRYAN A. SCHNEIDER, <br><br> Defendant. | Case No. 17-4663 <br><br> Hon. Iain D. Johnston <br><br> Magistrate Judge Lisa A. Jensen |

**[DRAFT] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Mario Treto, Jr., in his official capacity as Secretary of the Illinois Department of Financial and Professional Regulation,[1] respectfully moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) in his favor on all remaining claims brought by Plaintiffs because there is no genuine dispute of material fact and Defendant is entitled to judgment as a matter of law. Specifically, Defendant moves for summary judgment on Plaintiffs' First Amendment claims.

---

[1] Plaintiffs name former Secretary of the Illinois Department of Financial and Professional Regulation, Bryan Schneider, as a defendant in his official capacity. Pursuant to Federal Rule of Civil Procedure 25(d), this litigation has proceeded against his successor, Secretary Mario Treto, Jr.

**Background**

1. Plaintiffs in *National Institute of Family and Life Advocates v. Schneider* (16-cv-50310) and *Schroeder v. Schneider* (17-cv-4663) claim a 2017 amendment to the Illinois Health Care Right of Conscience Act, 745 ILCS 70/6-6.1 ("Amendment"), violates their rights under the Free Speech Clause and Free Exercise Clause in the U.S. Constitution.

2. The Illinois Health Care Right of Conscience Act ("HCRCA"), 745 ILCS 70/1 *et seq.*, created immunities and protection from discrimination for health care professionals who refuse to provide patients certain health care services due to conscience objections. *See id.* at 70/2. The Amendment tweaked protocols related to those protections to ensure patients have all relevant information to give informed consent and access to safe and legal treatments of their choice, as well as to protect the integrity and ethics of the medical profession. *See id.* at 70/6-6.1.

3. Plaintiffs are health care facilities and a doctor who challenge two provisions of the Amendment. First, they object to the Amendment's protocols requiring them to "inform a patient of the patient's condition, prognosis, legal treatment options, and risks and benefits of the treatment options in a timely manner, consistent with current standards of medical practice or care." *Id.* at 70/6.1(1) ("benefits-discussion requirement"); *see generally* NIFLA Dkt. 1; Schroeder Dkt 1. Second, if a patient requests a treatment to which a health care professional has a conscience objection, then to take advantage of the HCRCA's protections, they must refer or transfer the patient to, or provide them written information about, health care professionals "who they reasonably believe may offer" the requested treatment. 745 ILCS 70/6.1(2)-(3) ("refer-transfer-or-inform requirement"); *see generally* NIFLA Dkt. 1; Schroeder Dkt. 1.

1

4. Plaintiffs previously moved for summary judgment on their remaining Free Speech and Free Exercise claims. On September 3, 2020, the Court denied their motions. *Nat'l Institute of Family & Life Advocates v. Schneider*, 484 F. Supp. 3d 596, 600 (N.D. Ill. 2020).

5. For the Free Speech claims, the Court concluded that the Amendment "is a regulation of professional conduct that only incidentally burdens speech." *Id.* at 612; *see also id.* at 615, 617, 619-20. In so finding, the Court looked to how the Amendment ensures health care professionals provide patients with truthful, non-misleading information as "part of the practice of medicine." *Id.* at 610, 617 (quoting *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 884 (1992), emphasis omitted). It therefore held that the Amendment is "afforded more deferential review" as a regulation of professional conduct. *Id.* at 610; *see also id.* at 612-13, 617.

6. The Court observed, however, that the Seventh Circuit had not yet addressed how to analyze regulations of professional conduct such as the Amendment in a Free Speech challenge. *See id.* at 614 n.20. The Court cited with approval the three-prong test the Sixth Circuit derived from *Casey* and applied in *EMW Women's Surgical Center v. Beshear*, 920 F.3d 421, 428-29 (6th Cir. 2019). *See* 484 F. Supp. 3d at 612-15. The Court acknowledged that, alternatively, intermediate scrutiny could apply to regulations of professional conduct. *See id.* at 614-15.

7. The Court did not decide which standard applied at the time, though, because with the factual record before it, Plaintiffs' Free Speech claims could not succeed under either *EMW* or intermediate scrutiny. *See id.* at 614-17. Because the Court noted that expert discovery could be helpful in applying intermediate scrutiny to a future motion from Defendant, should that standard apply, it ordered expert discovery on the medical standard of care. *See id.* at 617 ("There are remaining issues of fact that prevent the court from determining whether the law satisfies intermediate scrutiny (assuming, without yet deciding, whether that standard applies)"); *id.* at 613,

616, 618, 620 (identifying factual issues which expert discovery may help resolve).

