# Exhibit B

Response to NIFLA's Supplemental Facts

**IN THE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| National Institute of Family and Life Advocates, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>Mario Treto Jr.,<br><br>        Defendant. | Case No. 16-cv-50310<br><br>Hon. Iain D. Johnston<br><br>Magistrate Judge Lisa A. Jensen |
| Ronald Schroeder, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>Mario Treto Jr.,<br><br>        Defendant. | Case No. 17-cv-4663<br><br>Hon. Iain D. Johnston<br><br>Magistrate Judge Lisa A. Jensen |

**DEFENDANT'S RESPONSE TO NIFLA PLAINTIFFS' SUPPLEMENTAL
STATEMENT OF FACTS**

Defendant, Mario Treto, Jr. respectfully submits this following response to the NIFLA

Plaintiffs' Supplemental Statement of Facts.

**I.      Plaintiff Pregnancy Centers provide life-affirming options to women.**

1.      Plaintiffs here are the National Institute of Family and Life Advocates (NIFLA), a

religious organization comprised of member pregnancy centers from across the nation, and three

individual Illinois pregnancy centers: Tri-County Crisis Pregnancy Center ("Informed Choices"),

1

TLC Pregnancy Services ("TLC"), and Mosaic Pregnancy and Health Centers ("Mosaic").
Parties' Pre-trial Joint Stipulations of Facts ¶ 1, ECF No. 245-1.

    **Defendant's Response:**    Undisputed.

2.      Plaintiff NIFLA has forty member pregnancy centers in Illinois, including
Informed Choices, TLC, and Mosaic. *Id.* ¶ 16.

    **Defendant's Response:**    Undisputed.

3.      Plaintiff Mosaic is a religious non-profit that operates pregnancy centers in
Granite City and Fairview Heights, Illinois. *Id.* ¶ 20.

**Defendant's Response:**    Undisputed.

4.      Kathy Lesnoff serves as Mosaic's president and CEO. Trial Tr. 91:23–24, ECF
Nos. 260–62 ("Tr.").

**Defendant's Response:**    Undisputed.

5.      Mosaic offers "free ultrasounds, pregnancy testing, STI testing and treatment,"
"abortion pill reversal," and "material assistance in the way of car seats, diapers, [and] lotion."
*Id.* at 95:17–23. It also provides pregnancy options counseling and "post-abortion counseling."
*Id.* at 96:7–9, 101:17–22.

**Defendant's Response:**    Undisputed.

6.      Mosaic does not provide medical treatment for pregnancy. *Id.* at 114:25–115:1.

**Defendant's Response:**    Disputed. Mosaic, like all of the Plaintiff CPCs, have health
care personnel that use ultrasounds to determine the viability of a pregnancy, whether a

pregnancy is intrauterine, and the gestational age of a fetus. Post-Trial Stipulations of Fact, at ¶ 46.[1] Ultrasound determinations are medical diagnoses. Trial tr. 579:6-9; 731:23-732:20.

7.    Plaintiff Informed Choices is a religious non-profit that operates pregnancy centers in Grayslake and Crystal Lake, Illinois. Pre-Trial Stips. ¶ 18.

**Defendant's Response:**    Undisputed.

8.    Sarah VanDerLip serves as executive director of Informed Choices. Tr. 148:5–6.

**Defendant's Response:**    Undisputed.

9.    Informed Choices offers pregnancy tests, ultrasounds, and pregnancy options counseling. *Id*. at 149:7–9, 155:17–20.

**Defendant's Response:**    Undisputed.

10.    Informed Choices does not "provide any medical treatment for pregnancy" but does offer free prenatal vitamins. *Id.* at 155:21–25.

**Defendant's Response:**    Undisputed that Informed Choices provides patients with a starter bottle of prenatal vitamins. Disputed that Informed Choices does not provide any medical treatment for pregnancy. Informed Choices, like all of the Plaintiff CPCs, have health care personnel that use ultrasounds to determine viability of a pregnancy, whether a pregnancy is intrauterine, and the gestational age of a fetus. Post-Trial Stipulations of Fact, at ¶ 46. Ultrasound determinations are medical diagnoses. Trial tr. 579:6-9; 731:23-732:20.

