# Exhibit 16

NIFLA Trial Exhibit 32(k)
ACOG Committee Opinion No. 390 (Dec. 2007)

# ACOG COMMITTEE OPINION

Number 390 • December 2007

## Ethical Decision Making in Obstetrics and Gynecology*

**Committee on Ethics**

*Reaffirmed 2016*

**ABSTRACT:** Physicians vary widely in their familiarity with ethical theories and methods and their sensitivity toward ethical issues. It is important for physicians to improve their skills in addressing ethical questions. Obstetrician–gynecologists who are familiar with the concepts of medical ethics will be better able to approach complex ethical situations in a clear and structured way. By considering the ethical frameworks involving principles, virtues, care and feminist perspectives, concern for community, and case precedents, they can enhance their ability to make ethically justifiable clinical decisions. Guidelines, consisting of several logical steps, are offered to aid the practitioner in analyzing and resolving ethical problems.



**The American College of Obstetricians and Gynecologists**
*Women's Health Care Physicians*

The importance of ethics in the practice of medicine was manifested at least 2,500 years ago in the Hippocratic tradition, which emphasized the virtues that were expected to characterize and guide the behavior of physicians. Over the past 50 years, medical technology expanded exponentially, so that obstetrician–gynecologists have had to face complex ethical questions regarding assisted reproductive technologies, prenatal diagnosis and selective abortion, medical care at the beginning and end of life, the use of genetic information, and the like. Medical knowledge alone is not sufficient to solve these problems. Instead, responsible decisions in these areas depend on a thoughtful consideration of the values, interests, goals, rights, and obligations of those involved. All of these are the concern of medical ethics. The formal discipline of biomedical ethics and structured ethical analysis can help physicians resolve ethical dilemmas.

Physicians vary widely in their familiarity with ethical theories and methods and their sensitivity toward ethical issues. It is important for physicians to improve their skills in addressing ethical questions through formal undergraduate and graduate medical education, organized continuing education,

*Update of "Ethical Decision Making in Obstetrics and Gynecology" in *Ethics in Obstetrics and Gynecology*, Second Edition, 2004.

or personal experience and reading as well as discussion with others.

## Ethical Frameworks and Perspectives

### Principle-Based Ethics

In recent decades, medical ethics has been dominated by principle-based ethics (1–3). In this approach, four principles offer a systematic and relatively objective way to identify, analyze, and address ethical issues, problems, and dilemmas: 1) respect for patient autonomy, 2) beneficence, 3) nonmaleficence, and 4) justice. (These four principles will be discussed in some detail in subsequent sections.) However, critics claim that a principle-based approach cannot adequately resolve or even helpfully evaluate many difficult clinical problems. As a result, several other perspectives and frameworks have emerged: virtue-based ethics, an ethic of care, feminist ethics, communitarian ethics, and case-based reasoning, all of which have merit as well as limitations (2–8). As this discussion will stress, these different perspectives and frameworks are not necessarily mutually exclusive. They often are complementary because each emphasizes some important features of moral reasoning, agents, situations, actions, or relationships. Perspectives such as an ethic of care or feminist ethics also may change the lens through which to view both principles



EXHIBIT 11

NIFLA 01875

and particular situations in which decisions have to be made.

### Virtue Ethics

A virtue-based approach relies on qualities of character that dispose health professionals to make choices and decisions that achieve the well-being of patients, respect their autonomous choices, and the like (8, 9). These qualities of character include trustworthiness, prudence, fairness, fortitude, temperance, integrity, self-effacement, and compassion. Virtues need not replace principles as a basis for ethical decision making or conduct. Indeed, some virtues correlate with principles and dispose people to act according to those principles—for instance, the virtue of benevolence disposes agents to act beneficently. Virtues also can complement and enhance the principles of medical ethics. Interpreting the principles, applying them in concrete situations, and setting priorities among them require the judgment of morally sensitive professionals with good moral character and the relevant virtues. Furthermore, in deliberating what to do, a physician may find helpful guidance by asking, "What would a good, that is, morally virtuous, physician do in these circumstances?" Ethical insight may come from imagining which actions would be compatible with, for instance, being a compassionate or honest or trustworthy physician.