8. For the Free Exercise claims, the Court found that rational basis review applied, and that Plaintiffs had not identified a reason why the Amendment lacked a rational basis. *See id.* at 625-26.

**Argument**

9. The Seventh Circuit's recent decision in *Doe v. Rokita*, 54 F.4th 518 (7th Cir. 2022) confirmed that the Court's legal analysis in its summary judgment decision was correct. Specifically, *Rokita* affirmed key Free Speech holdings in *Casey*, which the Court relied on in its opinion.

10. Namely, *Rokita* held that, as established in *Casey*, the State "may require medical professionals to provide information that facilitates patients' choices directly linked to procedures that have been or may be performed." 54 F.4th at 521 (citing *Nat'l Institute of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361, 2373 (2018)). When regulations like the Amendment merely "require physicians (and other professionals) to provide accurate information to their clients," they do not run afoul of health care professionals' Free Speech rights as they only incidentally burden speech. *Id.* at 520; *see also Schneider*, 484. F. Supp. 3d at 610-11.

11. The following test based on *Casey* is appropriate for determining whether a regulation of professional conduct is permissible under the Free Speech Clause: "(1) it must relate to a medical procedure; (2) it must be truthful and not misleading; and (3) it must be relevant to the patient's decision whether to undertake the procedure, which may include, in the abortion context, information relevant to the woman's health risks." *Schneider*, 484 F. Supp. 3d at 612-13 (quoting *EMW*, 920 F.3d at 428-29).

12. So long as the challenged regulation of professional conduct meets these three

requirements, heightened scrutiny does not apply and the law "should be upheld." 484 F. Supp. 3d at 614 (quoting *EMW*, 920 F.3d at 424); *see also Rokita*, 54 F.4th at 520-21 (holding lack of heightened scrutiny for regulation of professional conduct established in *Casey* "has not been disturbed" and was "cited with approval" in *Becerra*, 138 S.Ct. 2361).

**The Amendment Satisfies the Truthful, Non-Misleading Standard Applicable to Plaintiffs' Free Speech Claims**

13. Because the undisputed material facts and the statutory text show that the Amendment protocols: (1) relate to a medical procedure; (2) are truthful and not misleading; and (3) are relevant to patients' decisions whether to undertake a procedure, it is not subject to heightened scrutiny and withstands Plaintiffs' Free Speech challenges. *See Casey*, 505 U.S. at 882; *Rokita*, 54 F.4th at 520-21; *Schneider*, 484 F. Supp. 3d at 612-13.

14. The Amendment easily satisfies these three prongs on its face. First, the Amendment clearly relates to medical procedures. The benefits-discussion requirement requires a "health care facility, physician, or health care personnel" to "inform a patient of the patient's condition, prognosis, legal treatment options, and risks and benefits of the treatment options[.]" 745 ILCS 70/6.1(1). The refer-transfer-or-inform requirement also applies to a "health care facility, physician, or health care personnel" regarding "a health care service that is a diagnostic or treatment option requested by a patient[.]" *Id.* at 70/6.1(2). It is clear from the statutory text that both protocols that Plaintiffs challenge are regulations regarding health care professionals discussing procedures with their patients.

15. Second, the Amendment is truthful and not misleading as the benefits-discussion requirement merely states that all health care professionals inform patients of the risks and benefits of treatment options specific to that patient's condition and prognosis. *See id.* at 70/6.1(1). Plaintiffs worry these protocols will require them to inform patients with certain conditions and

4

prognoses about benefits that abortion, contraception, or sterilization could provide them. But the Amendment is neutral: When there are "benefits" to a patient that are grounded in medicine and tailored to the patient, disclosing them is truthful and not misleading. The information mandated in the refer-transfer-or-inform requirement is factual as well: the identity of other "health care providers" they reasonably believe offers a service requested by the patient. *Id.* at 70/6.1(3).

16. Third, the information that health care professionals must share under the Amendment to take advantage of HCRCA protections is relevant to patients' decisions regarding medical procedures. Information about "the patient's condition, prognosis, legal treatment options, and risks and benefits of the treatment options" is essential for patients to make informed decisions about their medical procedures. *Id.* at 70/6.1(1). When health care professionals are not able to provide a treatment requested by a patient, clearly identifying health care providers that do provide those treatments is relevant to a patient's decision about that medical procedure.