11.    Plaintiff TLC is a religious non-profit that operates pregnancy centers in Elgin, Schaumburg, and Palatine, Illinois, and a mobile ultrasound unit. Pre-Trial Stips. ¶ 19.

**Defendant's Response:**    Undisputed.

---

[1] The parties' Post-Trial Stipulations of Fact are located at NIFLA Dkt. 267 and Schroeder Dkt. 232.

12.     TLC offers "pregnancy testing," "free ultrasounds," "STD testing," pregnancy options counseling, a "post-abortive recovery program," parenting classes for both men and women, and "practical help such as diapers, clothing, formula, [and] things of that sort." Tr. 175:14–176:5, 196:16–197:1.

**Defendant's Response:**     Undisputed.

13.     TLC also provides "prenatal care up until the 20th week" of pregnancy, but it does not perform deliveries. *Id.* at 175:17–20.

**Defendant's Response:**     Undisputed.

14.     Plaintiffs seek to "empower the choice for life" by "provid[ing] information, health care services, and material support free of charge." Pre-Trial Stips. ¶¶ 15, 29.

**Defendant's Response:**     Undisputed that this is Plaintiffs' stated goal.

15.     "Plaintiffs do not provide, refer for, or otherwise facilitate access to abortion due to their religious beliefs that abortion ends a human life." *Id.* ¶ 25.

**Defendant's Response:**     Undisputed.

16.     All pregnancy centers disclose on their website that they do not provide or refer for abortion. Parties' Joint Post-Trial Stipulations of Fact ¶ 49 ECF No. 267.

**Defendant's Response:**     Undisputed.

17.     Nevertheless, women sometimes come to pregnancy centers for an ultrasound even though they have already decided to have an abortion because they "don't want to have to pay for it at the abortion clinic." Tr. 106:17–23.

**Defendant's Response:**     Undisputed.

18.     It is uncontested that Plaintiffs believe abortion has no benefits for women and that informing their patients of the supposed "benefits" of abortion would violate their religious beliefs. Pre-Trial Stips. ¶¶ 8, 39.

**Defendant's Response:**     Undisputed.

19.     Furthermore, all parties agree that requiring Plaintiffs to refer patients for abortion would violate their religious beliefs by making them complicit in abortion. *Id.* ¶ 25.

**Defendant's Response:**     Undisputed that Plaintiffs do not provide, refer for, or otherwise facilitate access to abortion due to their religious beliefs that abortion ends a human life.

20.     If Plaintiffs were "forced to describe the benefits of abortion or to refer for abortion," they "would no longer have any financial support, nor would [they] have any staff or volunteers, because every one of them are committed to the life issue, and [they] all believe that God creates babies and abortion will kill the innocent baby." Tr. 115:2–17.

**Defendant's Response:**     Undisputed that all Plaintiffs believe God creates babies and abortion will kill an innocent baby. Also undisputed in the trial transcript citation, Plaintiff Mosaic believes they would lose financial support, staff, and volunteers if they described benefits of abortion or refer for abortion, though nothing in the record indicates this would indeed happen beyond Mosaic's belief that it may. Disputed that this record citation reflects that other Plaintiff CPCs would similarly lose financial support, staff, and volunteers.

**II. The evidence at trial established that the Illinois standard of care does not require health care providers to discuss the benefits of or refer for medical treatment options that they do not offer.**

21.     Three expert witnesses testified at trial on behalf of Plaintiffs: Dr. Daniel James Lee, an Illinois obstetrician-gynecologist; Dr. Ashley Fernandes, a pediatrician and medical

ethicist; and Dr. C. Brent Boles, an obstetrician-gynecologist. All three have experience volunteering at pro-life pregnancy centers. Post-Trial Stips. ¶¶ 42–44.