### Care-Based Ethics

Care-based ethics, also called "the ethic of care," directs attention to dimensions of moral experience often excluded from or neglected by traditional ethical theories (10). It is concerned primarily with responsibilities that arise from attachment to others rather than with impartial principles so emphasized in many ethical theories. The moral foundations of an ethic of care are located not in rights and duties, but rather in commitment, empathy, compassion, caring, and love (11). This perspective also pays closer attention to context and particularity than to abstract principles and rules. It suggests that good ethical decisions both result from personal caring in relationships, and should consider the impact of different possible actions on those relationships. An ethic of care overlaps with a virtue ethic, in emphasizing the caregiver's orientation and qualities. In this ethical approach, care represents the fundamental orientation of obstetrics and gynecology as well as much of medicine and health care, and it indicates the direction and rationale of the relationship between professionals and those who seek their care. An ethic of care also joins case-based approaches in focusing on particular contexts of decision making.

### Feminist Ethics

Feminist ethics uses the tools of feminist theory to examine ethical issues in at least three distinctive ways (12). First, it indicates how conceptions of sex often distort people's view of the world and, more specifically, how gendered conceptions constrain and restrict women. For instance, feminist theory shows how human society tends to be androcentric, or male centered, so that man becomes the generic representative for what it means to be human, and woman is viewed as different or deviant. Thus, feminist ethics can expose forms of androcentric reasoning in ethics of clinical care and public policy, calling into question, for example, the rationale for excluding women from participation in clinical research. Second, feminist ethics indicates how gendered thinking has distorted the tools that philosophers and bioethicists use to examine ethical issues. Historically entrenched associations between man and reason, woman and emotion—dubious in and of themselves—have contributed to the tendency in moral theory to view emotion as irrelevant or, at worst, distorting. Some, including many feminist thinkers, however, have argued that appropriate emotion (eg, empathy) is indispensable to moral reasoning in the ethical conduct of medical care. This position, bolstered further by recent empirical research (13, 14), is consistent with the perspective represented by the ethic of care (see previous section). Third, in calling attention to and attempting to redress the ways that gendered concepts have produced constraints on women, feminism is concerned with oppression as a pervasive and insidious moral wrong (15, 16). The tools of feminist ethics can help to identify and challenge dominance and oppression not only of women, but also of other groups oppressed because of race, class, or other characteristics. These tools also can help to detect more subtle gender and other biases and assist in addressing significant health disparities. Rather than rejecting such principles as respect for autonomy and justice, feminist thinkers may interpret and apply these principles to highlight and redress various kinds of domination, oppression, and bias.

### Communitarian Ethics

Communitarian ethics challenges the primacy often attributed to personal autonomy in contemporary biomedical ethics (17). A communitarian ethic emphasizes a community's other shared values, ideals, and goals and suggests that the needs of the larger community may take precedence, in some cases, over the rights and desires of individuals. If proponents of a communitarian ethic accept the four principles of Beauchamp and Childress (1), they will tend to interpret those principles through the lens of community, stressing, for example, benefits and harms to community and communities as well as the need to override autonomy in some cases. Major examples arise in the context of public health. However, in considering the proper framework for communitarian ethics, questions arise in a pluralistic society about which community is relevant. For instance, is the relevant community one embodied in particular traditions (eg, one religion) or is it the broader, pluralistic society? Even though there is a broad consensus that communal values and interests sometimes trump personal autonomy, disputes persist about exactly when it is justifiable to over-

NIFLA 01876

ride personal autonomy. To take one example, apart from laws that specify which diseases are reportable, physicians may have to balance a patient's claims of privacy and confidentiality against risks to others. Different judgments about the appropriate balance often hinge on an assessment of risks: How probable and serious must the harm be to justify a breach of privacy and confidentiality?

**Case-Based Reasoning**

In a final approach, case-based reasoning (sometimes called casuistry), ethical decision making builds on precedents set in specific cases (18, 19). This is analogous to the role of case law in jurisprudence in that an accumulated body of influential cases and their interpretation provide moral guidance. This approach analyzes current cases requiring decisions in light of relevantly similar cases that have already been settled or gained a rough consensus. Case-based reasoning asserts the priority of practice over both ethical theory and moral principles. It recognizes the principles that emerge by a process of generalization from the analysis of cases but views these principles as always open to future revision. In considering a particular case, someone taking this approach would seek to determine whether there are any relevantly similar cases, either positive or negative, that enjoy an ethical consensus. If, for example, a new research protocol is relevantly similar to an earlier and widely condemned one (eg, the Tuskegee Syphilis Study), that similarity is a reason for moral suspicion of the new protocol. A question for this approach is how to identify relevant similarities and differences among cases and whether ethical principles are sometimes useful in this process.