**Alternatively, the Amendment Survives Intermediate Scrutiny**

17. However, should the Court apply a more stringent standard despite the holding in *Rokita* and approach taken by courts such as in *EMW*, intermediate scrutiny is the most exacting level of scrutiny that could apply to the Amendment as a regulation of professional conduct. *See* 484 F. Supp. 3d at 615. The Amendment withstands intermediate scrutiny as it promotes substantial government interests that would be achieved less effectively absent this regulation, and does not burden substantially more speech than is necessary to further those interests. *See id.* at 615-17.

18. The benefits-discussion requirement promotes the government's substantial interests in ensuring that patients have all relevant information to give informed consent and in protecting the integrity and ethics of the practice of medicine. Plaintiffs challenge this application

to abortion discussions, but the benefits of abortion specific to a patient factor into their decision about whether to get or forgo an abortion.[2] A health care professional sharing the relevant benefits of a treatment with a patient is at the core of achieving a patient's informed consent for a course of treatment. *See id.* at 613-14.

19. Crisis pregnancy centers like Plaintiffs treat pregnant women without disclosing the centers' goal of convincing them to carry pregnancies to term, and concern about deceptive tactics being used in the practice of medicine led to the benefits-discussion requirement. These centers offer professional health care services such as prenatal ultrasounds and medical counseling about whether to carry pregnancies to term, in which the centers fail to disclose any benefits of abortion specific to a patient's condition. Without protocols in place to ensure patients receive all relevant information about the risks of their pregnancies and benefits of abortions, these practices can cause a lack of informed consent from patients.

20. The State has a substantial interest in not insulating such harmful practices from liability and therefore altered the availability of the protections of the HCRCA. These health care facilities and personnel should not be able to enjoy protections from the State when they do not implement care and information protocols to ensure their patients can provide informed consent for their medical care.

21. The benefits-discussion requirement does not burden substantially more speech than necessary to further these government interests because, as the undisputed facts show, the standard of care for informed consent already requires non-objecting health care professionals to discuss benefits of treatment options specific to the patient. Further, a public awareness campaign

---

[2] Schroeder Plaintiffs also challenge the need for health care professionals to discuss the benefits of contraception and sterilization with patients, and refer, transfer, or provide written information to patients about health care professionals who provide these treatments under the Amendment. The arguments outlined in this motion are applicable to contraception and sterilization as well.

6

is not a viable alternative because medical advice must be patient-specific and because of variations in conscience objections to abortion held by health care professionals.

22. The refer-transfer-or-inform requirement promotes the government's substantial interest in ensuring that patients know how to access to safe and legal treatments appropriate for their medical condition. This requirement is appropriately tailored because Plaintiffs already refer, transfer, and inform patients about health care providers. Moreover, health care professionals who do not perform certain procedures for reasons other than a conscience objection are subject to a similar referral requirement under the standard of care. A public awareness campaign would not suffice because it would not be tailored to a patient's condition and could not predict the location and health history of patients looking for treatments.

**The Free Exercise Claims Fail Because the Amendment Has a Rational Basis**

23. Finally, the Court should grant summary judgment in favor of Defendant on Plaintiffs' Free Exercise claims because the Amendment has a rational basis.

24. As this Court previously and correctly held, the Amendment is a neutral and generally applicable law because it provides "an accommodation to healthcare providers who have conscience objections; it excuses them from complying with certain regulations and standards that govern the rest of the field." *Schneider*, 484 F. Supp. 3d at 623. There is no undisputed material fact in the record indicating that this previous holding was incorrect or should be altered.

## Conclusion

For the reasons stated herein and in Defendant's memorandum in support of this motion, Defendant respectfully:

a) Moves for summary judgment under Rule 56(a) on Plaintiffs' remaining claims;

b) Requests the Court to lift the preliminary injunction preventing Defendant from

enforcing the Amendment that was entered by the Court on July 19, 2017 (NIFLA Dkt. 65); and

c) Requests the Court grant any other relief that is equitable and just.

Date: _____, 2023

Respectfully submitted,

*/s/ Sarah J. Gallo*

Kathryn Hunt Muse
Elizabeth Morris
Sarah J. Gallo
Hannah Jurowicz
John Hazinski
Office of the Illinois Attorney General
100 W. Randolph St., 11th Floor
Chicago, Illinois 60601
(312) 814-3000
Kathryn.Muse@ilag.gov
Elizabeth.Morris@ilag.gov
Sarah.Gallo@ilag.gov
H.GroschJurowicz@ilag.gov
John. Hazinski@ilag.gov

*Counsel for Defendant*