**Defendant's Response:** Undisputed.

22. One expert testified at trial on behalf of the State: Dr. Paul Burcher, an out-of-state obstetrician-gynecologist who has no experience volunteering at pro-life pregnancy centers. *Id.*

**Defendant's Response:** Undisputed.

23. Dr. Lee was the only expert at trial who practices medicine in Illinois. Tr. 34:19–36:11.

**Defendant's Response:** Undisputed.

24. The State's expert, Dr. Burcher, admitted at trial that he was "not aware of how the AMA code of ethics is used in Illinois" and does not "practice medicine in Illinois." Tr. 655:23–656:2.

**Defendant's Response:** Undisputed that Dr. Burcher testified to the quoted statements in Paragraph 24.

25. Thus, only Dr. Lee has experience practicing pursuant to the *Illinois-specific* standard of care.

**Defendant's Response:** Disputed. Defendant objects that these are improper arguments, not proposed findings of fact, in violation of the Court's standing order. Defendant further objects to this paragraph because these arguments are not supported by specific citations to the record and should therefore be disregarded. To the extent Plaintiffs' other proposed findings of fact address related allegations with supporting evidence, Defendant's responses and rebuttal evidence are provided there.

6

26. Dr. Lee testified that professional organizations, such as the American Medical Association (AMA), do not set the standard of care. *Id.* at 34:10–18; *see also id.* at 472:25–473:11 (Fernandes).

**Defendant's Response:** Undisputed that Dr. Lee testified that professional organizations do not set the standard of care. Disputed that Dr. Lee's (and Dr. Fernandes's) testimony accurately characterize the significant role these guidelines play. Ethical guidelines issued by the AMA and other professional bodies help establish the standard of care. Defendant's Proposed Supplemental Findings of Fact ("Def.'s SOF") ¶¶ 76-78. For example, Dr. Lee relies on American College of Obstetricians and Gynecologists (ACOG) guidelines the most in his practice. Trial tr. 60:24-61:5. Moreover, the AMA Code of Medical Ethics is an easier, more easily indexed reference that is similar to *Principles of Biomedical Ethics*, the seminal text of bioethics in America. Trial tr. 574:16-22; 592:22-593:3.

27. Instead, the standard of care is determined on a case-by-case basis, and medical professionals should use their discretion, clinical judgment, and training to determine the standard of care for each patient. *Id.* at 34:15–18, 50:9–20 (Lee).

**Defendant's Response:** Undisputed that medical providers should use discretion, clinical judgment, and training when treating and counseling patients. Disputed that the standard of care varies patient by patient. Medical ethics and the standard of care reflect general principles that apply to all healthcare providers. Def.'s SOF ¶¶ 65, 67, 74-75.[2] The standard of care is informed by ethical principles and guidelines issued by professional bodies such as the AMA and ACOG, in addition to a health care provider's clinical judgment regarding the patient's medical

---

[2] Defendant's Proposed Supplemental Findings of Fact is attached to Defendant's Post-Trial Memorandum of Law as Exhibit A.

history and personal circumstances or choices. Def.'s SOF ¶¶ 76-78, 83. That is, the medical standard of care consists of both clinical and ethical standards of care, which are intertwined. Def.'s SOF ¶ 64.

28.     The ethical obligations that a doctor owes to a specific patient "arise out of the nature of the doctor-patient relationship, . . . specifically what has that patient come to the physician for and what is the physician offering to the patient." *Id.* at 433:22–434:15 (Fernandes). In other words, doctors may limit the scope of care that they will provide to a given patient. *Id.* at 435:2–6 (Fernandes).

**Defendant's Response:**     Undisputed that a doctor may refuse a procedure and limit the procedures and treatments they personally offer. Trial tr. 606:13-16. Disputed to the extent Plaintiffs assert that not offering certain treatments and procedures eliminates the doctor's duty to provide comprehensive medical options counseling their patient about those treatments and procedures. Def.'s SOF ¶¶ 92, 98, 100, 108; Trial tr. 637:21-638:5.

29.     Informed consent is the responsibility of the physician who will provide the treatment for which consent is sought, not the referring physician or any other physician. *Id.* at 54:5–23 (Lee), 434:20–435:6 (Fernandes), 726:23–727:11 (Boles).