**Ethics as Toolbox**

An example of how the different ethical frameworks and perspectives might address a particular case is shown in the box. From this analysis of different approaches, it is plausible to derive the following conclusion: enlightened ethical decision making in clinical medicine cannot rely exclusively on any single fundamental approach to biomedical ethics. The metaphor of toolbox or toolkit may provide a useful way to think about these different approaches to ethical decision making (20). Some ethical tools may fit some contexts, situations, and cases better than others, and more than one—or even all of them—usually are valuable.

It is helpful to have access to a variety of ethical tools because clinical problems often are too complex to be resolved by using simple rules or by rigidly applying ethical principles. Indeed, virtues such as prudence, fairness, and trustworthiness enable clinicians to apply ethical principles sensitively and wisely in situations of conflict. The specific virtues that are most important may vary from one circumstance to another, but in women's health care, there must be particular sensitivity to the needs of women. Furthermore, in many, perhaps most, difficult situations requiring ethical insight, tensions exist between the well-being and interests of the individual patient and the interest of the "community," however that is defined. Finally, current ethical decisions can be improved by awareness of and guidance from existing precedents.

In short, even though a principle-based approach may provide a reasonable starting point for ethical decision making, it is not adequate by itself and needs the valuable contributions and insights of other approaches. Principles often serve as initial points of reference in ethical decision making in obstetrics and gynecology, however, and the next section examines several ethical principles in detail.

**Ethical Principles**

Clinicians and others often make decisions without appealing to principles for guidance or justification. But when they experience unclear situations, uncertainties, or conflicts, principles often can be helpful. The major principles that are commonly invoked as guides to professional action and for resolving conflicting obligations in health care are respect for autonomy, beneficence and nonmaleficence, and justice (1). Other principles or rules, such as fidelity, honesty, privacy, and confidentiality, also are important, whether they are viewed as derived from the four broad principles or as independent.

**Respect for Autonomy**

Autonomy, which derives from the Greek *autos* ("self") and *nomos* ("rule" or "governance"), literally means self-rule. In medical practice, the principle of respect for autonomy implies personal rule of the self that is free both from controlling interferences by others and from personal limitations that prevent meaningful choice, such as inadequate understanding (1). Respect for a patient's autonomy acknowledges an individual's right to hold views, to make choices, and to take actions based on her own personal values and beliefs. Respect for autonomy provides a strong moral foundation for informed consent, in which a patient, adequately informed about her medical condition and the available therapies, freely chooses specific treatments or nontreatment. Respect for patient autonomy, like all ethical principles, cannot be regarded as absolute. At times it may conflict with other principles or values and sometimes must yield to them.

**Beneficence and Nonmaleficence**

The principle of beneficence, which literally means doing or producing good, expresses the obligation to promote the well-being of others. It requires a physician to act in a way that is likely to benefit the patient. Nonmaleficence is the obligation not to harm or cause injury, and it is best known in the maxim, *primum non nocere* ("First, do no harm."). Although there are some subtle distinctions between nonmaleficence and beneficence, they often are considered manifestations of a single principle. These two principles taken together are operative in almost every treatment decision because every medical or surgical pro-

---

### One Case Study: Five Approaches

Although the several approaches to ethical decision making may all produce the same answer in a situation that requires a decision, they focus on different, though related, aspects of the situation and decision. Consider, for instance, how they might address interventions for fetal well-being if a pregnant woman rejects medical recommendations or engages in actions that put the fetus at risk.*

A *principle-based approach* would seek to identify the principles and rules pertinent to the case. These might include beneficence–nonmaleficence to both the pregnant woman and her fetus, justice to both parties, and respect for the pregnant woman's autonomous choices. These principles cannot be applied mechanically. After all, it may be unclear whether the pregnant woman is making an autonomous decision, and there may be debates about the balance of probable benefits and risks of interventions to all the stakeholders as well as about which principle should take priority in this conflict. Professional codes and commentaries may offer some guidance about how to resolve such conflicts.

A *virtue-based approach* would focus on the courses of action to which different virtues would and should dispose the obstetrician–gynecologist. For instance, which course of action would follow from compassion? From respectfulness? And so forth. In addition, the obstetrician–gynecologist may find it helpful to ask more broadly: Which course of action would best express the character of a good physician?

An *ethic of care* would concentrate on the implications of the virtue of caring in the obstetrician–gynecologist's special relationship with the pregnant women and with the fetus. In the process of deliberation, individuals using this approach generally would resist viewing the relationship between the pregnant woman and her fetus as adversarial, acknowledging that most of the time women are paradigmatically invested in their fetus' well-being and that maternal and fetal interests usually are aligned.* If, however, a real conflict does exist, the obstetrician–gynecologist should resist feeling the need to take one side or the other. Instead, he or she should seek a solution in identifying and balancing his or her duties in these special relationships, situating these duties in the context of a pregnant woman's values and concerns, instead of specifying and balancing abstract principles or rights.