**Defendant's Response:**     Disputed. Informed consent can apply to a specific medical intervention or more broadly with medical options counseling because both involve choosing a treatment option or a plan of care. D.'s SOF ¶¶ 107-108.  Narrowing this requirement would imply that a physician is not obligated to enhance or promote patient autonomy. Even if a medical facility offers limited services, health care personnel are still obligated to advise patients of risks and benefits of relevant procedures and treatment options which can follow from the

results of the medical procedure the health care provider performed, such as an ultrasound. D.'s SOF ¶¶ 109-111; Trial tr. 603:13-19; 605:2-12; 637:21-638:5.

30.     For that reason, a physician need not discuss the risks and benefits of treatments like abortion that they do not personally provide. Tr. 41:24–42:1, 48:18–49:2, 56:8–12 (Lee), 721:8–722:15 (Fernandes), 732:14–20 (Boles).

**Defendant's Response:**     Disputed. The fact that a doctor does not offer certain treatments and procedures does not eliminate the doctor's duty to provide comprehensive medical options counseling their patient about those treatments and procedures. Def.'s SOF ¶¶ 92, 98, 100, 108; Trial tr. 637:21-638:5.

31.     Nor does the standard of care require health care providers (with or without conscience-based objections) to refer for treatments like abortion that they do not believe would benefit the patient or would violate the physicians' conscience. *Id.*

**Defendant's Response:**     Undisputed that health care providers are not required to refer patients for abortion if a patient's personal circumstances, requests, choices, or medical history do not suggest that referral is necessary. *See* Trial tr. 629:13-630:2. Disputed that a doctor's conscience objections impact the responsibility to refer. In general, physicians should refer a patient to another physician or institution to provide treatment the physician declines to offer. Def.'s SOF ¶ 125; Def. Trial Ex. 72 at IDFPR009520. A health care provider must inform a patient of all relevant treatment options, including those to which the provider conscientiously objects. Def.'s SOF ¶¶ 92, 98, 100, 108; Trial tr. 514:5-10; 614:25-617:3; NIFLA Ex. 32A at AMA 1.1.7, NIFLA 01755-56.

32.     Thus, the standard of care does not require conscientious objectors to tell patients about the benefits of abortion or where they can obtain one. *Id.* at 56:4–12 (Lee).

9

**Defendant's Response:** Disputed. If a physician has a conscience objection that impedes objective medical options counseling, that physician must inform the patient of their conscience objection. Def.'s SOF ¶ 122; Trial tr. 65:2-6; 621:2-13; 771:3-6; Def. Trial Ex. 72 at IDFPR009520. Similarly, a health care provider must inform a patient of all relevant treatment options, including those to which the provider conscientiously objects. Def.'s SOF ¶¶ 100; 118; Trial tr. 514:5-10; 614:25-617:3; NIFLA Ex. 32A at AMA 1.1.7, NIFLA 01755-56. Physicians have an ethical responsibility to place patient welfare above their own self-interest or obligations to others. Trial tr. 770:7-13.

33.    The State's expert, Dr. Burcher, does not "perform elective abortions" due to his Catholic faith. *Id.* at 579:16–21.

**Defendant's Response:** Undisputed.

34.    He testified that professional organizations, such as the American College of Obstetricians and Gynecologists (ACOG) and the American Medical Association, do not mandate the standard of care but only provide guidelines. *Id.* at 654:13–14, 655:1–4, 656:3–9.

**Defendant's Response:** Undisputed.

35.    Dr. Burcher also admitted that he counsels patients differently for procedures he performs himself as opposed to procedures performed by other physicians, *id*. at 657:12–17, and that "[a] full explanation of all treatment options and the risks and benefits isn't required by the standard of care in every situation," *id.* at 661:17–20. He also testified that, in his practice, whenever he takes informed consent for a procedure he doesn't perform, it is performed by someone else within his hospital. *Id.* at 673: 21–674:2.