To take one example, in considering a case of a pregnant woman in preterm labor who refuses admission to the hospital for bed rest or tocolytics, Harris combines a care or relational perspective with a feminist perspective to provide a "much wider gaze" than a principle-based approach might*:

> The clinician would focus attention on important social and family relationships, contexts or constraints that might come to bear on [a] pregnant [woman's] decision making, such as her need to care for other children at home or to continue working to support other family members, or whatever life project occupied her, and attempt to provide relief in those areas….[Often] fetal well-being is achieved when maternal well-being is achieved.

As this example suggests, a *feminist ethics* approach would attend to the social structures and factors that limit and control the pregnant woman's options and decisions in this situation and would seek to alter any that can be changed.* It also would consider the implications any intervention might have for further control of women's choices and actions—for instance, by reducing a pregnant woman, in extreme cases, to the status of "fetal container" or "incubator."

Finally, a *case-based approach* would consider whether there are any relevantly similar cases that constitute precedents for the current one. For instance, an obstetrician–gynecologist may wonder whether to seek a court order for a cesarean delivery that he or she believes would increase the chances of survival for the child-to-be but that the pregnant woman continues to reject. In considering what to do, the physician may ask, as some courts have asked, whether there is a helpful precedent in the settled consensus of not subjecting a nonconsenting person to a surgical procedure to benefit a third party, for instance, by removing an organ for transplantation.†

*Harris LH. Rethinking maternal-fetal conflict: gender and equality in perinatal ethics. Obstet Gynecol 2000;96:786–91.

†In re A.C., 572 A.2d 1235 (D.C. Ct. App. 1990).

---

cedure has both benefits and risks, which must be balanced knowledgeably and wisely. Beneficence, the obligation to promote the patient's well-being, may sometimes conflict with the obligation to respect the patient's autonomy. For example, a patient may desire to deliver a fatally malformed fetus by cesarean because she believes that this procedure will increase the newborn's chance of surviving, if only for a few hours. However, in the physician's best judgment, the theoretical benefit to a "nonviable" infant may not justify the risks of the surgical delivery to the woman. In such a situation, the physician's task is further complicated by the need to consider the patient's psychologic, physical, and spiritual well-being.

### Justice

Justice is the principle of rendering to others what is due to them. It is the most complex of the ethical principles to be considered because it deals not only with the physician's obligation to render to a patient what is owed but also with the physician's role in the allocation of limited medical resources in the broader community. In addition, various criteria such as need, effort, contribution, and merit are important in determining what is owed and to whom it is owed. Justice is the obligation to treat equally those who are alike or similar according to whatever criteria are selected. Individuals should receive equal treatment unless scientific and clinical evidence establishes

NIFLA 01878

that they differ from others in ways that are relevant to the treatments in question. Determination of the criteria on which these judgments are based is a highly complex moral process, as exemplified by the ethical controversies about providing or withholding renal dialysis and organ transplantation.

The principle of justice applies at many levels. At the societal level, it addresses the criteria for allocating scarce resources, such as organs for transplantation. At a more local level, it is relevant to questions such as which patients (and physicians) receive priority for operating room times. Even at the level of the physician–patient relationship, the principle of justice applies to matters such as the timing of patient discharge. The principle also governs relationships between physicians and third parties, such as payers and regulators. In the context of the physician–patient relationship, the physician should be the patient's advocate when institutional decisions about allocation of resources must be made.

**Balancing the Principles**

In order to guide actions, each of these broad principles needs to be made more concrete. Sometimes the principles can be addressed in more definite rules—for instance, rules of voluntary, informed consent express requirements of the principle of respect for personal autonomy, and rules of confidentiality rest on several principles (see "Common Ethical Issues and Problems in Obstetrics and Gynecology"). Nevertheless, conflicts may arise among these various principles and rules. In cases of conflict, physicians have to determine which principle(s) should have priority. Some ethical theories view all of these principles as prima facie binding, resist any effort to prioritize them apart from particular situations, and call for balancing in particular situations (1). Some other theories attempt to rank principles in advance of actual conflicts (21).