**Defendant's Response:** Dispute the characterization of Dr. Burcher's testimony. Dr. Burcher may have more depth of knowledge about procedures he personally performs, but he

still provides counseling for all treatments and procedures relevant for a patient. *See* Trial tr. 590:6-591:1. In addition, Dr. Burcher and Dr. Fernandes agreed that under the medical standard of care, a health care provider filters options for counseling a particular patient, and that a health care provider must inform a patient of all *relevant* treatment options. Trial tr. 425:23-426:8; 514:5-10; 588:13-589:9; 614:25-617:3; 643:3-14; 646:16-25; NIFLA Ex. 32A at AMA 1.1.7, NIFLA 01755-56; NIFLA Ex. 32K at NIFLA 01879-80. For abortion in particular, physicians should consider a patient's circumstances and preferences and their medical history when determining whether to counsel on abortion. Trial tr. 629:13-630:2. Finally, Plaintiffs mischaracterize Dr. Burcher's testimony about obtaining informed consent. His testimony was not about obtaining informed consent for procedures he does not perform; he obtains informed consent for procedures he is capable of performing but his partner is handling instead. *See* Trial tr. 673:21-674:2.

36.     Dr. Burcher explained that there are two circumstances where a health care provider can choose not to counsel a patient about certain treatment options: when the treatment option "would be a medically inappropriate choice for that patient" and when "the patient's circumstances" make the particular treatment inappropriate. *Id.* at 599:8–25. For example, it would be inappropriate to counsel a patient who "had a positive pregnancy test and was leaping for joy" about "the legal option of having an abortion." *Id.* at 599:23–600:4. A physician must determine whether a treatment is medically appropriate by "reading the room." *Id.* at 601:1–6. "And what is medically appropriate depends on the context," and the medical professional's "medical judgment." *Id.* at 653:22–24, 654:9–12.

**Defendant's Response:**      Undisputed.

11

37.     Dr. Burcher further testified that "[a] medical referral is not always required when a physician does not perform a procedure"; nor does the standard of care "require giving the patient a written list of names of physicians that will actually provide" the procedure. *Id.* at 662:3–5, 663:23–664:1. For instance, when working at a Catholic hospital, he used to give patients seeking abortion the number for a Planned Parenthood facility that did *not* provide abortions. *Id.* at 662:13–663:22. That practice was consistent with the standard of care. *Id.*

**Defendant's Response:**     Dispute the characterization of Dr. Burcher's testimony. Dr. Burcher testified that whether a medical referral is required depends on the context of the refusal. *See* Trial tr. 662:3-5. Moreover, when Dr. Burcher provided Planned Parenthood information to his patients, he did so because he knew that Planned Parenthood would be able to direct the patient to abortion care, which is consistent with the standard of care because it was not impeding the patient from finding a provider that would perform an abortion. Trial tr. 663:15-22; 698:11-699:1.

### III. The evidence at trial established that Illinois women know how to access abortion.

38.     Illinois law provides that "[e]very individual who becomes pregnant has a fundamental right to continue the pregnancy and give birth or to have an abortion, and to make autonomous decisions about how to exercise that right." 775 Ill. Comp. Stat. 55/1-15(b).

**Defendant's Response:**     Undisputed.

39.     The State introduced no evidence at trial suggesting that Illinois women are unaware of that right or how to exercise it.

**Defendant's Response:**     Disputed. Defendant objects that these are improper arguments, not proposed findings of fact, in violation of the Court's standing order. Defendant

further objects that these arguments are not supported by specific citations to the record and should therefore be disregarded. To the extent Plaintiffs' other proposed findings of fact address related allegations with supporting evidence, Defendant's responses and rebuttal evidence are provided there.

40.     Nor did the State introduce any evidence that it has conducted a public information campaign or taken any other steps to inform women of the availability of abortion and where to access it.

**Defendant's Response:**      Disputed. Defendant objects that these are improper arguments, not proposed findings of fact, in violation of the Court's standing order. Defendant further objects that these arguments are not supported by specific citations to the record and should therefore be disregarded. To the extent Plaintiffs' other proposed findings of fact address related allegations with supporting evidence, Defendant's responses and rebuttal evidence are provided there.