Obstetrician–gynecologists, like other physicians, often face a conflict between principles of beneficence–nonmaleficence in relation to a patient and respect for that patient's personal autonomy. In such cases, the physician's judgment about what is in the patient's best interests conflicts with the patient's preferences. The physician then has to decide whether to respect the patient's choices or to refuse to act on the patient's preferences in order to achieve what the physician believes to be a better outcome for the patient. Paternalistic models of physician–patient relationships have been sharply challenged and often supplanted by other models. At the other end of the spectrum, however, the model of following patients' choices, whatever they are, as long as they are informed choices, also has been criticized for reducing the physician to a mere technician (22). Other models have been proposed, such as negotiation (23), shared decision making (24), or a deliberative model, in which the physician integrates information about the patient's condition with the patient's values to make a cogent recommendation (22). Whatever model is selected, a physician may still, in a particular situation, have to decide whether to act on the patient's request that does not appear to accord with the patient's best interests. These dilemmas are considered in greater detail elsewhere (25).

## Common Ethical Issues and Problems in Obstetrics and Gynecology

Almost everything obstetrician–gynecologists do in their professional lives involves one or more of the ethical principles and personal virtues to a greater or lesser degree. Nevertheless, several specific areas deserve special attention: the role of the obstetrician–gynecologist in the society at large; the process of voluntary, informed consent; confidentiality; and conflict of interest.

### The Obstetrician–Gynecologist's Role in Society at Large

In addition to their ethical responsibilities in direct patient care, obstetrician–gynecologists have ethical responsibilities related to their involvement in the organization, administration, and evaluation of health care. They exercise these broader responsibilities through membership in professional organizations; consultation with and advice to community leaders, government officials, and members of the judiciary; expert witness testimony; and education of the public. Justice is both the operative principle and the defining virtue in decisions about the distribution of scarce health care resources and the provision of health care for the medically indigent and uninsured. Obstetricians and gynecologists should offer their support for institutions, policies, and practices that ensure quality of and more equitable access to health care, particularly, but not exclusively, for women and children. The virtues of truthfulness, fidelity, trustworthiness, and integrity must guide physicians in their roles as expert witnesses, as consultants to public officials, as educators of the lay public, and as health advocates (26).

### Informed Consent Process

Often, informed consent is confused with the consent form. In fact, informed consent is "the willing acceptance of a medical intervention by a patient after adequate disclosure by the physician of the nature of the intervention with its risks and benefits and of the alternatives with their risks and benefits" (27). The consent form only documents the process and the patient decision. The primary purpose of the consent process is to protect patient autonomy. By encouraging an ongoing and open communication of relevant information (adequate disclosure), the physician enables the patient to exercise personal choice. This sort of communication is central to a satisfactory physician–patient relationship. Unfortunately, discussions for the purpose of educating and informing patients about their health care options are never completely free of the informant's bias. Practitioners should seek to uncover their own biases and endeavor to maintain objectivity in the face of those biases, while disclosing to the

patient any personal biases that could influence the practitioner's recommendations (28, 29). A patient's right to make her own decisions about medical issues extends to the right to refuse recommended medical treatment. The freedom to accept or refuse recommended medical treatment has legal as well as ethical foundations.

As previously noted, one of the most important elements of informed consent is the patient's capacity to understand the nature of her condition and the benefits and risks of the treatment that is recommended as well as those of the alternative treatments (30). A patient's capacity to understand depends on her maturity, state of consciousness, mental acuity, education, cultural background, native language, the opportunity and willingness to ask questions, and the way in which the information is presented. Diminished capacity to understand is not necessarily the same as legal incompetence. Psychiatric consultation may be helpful in establishing a patient's capacity, or ability to comprehend relevant information. Critical to the process of informing the patient is the physician's integrity in choosing the information that is given to the patient and respectfulness in presenting it in a comprehensible way. The point is not merely to disclose information but to ensure patient comprehension of relevant information. Voluntariness—the patient's freedom to choose among alternatives—is also an important element of informed consent, which should be free from coercion, pressure, or undue influence (31).

**Confidentiality**

Confidentiality applies when an individual to whom information is disclosed is obligated not to divulge this information to a third party. Rules of confidentiality are among the most ancient and widespread components of codes of medical ethics. Confidentiality is based on the principle of respect for patient autonomy, which includes a patient's right to privacy, and on the physician's fidelity-based responsibility to respect a patient's privacy. Rules of confidentiality also are justified by their good effects: Assurance of confidentiality encourages patients to disclose information that may be essential in making an accurate diagnosis and planning appropriate treatment. However, rules of confidentiality are not absolute, either legally or ethically. Legal exceptions to confidentiality include the requirements to report certain sexually transmitted diseases or suspected child abuse. Ethically, breaches of confidentiality also may be justified in rare cases to protect others from serious harm.