41.     On the contrary, significant evidence shows that women *do* know how and where to access abortion in Illinois. Several witnesses testified at trial that they had never encountered a woman who was unaware that abortion is a legal treatment option in Illinois, and all have been able to obtain one if desired. Tr. 40:22–41:7, 77:13–15 (Lee), 101:13–102:4, 133:21–134:2 (Lesnoff), 154:6–154:21 (VanDerLip), 181:11–17 (Maly).

**Defendant's Response:**      Disputed. Dr. Lee admitted that he relied upon a study that examined the effectiveness of abortion waiting periods. Trial tr. 69:6-19.  He further admitted that the study did not ask whether Internet access ensures access to abortion. Dr. Lee also admitted that the study was not specific to Illinois. Trial tr. 69:20-70:9. Nor did the study look at the frequency with which individuals use the Internet to find abortion providers or whether

individuals who performed Internet searches were able to discern truthful information from misleading information. Trial tr. 70:10-18. The study also did not use any kind of methodology to determine if people who used the Internet were ultimately able to secure abortion care. Trial tr. 70:19-72:2. Dr. Lee further testified that he did not rely on any other research or studies regarding access to reproductive health care in Illinois. Trial tr. 72:3-6. Moreover, Dr. Lee admitted that, despite being a licensed, practicing obstetrician, is not aware of anyone who can competently perform an abortion, yet women would be able to do so on their own without the assistance of a doctor. Trial tr. 67:21-68:3; 68:22-69:5.

Defendant further disputes that Plaintiffs have accurately characterized the testimony of Ms. Lesnoff, Ms. VanDerLip, and Ms. Maly. None of the cited testimony states that the women who come to their facilities were ultimately able to secure an abortion.

42.     The evidence at trial also showed that information concerning how and where to get an abortion in Illinois is readily available over the internet and that the vast majority of Plaintiffs' clients have internet access. Tr. 44:1–7 (Lee), 112:12–21 (Lesnoff), 151:17–152:4 (VanDerLip), 184:17–185:11 (Maly).

**Defendant's Response:**     Disputed for the reasons stated in Defendant's response to NIFLA's Proposed Finding of Fact 41.

43.     Indeed, 92.7% of Illinois citizens have internet access at home. NIFLA Ex. 18.

**Defendant's Response:** Undisputed that approximately one in 13 people in Illinois lacked internet access at home as recently as 2019.

44.     Even those clients that do not have internet access at home can access the internet at public libraries. 99.7% of Illinois public libraries have access to the internet, and 98.1% of

14

those libraries provide internet access to patrons either directly or through a staff intermediary. NIFLA Ex. 19.

**Defendant's Response:** Defendant objects to NIFLA Ex. 19 as inadmissible hearsay not subject to judicial notice for the reasons stated on the record at the final pretrial conference.

45. For Illinois women with internet access, a Google search for "abortion in Illinois," NIFLA Ex. 20, returns over 69 million results, including the following: a. An "abortion finder" website with a search tool to find a "verified abortion provider" and a link to a list of organizations that provide financial assistance for abortion, NIFLA Ex. 21;

b. The website for the ACLU of Illinois, which informs women that "Illinois law ensures that abortion is legal for all people" and includes links to websites to "find[]an abortion provider" and to find "financial support," NIFLA Ex. 22;

c. The City of Chicago's website, which provides information about the legality of abortion in Illinois, links to abortion guides by state, the phone number for an "all-options talkline," and a warning about "crisis pregnancy centers," NIFLA Ex. 23;

d. The website for Planned Parenthood of Illinois, which includes a link to book an appointment online, NIFLA Ex. 24;

e. A list of clinics in Illinois that provide abortion according to Google maps, NIFLA Ex. 20;

f. The website for the Center for Reproductive Rights, which states that "[a]bortion will remain legal in Illinois," *id.*;

g. The Guttmacher Institute's website, which includes an "interactive map" of "U.S. abortion policies," *id.*;

h. A Wikipedia article, which states that "[a]bortion in Illinois is legal," *id.*;