The need for storing and transmitting medical information about patients is a serious threat to confidentiality and privacy, a problem made more complex by the use of electronic storage and transmission of patient data. The recent increase in the use of genetic testing and screening also highlights the need for strong protections of confidentiality and patient privacy because genetic information has lifelong implications for patients and their families.

Obstetrician–gynecologists also are confronted with issues of confidentiality in dealing with adolescents, especially regarding the diagnosis and treatment of sexually transmitted diseases, contraceptive counseling, and pregnancy (32). The physician's willingness and ability to protect confidentiality should be discussed with all adolescent patients early in their care. Many state laws protect adolescent confidentiality in certain types of situations, and obstetrician–gynecologists should be aware of the laws in their own states.

**Conflict of Interest**

It is necessary to distinguish conflicts of interest from conflicts of obligation. A conflict of obligation exists when a physician has two or more obligations that sometimes conflict—for example, an obligation to patients and an obligation to a managed care organization. By contrast, a conflict of interest exists when a primary interest (usually the patient's well-being) is in conflict with a physician's secondary interest (such as his or her financial interest). A conflict of interest is not necessarily wrong, but it creates the occasion and temptation for the physician to breach a primary obligation to the patient.

Many kinds of conflicts of interest arise in obstetrics and gynecology; some are obvious, others more subtle. Following are a few examples: a managed care guideline limits coverage for diagnostic tests that physicians consider necessary for patients and penalizes physicians who order such tests (or rewards physicians who do not order such tests); a physician recommends products to patients that are sold for a profit in his or her office (33); a physician refers patients for tests or procedures at an entity in which the physician has a financial interest; a physician accepts gifts from a pharmaceutical or medical device company (34). It is important for physicians to be attentive to the wide range of actual and perceived conflicts of interest. Even perceived conflicts of interest can threaten patient and societal trust.

There is ever-increasing intrusion into the patient–physician relationship by government and by the marketplace. Care plans, practice guidelines, and treatment protocols may substantially limit physicians' ability to provide what they consider proper care for patients. If the conflict is too great, the physician should withdraw from the organization. In addition to such conflicts of obligation, a conflict of interest exists if the organization's incentive plans create inducements to limit care in the interest of increasing physicians' incomes. At one time, the tension between physicians' financial self-interest and patients' interests often encouraged unnecessary testing and excessive treatment, but the current tension may provide incentives for too little care. Conflicts of interest should be avoided whenever possible, and when they are unavoidable and material to patients' decisions, it is the physician's responsibility to disclose them to patients. Serious ethical problems arise if organizational rules (so-called "gag rules") preclude such disclosures.

NIFLA 01880

## Guidelines for Ethical Decision Making

Often, more than one course of action may be morally justifiable. At times, however, no course of action may seem acceptable because each may result in significant harms or compromise important principles or values. Nevertheless, the clinician must select one of the available options, justify that decision by ethical reasons, and apply the same critical thinking faculties that would be applied to issues of medical evidence. An analysis of the various factors involved in ethical decisions can aid attempts to resolve difficult cases. In addition, the involvement of individuals with a variety of backgrounds and perspectives can be useful in addressing ethical questions. Informal or formal consultation with those from related services or with a hospital ethics committee can help ensure that all stakeholders, viewpoints, and options are considered as a decision is made.

It is important for the individual physician to find or develop guidelines for decision making that can be applied consistently in facing ethical dilemmas. Guidelines consisting of several logical steps can aid the practitioner analyzing and resolving an ethical problem. The approach that follows incorporates elements of several proposed schemes (27, 35–38).