15

      i.       The State's own press release concerning its post-*Dobbs* protections for reproductive rights and abortion statistics, *id.*;

      j.       An "Illinois Abortion Clinics" website that includes a link to "request an appointment," NIFLA Ex. 25;

      k.       A series of news articles discussing Illinois's legal protections for abortion, NIFLA Ex. 20;

      l.       And finally, only after everything listed above, the website for Plaintiff Informed Choices, *id.*

**Defendant's Response:** Defendant objects to NIFLA Ex. 20 under Federal Rule of Evidence 901 for the reasons stated on the record at the final pretrial conference. Disputed. The cited documents do not support the claim that "Illinois women" in general or any particular Illinois woman would obtain the specific search results listed.

46.     The State introduced no evidence at trial that any of the pregnancy centers use deceptive tactics to lure women into their facilities. On the contrary, each of the pregnancy center Plaintiffs disclose to potential clients that they do not provide or refer for abortion. Post-Trial Stips. ¶ 49; Tr. 97:17–98:7 (Lesnoff), 150:13–151:7, 152:9–14, 152:25–153:11 (VanDerLip), 178:21–179:11 (Maly).

**Defendant's Response:**     Undisputed that the Plaintiff CPCs disclose that they do not provide or refer for abortions. Defendant objects to the remainder of this proposed finding of fact as improper arguments, not proposed findings of fact, and in violation of the Court's standing order. Defendant further objects that these arguments are not supported by specific citations to the record and should therefore be disregarded. To the extent Plaintiffs' other proposed findings of fact address related allegations with supporting evidence, Defendant's responses and rebuttal

evidence are provided there. Defendant introduced evidence that the CPCs claim to offer counseling about all medical options, including abortion. Def.'s SOF ¶¶ 28-31.

**IV. SB 1564 compels Plaintiffs' speech and burdens their religious beliefs.**

47.     The Illinois Health Care Right of Conscience Act ("the Act"), 745 Ill. Comp. Stat. 70/1 *et seq.*, protects the ability of health care providers to refuse to provide or assist with treatment options that violate the provider's conscience by civil liability of, discrimination against, or denial of aid or benefits to providers with conscience-based objections.

**Defendant's Response:**     Undisputed.

48.     The Illinois General Assembly found that "people and organizations hold different beliefs about whether certain health care services are morally acceptable." *Id.* 70/2.

**Defendant's Response:**     Undisputed.

49.     Consequently, the General Assembly intended for the Act "to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care" and "to prohibit all forms of discrimination, disqualification, coercion, disability or imposition of liability upon such persons or entities by reason of their refusing to act contrary to their conscience or conscientious convictions." *Id.*

**Defendant's Response:**     Undisputed.

50.     The Act has been in force since 1977. 745 Ill. Comp. Stat. 70/1 (Historical and Statutory Notes).

**Defendant's Response:**     Undisputed.

51.     More recently, Illinois passed Senate Bill No. 1564 ("SB 1564"), which amended the Act to "ensure that patients receive timely access to information and medically appropriate care." *Id.* at 70/2.

**Defendant's Response:**          Undisputed.

52.     SB 1564 went into effect on January 1, 2017, but was enjoined in relevant part by another judge of this Court on July 19, 2017. Prelim. Inj. Order 9–10, ECF No. 65.

**Defendant's Response:**          Undisputed.

53.     The Circuit Court of Winnebago County also enjoined SB 1564's enforcement under state law in *The Pregnancy Care Ctr. of Rockford v. Rauner*, No. 2016-MR-741 (Ill. Cir. Ct. Dec. 20, 2016) (Memorandum Opinion and Order attached as Ex. 1).

**Defendant's Response:**          Undisputed.

54. SB 1564 adds section 70/6.1 to the Act, which is at issue in this case.

**Defendant's Response:**          Undisputed.

55.     That section requires "health care facilities" and health care professionals with conscience-based objections to "adopt written access to care and information protocols that are designed to ensure that conscience-based objections do not cause impairment of patients' health and that explain how conscience-based objections will be addressed in a timely manner to facilitate patient health care services." 745 Ill. Comp. Stat. 70/6.1.