1. *Identify the decision makers.* The first step in addressing any problem is to answer the question, "Whose decision is it?" Generally, the patient is presumed to have the authority and capacity to choose among medically acceptable alternatives or to refuse treatment.
    a. Assess the patient's ability to make a decision. At times, this is not clear. An individual's capacity to make a decision depends on that individual's ability to understand information and appreciate the implications of that information when making a personal decision (30). In contrast, competence and incompetence are legal determinations that may or may not truly reflect functional capacity. Assessment of a patient's capacity to make decisions must at times be made by professionals with expertise in making such determinations. Decisions about competence can be made only in a court of law.
    b. Identify a surrogate decision maker for incompetent patients. If a patient is thought to be incapable of making a decision or has been found legally incompetent, a surrogate decision maker must be identified. In the absence of a durable power of attorney, family members have been called on to render proxy decisions. In some situations, the court may be called on to appoint a guardian. A surrogate decision maker should make the decision that the patient would have wanted or, if the patient's wishes are not known, that will promote the best interests of the patient. The physician has an obligation to assist the patient's representatives in examining the issues and reaching a resolution.
    c. In the obstetric setting, recognize that a competent pregnant woman is the appropriate decision maker for the fetus that she is carrying.
2. *Collect data, establish facts.*
    a. Be aware that perceptions about what may or may not be relevant or important to a case reflect values—whether personal, professional, institutional, or societal. Hence, one should strive to be as objective as possible when collecting the information on which to base a decision.
    b. Use consultants as needed to ensure that all available information about the diagnosis, treatment, and prognosis has been obtained.
3. *Identify all medically appropriate options.*
    a. Use consultation as necessary.
    b. Identify other options raised by the patient or other concerned parties.
4. *Evaluate options according to the values and principles involved.*
    a. Start by gathering information about the values of the involved parties, the primary stakeholders, and try to get a sense of the perspective each is bringing to the discussion. The values of the patient generally will be the most important consideration as decision making proceeds.
    b. Determine whether any of the options violates ethical principles that all agree are important. Eliminate those options that, after analysis, are found to be morally unacceptable by all parties.
    c. Reexamine the remaining options according to the interests and values of each party. Some alternatives may be combined successfully.
5. *Identify ethical conflicts and set priorities.*
    a. Try to define the problem in terms of the ethical principles involved (eg, beneficence versus respect for autonomy).
    b. Weigh the principles underlying each of the arguments made. Does one of the principles appear more important than others in this conflict? Does one proposed course of action seem to have more merit than the others?
    c. Consider respected opinions about similar cases and decide to what extent they can be useful in addressing the current problem. Look for morally relevant differences and similarities between this and other cases. Usually, physicians find that the basic dilemma at hand is not a new one and that points considered by others in resolving past dilemmas can be useful.
6. *Select the option that can be best justified.* Try to arrive at a rational resolution to the problem, one that can

NIFLA 01881

be justified to others in terms of widely recognized ethical principles.

7. *Reevaluate the decision after it is acted on.* Repeat the evaluation of the major options in light of information gained during the implementation of the decision. Was the best possible decision made? What lessons can be learned from the discussion and resolution of the problem?

## Summary

Obstetrician–gynecologists who are familiar with the concepts of medical ethics will be better able to approach complex ethical situations in a clear and structured way. By considering the ethical frameworks involving principles, virtues, care and feminist perspectives, concern for community, and case precedents, they can enhance their ability to make ethically justifiable clinical decisions. They also need to attend to the kinds of ethical issues and problems that arise particularly or with special features in obstetrics and gynecology. Finally, obstetricians and gynecologists can enhance their decision-making process by considering when it would be useful to seek a formal or informal ethics consult as well as which guidelines would be most helpful to them as they move from case to case and decision to decision.