**Defendant's Response:**          Undisputed.

56.     By their express terms, the requirements of 745 Ill. Comp. Stat. 70/6.1 do not apply to health care facilities or health care professionals that do not have conscience-based objections to treatment options.

18

**Defendant's Response:** Disputed. Defendant objects that these are improper arguments, not proposed findings of fact, in violation of the Court's standing order. Defendant further objects that these arguments are not supported by specific citations to the record and should therefore be disregarded. To the extent Plaintiffs' other proposed findings of fact address related allegations with supporting evidence, Defendant's responses and rebuttal evidence are provided there.

57. The Act's protections against liability, discrimination, and the denial of aid or benefits "only apply if conscience-based refusals occur in accordance with these protocols." *Id.* These protocols must include four specific provisions. *Id.*

**Defendant's Response:** Undisputed.

58. First, "[t]he health care facility, physician, or health care personnel shall inform a patient of the patient's condition, prognosis, legal treatment options, and risks and benefits of the treatment options in a timely manner, consistent with current standards of medical practice or care." *Id.* 70/6.1(1) ("the benefits-discussion requirement").

**Defendant's Response:** Undisputed.

59. Second, "[w]hen a health care facility, physician, or health care personnel is unable to permit, perform, or participate in a health care service that is a diagnostic or treatment option requested by a patient because the health care service is contrary to the conscience of the health care facility, physician, or health care personnel, then the patient shall either be provided the requested health care service by others in the facility or be notified that the health care will not be provided." *Id.* 70/6.1(2).

**Defendant's Response:** Undisputed that Plaintiffs have cited the first part of this requirement under the Act. Disputed where Plaintiffs omitted the end of this requirement, which

19

states "and be referred, transferred, or given information in accordance with paragraph (3)." 745 ILCS 70/6.1(2).

60.     Third, "[i]f requested by the patient or the legal representative of the patient, the health care facility, physician, or health care personnel shall" do one of three things. *Id.* 70/6.1(3) ("the referral requirement"). The objecting health care provider may (1) "refer the patient to," or (2) "transfer the patient to," or (3) "provide in writing information to the patient about other health care providers who they reasonably believe may offer the health care service the health care facility, physician, or health personnel refuses to permit, perform, or participate in because of a conscience-based objection." *Id.*

**Defendant's Response:**     Undisputed.

61.     Fourth, "[i]f requested by the patient or the legal representative of the patient, the health care facility, physician, or health care personnel shall provide copies of medical records to the patient or to another health care professional or health care facility designated by the patient in accordance with Illinois law, without undue delay." *Id.* 70/6.1(4).

**Defendant's Response:**     Undisputed.

62.     It is uncontested that Informed Choices, TLC, Mosaic, and NIFLA's Illinois members offering medical services are "health care facilities" under the Act. Pre-Trial Stips. ¶ 10.

**Defendant's Response:**     Undisputed.

63.     It is also uncontested that Plaintiffs' medical directors are "physicians" under the Act and that Plaintiffs' nurses, nurse midwives, and physician assistants are "health care personnel" under the Act. *Id.* ¶¶ 11–12.

**Defendant's Response:**     Undisputed.

20

64.     Plaintiffs filed this lawsuit on September 29, 2016, three months before SB 1564 went into effect, challenging the benefits-discussion requirement and the referral requirement under the Free Speech and Free Exercise Clauses of the First Amendment. Complaint, ECF No. 1.

**Defendant's Response:**     Undisputed.

65.     Another judge of this Court issued a preliminary injunction against the benefits-discussion and referral requirements on July 19, 2017. ECF No. 65, PI Order. That injunction remains in place.

**Defendant's Response:**     Undisputed.

66.     On September 3, 2020, another judge of this Court denied summary judgment on Plaintiffs' free speech and free exercise claims. Summ. J. Order, ECF No. 176.

**Defendant's Response:**     Undisputed.

67.     This Court held a trial on those claims on September 20 through 22, 2023. ECF Nos. 257–59.

**Defendant's Response:**     Undisputed.