## References

1. Beauchamp TL, Childress JF. Principles of biomedical ethics. 5th ed. New York (NY): Oxford University Press; 2001.
2. Childress JF. Methods in bioethics. In: Steinbock B, editor. The Oxford handbook of bioethics. New York (NY): Oxford University Press; 2007. p. 15–45.
3. Pellegrino ED. The metamorphosis of medical ethics. A 30-year retrospective. JAMA 1993;269:1158–62.
4. Steinbock B, Arras JD, London AJ, editors. Ethical issues in modern medicine. 6th ed. Boston (MA): McGraw-Hill; 2003.
5. Beauchamp TL, Walters L, editors. Contemporary issues in bioethics. 6th ed. Belmont (CA): Thomson Wadsworth; 2003.
6. Mappes TA, DeGrazia D, editors. Biomedical ethics. 6th ed. Boston (MA): McGraw-Hill; 2006.
7. McCullough LB, Chervenak FA. Ethics in obstetrics and gynecology. New York (NY): Oxford University Press; 1994.
8. Pellegrino ED, Thomasma DC. The virtues in medical practice. New York (NY): Oxford University Press; 1993.
9. Pellegrino ED. Toward a virtue-based normative ethics for the health professions. Kennedy Inst Ethics J 1995;5: 253–77.
10. Gilligan C. Moral orientation and moral development. In: Kittay EF, Meyers DT, editors. Women and moral theory. Totowa (NJ): Rowman and Littlefield; 1987. p. 19–33.
11. Manning RC. A care approach. In: Kuhse H, Singer P, editors. A companion to bioethics. Malden (MA): Blackwell; 1998. p. 98–105.
12. Little MO. Why a feminist approach to bioethics? Kennedy Inst Ethics J 1996;6:1–18.
13. Koenigs M, Young L, Adolphs R, Tranel D, Cushman F, Hauser M, et al. Damage to the prefrontal cortex increases utilitarian moral judgements [letter]. Nature 2007;446: 908–11.
14. Greene JD, Sommerville RB, Nystrom LE, Darley JM, Cohen JD. An fMRI investigation of emotional engagement in moral judgment. Science 2001;293:2105–8.
15. Tong R. Feminist approaches to bioethics. In: Wolf SM, editor. Feminism and bioethics: beyond reproduction. New York (NY): Oxford University Press; 1996. p. 67–94.
16. Sherwin S. No longer patient: feminist ethics and health care. Philadelphia (PA): Temple University Press; 1992.
17. Callahan D. Principlism and communitarianism. J Med Ethics 2003;29:287–91.
18. Jonsen AR. Casuistry: an alternative or complement to principles? Kennedy Inst Ethics J 1995;5:237–51.
19. Jonsen AR, Toulmin S. The abuse of casuistry: a history of moral reasoning. Berkeley (CA): University of California Press; 1990.
20. Hope T. Medical ethics: a very short introduction. New York (NY): Oxford University Press; 2004.
21. Veatch RM. The basics of bioethics. 2nd ed. Upper Saddle River (NJ): Prentice Hall; 2003.
22. Emanuel EJ, Emanuel LL. Four models of the physician-patient relationship. JAMA 1992;267:2221–6.
23. Childress JF, Siegler M. Metaphors and models of doctor-patient relationships: their implications for autonomy. Theor Med 1984;5:17–30.
24. Katz J. The silent world of doctor and patient. Baltimore (MD): Johns Hopkins University Press; 2002.
25. American College of Obstetricians and Gynecologists. Surgery and patient choice. In: Ethics in obstetrics and gynecology. 2nd ed. Washington, DC: ACOG; 2004. p. 21–5.
26. Expert testimony. ACOG Committee Opinion No. 374. American College of Obstetricians and Gynecologists. Obstet Gynecol 2007;110:445–6.
27. Jonsen AR, Siegler M, Winslade WJ. Clinical ethics: a practical approach to ethical decisions in clinical medicine. 6th ed. New York (NY): McGraw-Hill; 2006.
28. Asch A. Prenatal diagnosis and selective abortion: a challenge to practice and policy. Am J Public Health 1999; 89:1649–57.
29. Parens E, Asch A. The disability rights critique of prenatal genetic testing. Reflections and recommendations. Hastings Cent Rep 1999;29:S1–22.
30. Grisso T, Appelbaum PS. Assessing competence to consent to treatment: a guide for physicians and other health professionals. New York (NY): Oxford University Press; 1998.
31. American College of Obstetricians and Gynecologists. Informed consent. In: Ethics in obstetrics and gynecology. 2nd ed. Washington, DC: ACOG; 2004. p. 9–17.
32. American College of Obstetricians and Gynecologists. Human resources. In: Guidelines for women's health care. 3rd ed. Washington, DC: ACOG; 2007. p. 15–29.

NIFLA 01882

33. Commercial enterprises in medical practice. ACOG Committee Opinion No. 359. American College of Obstetricians and Gynecologists. Obstet Gynecol 2007;109: 243–5.

34. American College of Obstetricians and Gynecologists. Relationships with industry. In: Ethics in obstetrics and gynecology. 2nd ed. Washington, DC: ACOG; 2004. p. 107–10.

35. Pellegrino ED. The anatomy of clinical-ethical judgments in perinatology and neonatology: a substantive and procedural framework. Semin Perinatol 1987;11:202–9.

36. Kanoti GA. Ethics and medical-ethical decisions. Crit Care Clin 1986;2:3–12.

37. Abrams FR. Bioethical considerations for high-risk pregnancy. In: Abrams RS, Wexler P, editors. Medical care of the pregnant patient. Boston (MA): Little, Brown and Co.; 1983. p. 1–12.

38. Fletcher JC, Spencer EM, Lombardo P, editors. Fletcher's introduction to clinical ethics. 3rd ed. Hagerstown (MD): University Publishing Group; 2005.

Copyright © December 2007 by the American College of Obstetricians and Gynecologists, 409 12th Street, SW, PO Box 96920, Washington, DC 20090-6920. All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, posted on the Internet, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without prior written permission from the publisher. Requests for authorization to make photocopies should be directed to: Copyright Clearance Center, 222 Rosewood Drive, Danvers, MA 01923, (978) 750-8400.

Ethical decision making in obstetrics and gynecology. ACOG Committee Opinion No. 390. American College of Obstetricians and Gynecologists. Obstet Gynecol 2007;110:1479–87.

ISSN 1074-861X

NIFLA 01883